IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   1:23-cv-01705

Houston Casualty Company,

    Plaintiff,

v.

C3 Manufacturing LLC,

    Defendant.

## COMPLAINT

Houston Casualty Company ("HCC"), by and through counsel, Arnett Litigation, LLC, files this its Complaint against Defendant, C3 Manufacturing LLC ("C3"), and for its claims and causes of action HCC states as follows:

## INTRODUCTION

1.    By this action, HCC seeks a declaration confirming that its rescission, on the basis of fraud, of the excess policy of insurance issued to C3, is effective and that the policy is rescinded ab initio, with the result that HCC has no duties or obligations to C3 under the rescinded policy.

## THE PARTIES

2.    Plaintiff is an insurance company incorporated in Texas with its principal place of business in Texas.

3.    C3 is a company incorporated in Colorado, with its principal place of business in Colorado.

4. Upon information and belief, C3 is a single-member limited liability company.

5. Upon information and belief, Ronald Naranjo is the owner and the single member of C3.

## PERSONAL AND SUBJECT MATTER JURISDICTION

6. This Court has personal jurisdiction over all parties. The court has personal jurisdiction over C3 because C3 transacts business in the state of Colorado. C.R.S. § 13-1-124(1)(a).

7. This Court has subject matter jurisdiction over all claims asserted herein based on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332.

8. The matter in controversy exceeds, exclusive of interest and costs, $75,000.00.

9. Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

10. On August 31, 2018, the owner of C3, Mr. Naranjo, signed and submitted or caused to be submitted a General & Products Liability Insurance Application (the "Application"). The Application is attached hereto as Exhibit A.

11. As indicated in the Application, the primary product that C3 manufactures is an automatic belay device. Ex. A at page 1/6, Section 2, question 1.

12. The Application asks, among other things, "Has the Applicant ever recalled or is it considering recalling any product?" *Id.* at page 3/6, question 11.

13. On behalf of C3, Mr. Naranjo responded to question 11 by checking the "No" box. *Id.*

14. The Application also asks, among other things, "Is (are) any person(s) or organization(s) proposed for this insurance aware of any fact, incident, circumstance, situation, condition, defect or suspected defect which may result in a Products Liability claim?" *Id.* at page 4/6, question 2.

15. On behalf of C3, Mr. Naranjo responded to question 2 by checking the "No" box. *Id.*

16. The Application states, "For the purpose of this application, the undersigned authorized agent of the person(s) and organization(s) proposed for this insurance declares that to the best of his/her knowledge and belief, after reasonable inquiry, the statements in this application and in any attachments, are true and complete." *Id.* at page 5/6 at Sect. 9.

17. By signing the Application, Mr. Naranjo, on behalf of C3, warranted that he "understand[s] and accept[s] the notice stated above and that the information contained herein is true and that it shall be the basis of the policy and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy." *Id.*

18. On the basis of the information provided by Mr. Naranjo on the Application, HCC issued a Commercial Excess Liability insurance policy to C3, policy number H18PX50121-00, with effective dates of 10/11/2018 through 10/11/2019 (the "Excess Policy"). A true and correct copy of the Excess Policy is attached hereto as Exhibit B.

19. If Mr. Naranjo had responded "Yes" to any of the questions specified above, HCC would not have issued the Excess Policy to C3.

20. The Excess Policy is excess to a Commercial General Liability insurance policy issued to C3 by Great American E&S Insurance Company ("Great American"), policy number

PL1745347-01, with effective dates of October 11, 2018 through October 11, 2019 (the "Primary Policy").

21. On August 1, 2019, Michael Vandivere patronized the Vertical World, a rope climbing facility in Seattle, Washington.

22. Vertical World used the Perfect Descent Auto Belay device, a device manufactured and sold by C3, at its facility.

23. On August 1, 2019, while climbing at Vertical World, Mr. Vandivere fell approximately 45 feet to the floor and suffered injuries.

24. On October 16, 2019, Mr. Vandivere, his wife, and his minor daughter (together, the "Vandivere Plaintiffs") filed suit in Washington Superior Court, Kings County, against Vertical World, Inc., in a lawsuit bearing docket number 19-2-27385-2 SEA (the "Lawsuit").

25. On May 21, 2021, the Vandivere Plaintiffs filed a Second Amended Complaint, naming C3 as a defendant (the "SAC"). A copy of the SAC is attached hereto as Exhibit C.

26. The SAC alleges that "[t]he Perfect Descent Auto Belay is also subject to a recall." Ex. C at ¶ 5.37.

27. C3 did not tender the Lawsuit or the SAC to HCC.

28. Great American, C3's primary insurer, provided notice of the Lawsuit to HCC by letter dated July 22, 2022, almost three years after the incident underlying the Lawsuit and more than one year after C3 was named as a defendant in the Lawsuit.

29. By letter dated August 8, 2022, HCC sent a letter to C3 acknowledging receipt of information relating to the Lawsuit.

30. By letter dated October 4, 2022, HCC issued a reservation of its rights.

31. By separate letter dated October 4, 2022, HCC requested information from C3. This letter specifically stated that HCC was concerned about possible misrepresentations in the Application and requested, among other things, a copy of Mr. Naranjo's deposition transcript in the Lawsuit.

32. By response letter dated November 2, 2022, C3's counsel refused to provide information to HCC, but instead suggested that HCC request information from C3's defense counsel in the Lawsuit.

33. HCC requested information from C3's defense counsel, and on December 1, 2022, defense counsel provided certain information to HCC, including transcripts of depositions previously given by Mr. Naranjo in the Lawsuit.

