# EXHIBIT D

# Deposition of Ron Naranjo

# Vandivere, et al. v. Vertical World, Inc.

# February 4, 2022



**206.287.9066 I 800.846.6989**
1325 Fourth Avenue, Suite 1840, Seattle, Washington 98101
www.buellrealtime.com
email: info@buellrealtime.com



Page 1

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR KING COUNTY

| | |
|---|---|
| MICHAEL VANDIVERE, and KATHRYN SNOW VANDIVERE, husband and wife and their marital community, and KATHRYN SNOW VANDIVERE, as the legal guardian of W.V., a minor,<br><br>              Plaintiffs,<br><br>  vs.<br><br>VERTICAL WORLD, INC., a Washington State corporation; C3 MANUFACTURING, LLC, a Colorado company,<br><br>              Defendants. | NO: 19-2-27385-2 SEA |

_____

VIDEO DEPOSITION OF RON NARANJO

February 4, 2022
_____

Denver, Colorado

REPORTED BY:  Lisa DeLeo, Professional Shorthand Reporter

              in and for the State of Colorado

Vandivere, et al. v. Vertical World, Inc.                                                  Ron Naranjo

Page 2

```
 1   APPEARANCES

 2   FOR PLAINTIFF:        DARRELL L. COCHRAN, ESQ.
     (via Zoom)            ANDREW S. ULMER, ESQ.
 3                         ALEXANDER G. DIETZ, ESQ.
                           KEVIN M. HASTINGS, ESQ.
 4                         Pfau Cochran Vertetis Amala, PLLC
                           909 A Street, Suite 700
 5                         Tacoma, Washington  98402

 6   FOR DEFENDANT         ROBERT L. CHRISTIE, ESQ.
     VERTICAL              Christie Law Group, PLLC
 7   WORLD, INC.:          2100 Westlake Avenue North, Suite 206
                           Seattle, Washington  98109
 8
     FOR DEFENDANT         J. SCOTT WOOD, ESQ.
 9   C3 MANUFACTURING,     Sinars Slowikowski Tomaska, LLC
     LLC:                  1000 2nd Avenue, Suite 1950
10                         Seattle, Washington  98104

11   ALSO PRESENT:         WALTER MATHERN, CLVS

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Vandivere, et al. v. Vertical World, Inc.                      Ron Naranjo

Page 78

1  either C3 or OTE to be reserviced.
2      A   Yes.
3      Q   Okay.  I'm going to pull up our first document.  So
4  you should see on your screen -- and I'll drop it into the
5  chat, once I figure -- figure out how to do that.
6  (Displaying document.)  You should see a document on your
7  screen.
8      A   Yes.
9      Q   Okay.  And I just uploaded it into the chat.  I'll
10  mark this as Exhibit 1.  Give me a second.  You're familiar
11  with this document.  Why don't you identify it.
12          MR. WOOD:  Will you -- so all we can see on the
13  screen is, I guess, three-fourths of the first page.  Can
14  you give the witness a second to --
15          MR. ULMER:  Yeah.
16          MR. WOOD:  -- look through the document?
17      Q   (By Mr. Ulmer) So this is a -- this is a two-page
18  document.  I can scroll down, if you would like.  In fact,
19  let me give you scrolling privileges, Mr. Naranjo.  One
20  second.  So you should be able to freely scroll through the
21  document, yourself, on the laptop in front of you.
22            Mr. Naranjo, can you -- perfect.  So feel
23  free to take a look at the document.  And then, please
24  identify what it is.
25      A   So that is a recall notice that we issued on

Vandivere, et al. v. Vertical World, Inc.                                Ron Naranjo

Page 79

1  May 19th of 2016.
2       Q    And this is for the -- both the indoor and the
3  outdoor auto belays, correct?
4       A    Yes.
5       Q    And are these specifically speed, or direct drive,
6  or both?
7       A    No.  That -- this one would be for indoor models
8  and outdoor models, which is synonymous with speed.
9       Q    Okay.  And so the date of this notice was May 9,
10 2016.  And specifically, what -- what was this notice
11 pertaining to?
12           What was the issue?
13      A    That would have been the retraction springs.
14      Q    So I'll read the first highlighted section into the
15 record.  It says:  C3 Manufacturing recently became aware of
16 a material defect which may cause a device to cease to
17 retract the lanyard.
18           Our investigation indicates that defects in
19 the material used to manufacture the retraction spring of