34. One of the deposition transcripts provided to HCC was a transcript of Mr. Naranjo's February 4, 2022 deposition, taken as part of the Lawsuit. A copy of relevant portions of the deposition transcript is attached hereto as Exhibit D.

35. During the February 4, 2022 deposition, Mr. Naranjo testified that C3 issued a recall notice on May 19, 2016, and that the recall was sent to C3's mailing list of direct operators, resellers, and service centers. Ex. D at 78:22-79:22, 83:17-24.

36. At Mr. Naranjo's February 4, 2022 deposition, he was shown an August 10, 2018 email in which he wrote, "I'm going to have to recall our devices with springs from the lots that we had talked about previously. We've had 15 failures with three happening since July 13." *Id.* at 104:5-13.

37. Mr. Naranjo also testified at his February 4, 2022 deposition that C3 issued a recall notice on August 15, 2018. *Id.* at 108:8-18.

38. In the Application, dated August 31, 2018 – 16 days after the August 15, 2018 recall – Mr. Naranjo represented that C3 had never recalled any product and was not considering recalling a product. Ex. A at page 3/6, question 11.

39. By letter dated January 26, 2023, HCC rescinded the Excess Policy for material misrepresentations (the "Rescission"). A copy of the letter conveying the Rescission is attached hereto as Exhibit E.

40. HCC enclosed with the letter conveying the Rescission a premium refund check. Ex. E at p. 3, Enclosure.

41. To effectuate the Rescission and return of premium, HCC also issued an endorsement cancelling the Excess Policy effective inception.

42. By letter dated February 27, 2023, C3 objected to the Rescission.

43. HCC, through counsel, responded to C3's objection to the Rescission, by letter dated March 17, 2023.

44. Between the time of HCC's March 17, 2023 letter reaffirming the Rescission and June 25, 2023, C3 provided no further communications to HCC.

45. By letter dated June 25, 2023 and delivered at 12:22 am on June 26, 2023, C3 demanded that HCC tender, by 8:00 am on the same day, the $4 million limits of the rescinded Excess Policy to settle the Lawsuit.

46. HCC responded to the policy limit demand by email dated June 26, 2023, reiterating its rescission of the Policy and declining to pay $4 million.

47. On information and belief, jury selection in the Lawsuit began on June 26, 2023.

48. Because the Excess Policy has been rescinded, HCC has no obligation to C3 with respect to the rescinded Excess Policy or with respect to the Lawsuit.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment – The Excess Policy Was Rescinded Ab Initio)

49. Plaintiff incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

50. This is a claim for declaratory relief pursuant to Fed. R. Civ. P. 57 and C.R.S. §§ 13-51-101, et seq., the Uniform Declaratory Judgments Act.

51. Plaintiff seeks a declaration that the Excess Policy has been rescinded and that HCC therefore has no duties and no obligations with respect to the rescinded Excess Policy.

52. By signing the Application for insurance, Mr. Naranjo declared that to the best of his knowledge and belief, the statements in the Application were true and complete.

53. Before Mr. Naranjo signed the Application for insurance, C3 had issued at least two recalls, including one recall only a few days before Mr. Naranjo signed the Application.

54. C3 falsely represented in the Application that C3 had not issued any recalls.

55. Thus, C3 made false statements in the Application, including that C3 had never recalled and was not considering recalling any product, and that C3 was not aware of any fact, incident, circumstance, situation, condition, defect, or suspected defect that could result in a Products Liability claim.

56. Mr. Naranjo, on behalf of C3, knowingly made these false statements.

57. HCC did not know, and could not know, that C3 made false statements in the Application.

58. HCC relied to its detriment on C3's false statements in the Application because HCC would not have issued the Excess Policy had it known that C3 had previously issued recalls of its product, including one recall a mere days before Mr. Naranjo signed the Application.

59. In deciding to issue the Excess Policy to C3, HCC relied on the statements in the Application. C3's false statements materially affected HCC's acceptance of the risk.

60. When HCC received information about C3's previous recalls of its product, HCC rescinded the Excess Policy by informing C3 of the rescission and by returning the premium to C3.

61. C3 has objected to HCC's rescission of the Excess Policy.

62. Notwithstanding the rescission of the Excess Policy, C3 has demanded that HCC pay the $4 million limit of the rescinded Excess Policy to resolve the Lawsuit pending in Washington State.

63. For these reasons, HCC requests that the court declare that the Excess Policy is rescinded, ab initio.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, Houston Casualty Company, respectfully prays for judgment against defendant upon each and all of the claims for relief asserted herein above, including and without limitation:

(1) A declaration that the Excess Policy that had been issued to C3 Manufacturing, LLC, policy number H18PX50121-00, is rescinded ab initio and that HCC has no duties or obligations with respect to the rescinded Excess Policy;

(2) Such other and further relief as the Court deems just and proper under the circumstances.

**DATED** this 5th day of July 2023.

Respectfully Submitted,

*s/ *Jennifer C. Arnett

Jennifer C. Arnett
Arnett Litigation, LLC
1630 30th Street, Ste. A-184
Boulder, Colorado 80301
Tel: 720-726-5852
jennifer@arnettlawyers.com
*Attorney for Plaintiff Houston Casualty Company*

Plaintiff's Address:
13403 Northwest Freeway
Houston, TX 77040

---

* *Pursuant to Electronic Case Filing Procedure for the District of Colorado (Civil Cases) § 5(C)(1-3), the "s/ signature" serves as the filer's signature on all such documents filed with the court. It also serves as the filer's signature for purposes of the Federal Rules of Civil Procedure, the local rules of this court, and any other purpose for which a signature is required in connection with proceedings before the court.*