20 the affected device may cause partial or complete fracture
21 of the retraction spring in the affected units causing
22 inadequate or complete loss of retraction.
23           So this pertains to the retraction springs
24 which you purchased from Sandvik.
25      A    No.  To clarify --

Vandivere, et al. v. Vertical World, Inc.                                          Ron Naranjo

Page 83

1  Descent's auto belays during these specific time frames?
2       A    No.
3       Q    So your memory is that at some point Lesjöfors
4  informed C3 of material defects for specific date ranges?
5       A    Yes.
6       Q    And then, how did C3 implement this particular
7  recall notice?  How did -- did you -- strike that.
8            Who drafted this particular recall notice?
9       A    I don't recall.
10      Q    It's signed by you on the bottom, correct?
11      A    Yes.
12      Q    Do you recall if you drafted this or did you -- did
13 you get assistance from another company or -- or consultant?
14           MR. WOOD:  Objection to the form.
15           THE DEPONENT:  It was likely me, but I don't
16 recall.
17      Q    (By Mr. Ulmer) Okay.  And so this notice is
18 drafted.  And what did C3 do, once this notice was drafted?
19           How was this notice sent to C3's customers?
20           MR. WOOD:  Objection to the form.
21           THE DEPONENT:  It would have been sent to the --
22 the mailing list of direct operators, that we had their
23 contact information from, and then, also, sent to every
24 reseller and service center for further outreach.
25      Q    (By Mr. Ulmer) Do you know, by 2016, how many

Vandivere, et al. v. Vertical World, Inc.                                Ron Naranjo

Page 104

1   A   Yes.
2   Q   And then Mike Santuk is the person you're
3   contacting, working for Lesjöfors.
4   A   Yes.
5   Q   And so I'm going to scroll to the third page, which
6   shows an e-mail that you are sending Mike on August 10, 2018,
7   correct?
8   A   Yes.
9   Q   And I highlighted a section here.  I'll read the
10  first paragraph.  It says:  I'm going to have to recall our
11  devices with springs from the lots that we had talked about
12  previously.  We've had 15 failures with three happening since
13  July 13.  I would like to have a call to discuss the problems
14  and see what can be done to remedy the situation.
15              Can you pull together the material reports
16  from all of the 100072 that have been produced to see if
17  there are others that indicate the yield/tensile
18  similarities you found.
19              So here you are e-mailing the component part
20  manufacturer for the retraction spring, identifying that
21  you're -- you're in receipt of information of failures in
22  those retraction springs within Perfect Descent auto
23  belays, correct?
24          MR. WOOD:  Objection to the form.
25          THE DEPONENT:  Yes.

Vandivere, et al. v. Vertical World, Inc.                                    Ron Naranjo

Page 108

1    A    No.
2    Q    What's winding?
3    A    In this instance, he's talking about the process
4    they use to manufacture the component.
5    Q    Okay.  It is -- and so what -- how would you
6    describe that process?
7    A    I don't think I could, to be honest with you.
8    Q    Okay.  I dropped into the chat what I'll mark as
9    Exhibit 4.  (Displaying document.)  This is a two-page
10   document.  I'll give you scrolling privileges.  There we go.
11   Take a look and -- and identify what we're looking at within
12   Exhibit No. 4.
13   A    That's a recall notice from August 15, 2018.
14   Q    And so the August 15, 2018 recall notice is
15   providing notice of the same type of material defect; a
16   defect in the materials used in the retraction spring,
17   correct?
18   A    Yes.
19   Q    It says here:  Complete fracture of the retraction
20   spring will result in a loss of retraction and the
21   possibility of the lanyard, quote, paying out, end quote,
22   thereby losing tension on the line.
23            What does paying out mean?
24   A    We're -- we're referring to, if somebody tugs on
25   the line, they're paying out line and it's adding to the