# EXHIBIT B



# Houston Casualty Company

Executive offices at 13403 Northwest Freeway, Houston, TX 77040

A Stock Insurance Company, herein called the Company

## Commercial Excess Liability Policy Declarations

Policy Number:      H18PX50121-00
Prior Policy Number:      N/A

**ITEM 1 – Named Insured and Mailing Address**
C3 Manufacturing LLC
3809 Norwood Dr.
Littleton, CO 80125

**Producer Name and Address:**
Veracity Insurance Solutions
260 South 2500 West, Suite 303
Pleasant Grove, UT 84062

**ITEM 2 – Coverage**
Commercial Excess Liability

**ITEM 3 – Policy Period**
Effective:      10/11/2018
Expiration:     10/11/2019
12:01 a.m. Standard Time at the address of the Named Insured

**ITEM 4 – Limits of Insurance**
A. $4,000,000 Each Occurrence Limit
B. $4,000,000 Other Aggregate Limit (Other than Products-Completed Operations Aggregate Limit)
C. $4,000,000 Products-Completed Operations Aggregate Limit

**ITEM 5 – Retroactive Date**
Per Underlying Policy

## ITEM 6 – Applicable Forms and Endorsements (Attached)

### Applicable Forms and Endorsements

| Form | Description |
|---|---|
| HXC1 001 0814 | Commercial Excess Liability Coverage Form |
| HXC1 002 0814 | Commercial Excess Liability Policy Declarations |
| HXC OFAC 0814 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| HXC1 215 0814 | Service of Suit Clause Endorsement |
| HXC 114 0814 | Auto Liability Exclusion |
| HXC 999 0218 | Schedule of Underlying Insurance |
| HXL 8050 0115 | Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States |
| HXC 408 0215 | Nuclear, Biological or Chemical Exclusion |

## ITEM 7 – Schedule of Underlying Insurance (Attached)

## ITEM 8 – Premium & Audit

*Premium:*
$ ▓▓▓▓ Minimum & Deposit
$ ▓▓▓▓ Minimum Earned Premium

*Audit:*
Estimated Annual Exposure:   Flat
Rate:   Flat
Basis:   Flat
Audit Period:   N/A

Date Issued 10/22/2018

Countersigned By: _/s/ James J. Bechtlin_
Authorized Representative



# Commercial Excess Liability Coverage Form

Various provisions in this policy restrict coverage. Read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is covered and not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as an insured under the "underlying insurance". The words "we", "us" and "our" refer to the Company shown in the Declarations. Other words and phrases that appear in quotation marks have special meanings, as described in SECTION V - Definitions.

### SECTION I – Excess Liability Insurance

1. **Insuring Agreement**

   a. We will pay those sums in excess of the limits shown in ITEM 7 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of "injury or damage" to which this policy applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable limits of insurance.

   b. This policy is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except:

   i. We will have no obligation under this policy with respect to any claim or "suit" that is settled without our written consent;

   ii. With respect to any provisions to the contrary contained in this policy; and

   iii. Under no circumstances will the coverage available under this policy be broader than any "underlying insurance".

   c. If any "underlying insurance" applies on a claims-made basis, this policy will also apply on a claims-made basis. Regarding any "underlying insurance" that applies on a claims-made basis, this policy will not apply to any "injury or damage" that first arose before the Retroactive Date shown in ITEM 5 of the Declarations or after the end of this policy expiration date.

   Any extended reporting periods that may be endorsed to any "underlying insurance" shall not apply to this policy. For any supplemental extended reporting period to apply to this policy, such extended reporting period must be requested by you from us, negotiated with us and endorsed to this policy.

   d. The amount we will pay for damages shall not exceed the Limits of Insurance stated in ITEM 4 of the Declarations.

   e. We will have the right, but not the duty, to participate in the investigation, defense, and settlement of all claims or "suits" against you seeking damages because of "injury or damage" to which this policy may eventually apply. We will have the right and duty to defend such claims or "suits", including the right to appoint new or substitute counsel to represent you, after the applicable limit of insurance of the "underlying insurance" has been fully exhausted by payments covered under the "underlying insurance" in cash for judgments, settlements and any cost or expense subject to such limit for the full amount of their respective liabilities.

   Our right and duty to defend end when the applicable limit shown in the Declarations has been exhausted by the payment of judgments, settlements and/or any defense costs or expenses pursuant to **Section III. 6.**

   f. We shall have no duty to defend any insured against any claim, "suit", or other proceeding alleging damages arising out of or related to "injury or damage" not covered by this policy.

    g. We may at our discretion, investigate and settle any claim or "suit" to which this policy applies.

**SECTION II – Exclusions**

The exclusions applicable to the "underlying insurance" also apply to this policy. In addition, this policy does not apply to:

1. **Asbestos or Asbestos-Related Dust**

    Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

    a. "Asbestos", "asbestos" products, materials or products containing "asbestos", "asbestos" fibers or "asbestos" dust, "asbestos-related dust", including, but not limited to, manufacturing, mining, use, sale, installation, removal, or distribution activities;

    b. Exposure to, testing for, monitoring of, cleaning up, removing, containing or treating of "asbestos", "asbestos" products, materials or products containing "asbestos", "asbestos" fibers, or "asbestos" dust, "asbestos-related dust"; or

    c. Any obligation to investigate, settle or defend, or indemnify any person against any claim or "suit" arising out of or related in any way, either directly or indirectly, to "asbestos", "asbestos" products, materials or products containing "asbestos", "asbestos" fibers, or "asbestos" dust, or "asbestos-related dust".

2. **Nuclear Energy**

    Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

    a. "Injury or damage" or "property destruction":

        i. With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        ii. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

            (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

            (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    b. "Injury or damage" or "property destruction" resulting from "hazardous properties" of "nuclear material", if:

        i. The "nuclear material":

            (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

            (b) Has been discharged or dispersed therefrom;

        ii. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

        iii. The "injury or damage" or "property destruction" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (iii.) applies only to "property destruction" to such "nuclear facility" and any property thereat.

c. As used in this section:
   i. "Hazardous properties" includes radioactive, toxic or explosive properties.
   ii. "Nuclear material" means "source material", "special nuclear material" or "by-product material".
   iii. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.
   iv. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".
   v. "Waste" means any waste material:
      (a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and
      (b) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".
   vi. "Nuclear facility" means:
      (a) Any "nuclear reactor";
      (b) Any equipment or device designed or used for:
         (1) Separating the isotopes of uranium or plutonium;
         (2) Processing or utilizing "spent fuel"; or
         (3) Handling, processing or packaging "waste";
      (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
      (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and
      
      includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.
   vii. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
   viii. "Property destruction" includes all forms of radio-active contamination of property.

3. **No Fault, Personal Injury Protection, Uninsured or Underinsured Motorist**

   Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:
   a. No Fault coverage;
   b. Personal Injury Protection or Auto Medical Payments coverage; or
   c. Uninsured Motorist or Underinsured Motorist Law, or any similar law, regulation or ordinance.

   However, exclusion 3.c. above does not apply to the extent that this policy has been endorsed to provide specific Excess Uninsured Motorist and/or Underinsured Motorist Coverage.

4. **War or Governmental Action**

   Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

   d. Confiscation or nationalization or requisition or destruction of or damage to property including loss of access, by or under the order of any government or local authority.

5. **Lead or Lead-Related Dust**

   Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

   a. The absorption, ingestion or inhalation of "lead" in any form by any person;

   b. Existence of "lead" in any form;

   c. Any request, demand, order or statutory or regulatory requirement that any insured or others:

      i. Test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "lead" or "lead-related dust" in any form; or

      ii. Respond to, or assess, in any way the effects of "lead" in any form; or

   d. Any obligation to investigate, settle, defend, or indemnify any person against any claim or "suit" arising out of or related in any way, either directly or indirectly, to "lead", "lead" products, materials or products containing "lead", "lead" dust, or "lead-related dust".

6. **Mold or Fungi**

   Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

   a. Mold, mildew, "fungal material", spores, viruses, bacteria, or any of their byproducts, or any other biological, etiological or other naturally occurring contaminant, or any of their byproducts;

   b. Any damages, obligations, claim, injury or expense associated with a request, demand or order from any body or individual, including but not limited to any governmental body or actor, that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of any mold, mildew, "fungal material", spores, viruses, bacteria, or any of their byproducts, or any other biological, etiological or other naturally occurring contaminant, or any of their byproducts; or

   c. Any damages, obligations, claim or injury associated with any material, products, building component, building or structure that contain, harbors, nurtures or acts as a medium for any such mold, mildew, "fungal material", spores, viruses, bacteria, or any of their byproducts, or any other biological, etiological or other naturally occurring contaminant, or any of their byproducts.

7. **Silica or Silica-Related Dust**

   Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

   a. "Silica", "silica-related dust", or any product containing or involving "silica" or "silica-related dust";

b. Any "injury or damage", cost or expense, arising in whole or in part, out of the abating, testing, monitoring, remediating, neutralizing, removing or cleaning up of "silica", "silica-related dust", products and materials containing "silica" or "silica-related dust" by any insured or by any other person or entity;

c. The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of "silica", "silica-related dust" or products and materials containing "silica" or "silica-related dust";

d. The cost of disposal of "silica" substances or taking of such other action as may be necessary to temporarily or permanently prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result by any insured or by any other person or entity; or

e. The cost of compliance with any law or regulation regarding "silica" or "silica-related dust".

8. **Employment-Related Practices**

Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

a. Refusal to employ any person;

b. Termination of any person's employment;

c. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

d. The spouse, child, parent, brother or sister of any person as a consequence of "injury or damage" to that person to whom any of the employment-related practices described in Paragraphs **a.**, **b.** or **c.** above is directed.

This exclusion applies:

a. Whether the injury-causing event described in Paragraphs **a.**, **b.** or **c.** above occurs before employment, during employment or after employment of that person;

b. Whether the insured may be liable as an employer or in any other capacity; and

c. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

9. **Cyber Liability**

Any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

a. Any loss, alteration, access to or disclosure of any person's or organization's personal, confidential or other information or "electronic data" including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

b. The:

   i. Loss of, manipulation of, alteration of, loss of use of, damage of, corruption of; or

   ii. Access to or inability to access

   any computer hardware, computer software, information system, computer network including intranets, extranets or virtual public networks as the result of Paragraph **a.** above.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others.

**SECTION III – Limits of Insurance**

1. The Limit of Insurance shown in **ITEM 4 A. Each Occurrence Limit** of the Declarations as Each Occurrence is the most we will pay for all "injury or damage" arising out of any one occurrence or offense regardless of the number of:

    a. Insureds;
    b. Claims made or "suits" brought; or
    c. Persons or organizations making claims or bringing "suits".

2. The Limit of Insurance scheduled in **ITEM 4 B. Other Aggregate Limit (Other than Products-Completed Operations Aggregate Limit)** of the Declarations is the most we will pay for all sums in excess of the limits of the "underlying insurance" that you become legally obligated to pay as damages because of "injury or damage" to which this policy applies, except for such sums within the "products-completed operations hazard" and which are subject to an aggregate limit provided by "underlying insurance". The Other Aggregate Limit applies separately and in the same manner as the Other than Products-Completed Operations Aggregate Limit provided by the "underlying insurance".

3. The Limit of Insurance shown in **ITEM 4 C. Products-Completed Operations Aggregate Limit** of the Declarations is the most we will pay for all sums in excess of the limits of the "underlying insurance" that you become legally obligated to pay as damages because of "injury or damage" to which this policy applies within the "products-completed operations hazard", regardless of the application of any aggregate limit for coverage provided by any "underlying insurance".

4. If any "underlying insurance" does not provide separate aggregate limits for "injury or damage" within the "products-completed operations hazard" and "injury or damage" not within the "products-completed operations hazard", then the limit stated in **ITEM 4 B. Other Aggregate Limit (Other than Products-Completed Operations Aggregate Limit)** of the Declarations is the most we will pay for all "injury or damage" to which this policy applies. Under such circumstances, any limit appearing in **ITEM 4 C. Products-Completed Operations Aggregate Limit** of the Declarations does not apply.

5. If the applicable aggregate limit of insurance has been reduced by payment of those sums set forth in **Section III. 2.** or **3.** above to an amount that is less than the Limit of Insurance shown in **ITEM 4 A. Each Occurrence Limit**, the remaining applicable aggregate limit of insurance is the most that will be available for payment of damages because of "injury or damage" to which this policy applies arising out of any other occurrence.

6. If the Limits of Insurance of the "underlying insurance" applicable to those sums set forth in **Section III. 1.** above are reduced by defense expenses by the terms of that policy, any payments for defense expenses we make will reduce our applicable Limits of Insurance in the same manner.

**SECTION IV – Conditions**

If any of the following conditions are contrary to conditions contained in the "underlying insurance", the conditions contained in this policy will apply.

1. **Appeals**

    In the event that you or any underlying insurer(s) elect not to appeal a judgment in excess of the limits of "underlying insurance", we may elect to make such an appeal. If we do so elect, we will be liable for the costs and interest incidental to this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance stated in ITEM 4 of the Declarations.

2. **Bankruptcy or Insolvency**

   Bankruptcy of the Insured will not relieve us of our obligations under this policy.

   Bankruptcy or insolvency of any underlying insurer will not relieve us of our obligations under this policy. However, this policy will not replace the "underlying insurance" in the event of bankruptcy or insolvency of any underlying insurer. This policy will apply as if the "underlying insurance" was available and collectible.

3. **Maintenance of Underlying Insurance**

   You agree to maintain the "underlying insurance" listed in ITEM 7 of the Declarations in full force and effect during the term of this policy, and to inform us in writing within 30 days of any replacement or material change of that "underlying insurance" by the same or another company.

   Failure to maintain "underlying insurance" will not invalidate this policy; however, this policy will apply as if the "underlying insurance" was in full force and effect.

   Reduction or exhaustion of the aggregate limit of any "underlying insurance" by payment in cash by the "underlying insurance" for covered judgments, settlements or any costs or expenses subject to that limit, will not be a failure to maintain "underlying insurance" in full force and effect.

   The Named Insured as set forth in ITEM 1 of the Declarations is responsible to provide us with a copy of the "underlying insurance" policy and any endorsements attached thereto and any subsequently-issued endorsements.

4. **Unimpaired Aggregates of Underlying Insurance**

   If an aggregate limit of any "underlying insurance" has been reduced below the aggregate amount shown in the Schedule of Underlying Insurance in ITEM 7 of the Declarations for that "underlying insurance" as a result of:

   a. "Injury or damage" occurring prior to the inception date of this policy; or
   b. "Injury or damage" not covered by this policy,

   we will apply all insurance provided by this policy as if the aggregate limit of the "underlying insurance" had not been reduced below the limit shown in the Schedule of Underlying Insurance in ITEM 7 of the Declarations.

   Condition 4.a. above does not apply to "injury or damage" subject to claims-made coverage and arising after the Retroactive Date shown in ITEM 5 of the Declarations (if any).

5. **Underlying Insurance Sublimit(s)**

   This policy does not apply if the "underlying insurance" limit applicable to the claim or "suit", has an each accident, each occurrence, per event, per claim, or per wrongful act limit less than the applicable each accident, each occurrence, per event, per claim, or per wrongful act limit of "underlying insurance" as shown in ITEM 7 - Schedule of Underlying Insurance.

6. **Changes**

   This policy (including the Declarations, schedules and any endorsements) contains all agreements between you and us concerning the insurance afforded. Notice to any agent or knowledge possessed by any agent or any other person will not waive, replace or change any part of this policy. The Named Insured shown in the Declarations or their representative may request changes in the terms of this policy. This policy's terms and conditions can be amended or waived only by an endorsement issued by us that is signed by one of our authorized representatives.

7. **Other Insurance**

    This policy is excess over, and shall not contribute with, any other valid or collectible insurance whether primary, excess, contingent or on any other basis, except other insurance written specifically to be excess over this policy.

8. **Cancellation**

    a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    b. We may cancel this policy by mailing or delivering written notice of cancellation to the first Named Insured shown in the Declarations at least:

        i. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

        ii. 60 days before the effective date of cancellation if we cancel for any other reason.

    c. We will mail or deliver our notice to the Named Insured's last mailing address known to us.

    d. Notice of cancellation will state the effective date of cancellation and will be effective for all insureds. This policy will end on that date.

    e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

    f. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

9. **Examination of Your Books and Records**

    We may examine and audit your books and records as they relate to this policy at any time.

10. **Inspections and Surveys**

    We have the right, but not the duty, to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

11. **Legal Action Against Us**

    There will be no right of action against us under this policy unless:

    a. You have complied with all terms of this policy; and

    b. The amount you owe has been determined by settlement with our written consent or by actual trial and final judgment; but we will not be liable for any "injury or damage" that is not payable under this policy or that is in excess of the applicable limit of insurance as set forth in ITEM 4 of the Declarations.

    This policy does not give anyone the right to add us as a party in any action or lawsuit against you brought to determine your liability.

12. **Notice of Occurrence, Offense, Accident, Act, Error or Omission, Claim or Suit**

    a. You must see to it that we are notified in writing as soon as practicable of an occurrence, offense, accident, act, error or omission which is reasonably likely to result in a claim or "suit" which may involve this policy.

        To the extent possible, notice will include:

        i. How, when and where the occurrence, offense, accident, act, error or omission took place;

        ii. The names and addresses of any injured persons and witnesses; and

        iii. Nature and location of any "injury or damage" arising out of the occurrence, offense, accident, act, error or omission.

    b. If a claim is made or "suit" is brought against any insured which is reasonably likely to result in a claim or "suit" which may involve this policy, you must:
        i. Immediately record the specifics of the claim or "suit" and the date received; and
        ii. Notify us in writing as soon as practicably possible.
    c. You and any other involved insured must:
        i. Immediately send us copies of demands, notices, summonses, or legal papers received in connection with the claim or "suit";
        ii. Authorize us to obtain records and other information;
        iii. Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and
        iv. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this policy may also apply.
    d. No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 13. Representations or Fraud

By accepting this policy, you agree:

    a. The statements in the Declarations are accurate and complete;
    b. Those statements are based upon representations you made to us;
    c. We have issued this policy in reliance upon your representations; and
    d. This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

### 14. Transfer of Your Rights and Duties Under This Policy

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing to impair those rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## SECTION V – Definitions

The definitions applicable to the "underlying insurance" also apply to this policy, except that the following definitions control the defined terms in this policy:

1. "Asbestos" means asbestos in any form, including its use or presence in any alloy, compound, by-product, or other material or waste. Waste includes material to be disposed of, recycled, reconditioned or reclaimed.

2. "Asbestos-related dust" means a mixture or combination of "asbestos" and any dust or particles.

3. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

4. "Fungal material" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

5. "Injury or damage" means any injury or damage covered under the applicable "underlying insurance" arising from an occurrence, offense, accident, act, error or omission or other event to which the "underlying insurance" applies.

6. "Lead" means the element lead in any form, including its use or presence in any alloy, compound, by-product, or other material or waste. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

7. "Lead-related dust" means a mixture or combination of "lead" and any dust or particles.

8. "Products-completed operations hazard" shall have the same meaning as set forth in the applicable "underlying insurance".

9. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, "silica-related dust" or silica compounds.

10. "Silica-related dust" means a mixture or combination of "silica" and any dust or particles.

11. "Suit" means a civil proceeding in which damages because of "injury or damage" to which this policy applies are alleged. "Suit" includes:
    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our written consent; or
    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our written consent.

12. "Underlying insurance" means the policies of insurance listed in ITEM 7 of the Schedule of Underlying Insurance, including any policies that provide coverage to the insured that are part of or scheduled on the policies listed in ITEM 7, also including any self-insured retentions, retained limits and/or deductibles.

In witness whereof, we have caused this policy to be signed by our President and Secretary and countersigned where required by law on the Declarations page by our duly authorized representative.

_____
President

_____
Secretary

_____
Authorized Representative

# ITEM 7 - SCHEDULE OF UNDERLYING INSURANCE

**GENERAL LIABILITY CARRIER:**     Great American Insurance
Type:     Commercial General Liability
Policy Number:     PL1745347-01
Policy Term:     10/11/2018 to 10/11/2019
Limits of Liability:
    Each Occurrence Limit:     $ 1,000,000
    General Aggregate Limit:     $ 2,000,000
    Products-Completed Operations Aggregate Limit:     $ 2,000,000
    Personal Injury & Advertising Limit:     $ 1,000,000

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT CLAUSE ENDORSEMENT
(Not applicable in Texas)

This endorsement modifies insurance provided under this policy.

This endorsement applies in jurisdictions where the Company is not an admitted insurer.

It is agreed that in the event of the Company's failure to pay the amount claimed to be due hereunder, the Company, at the request of the insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. Nothing in this Endorsement constitutes or should constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States.

It is further agreed that, pursuant to any statute of any state, territory or district of the United States that makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this policy, and hereby designates the President of the Houston Casualty Company in care of the General Counsel, at 13403 Northwest Freeway, Houston, TX, 77040, as the person to whom the said officer is authorized to mail such process or true copy thereof.

It is further understood and agreed that service of process in such suit may be made upon RANDY RINICELLA, Secretary, at 13403 Northwest Freeway, Houston, TX, 77040, and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

For the purposes of this endorsement company means Houston Casualty Company.

This endorsement does not change any other provisions of this policy.

HXC1 215 0814                                                                                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTOMOBILE LIABILITY EXCLUSION

This endorsement modifies insurance provided under this policy.

This policy does not apply to any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to the ownership, maintenance, operation, use, hiring, borrowing or loading or unloading of any auto.

For the purpose of this endorsement:

Auto means:

**1.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, auto does not include mobile equipment.

Mobile equipment means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **a.** Power cranes, shovels, loaders, diggers or drills; or

    **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **b.** Cherry pickers and similar devices used to raise or lower workers;

**6.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos:

    **a.** Equipment designed primarily for:

        **i.** Snow removal;

        **ii.** Road maintenance, but not construction or resurfacing; or

        **iii.** Street cleaning;

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

     **b.**  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     **c.**  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, mobile equipment does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.  Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered autos.

This endorsement does not change any other provisions of this policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under this policy.

Any endorsement addressing acts of terrorism (however defined) in any "underlying insurance" does not apply to this policy. The following provisions addressing acts of terrorism apply with respect to this policy.

**A.** The following exclusion is added:

This policy does not apply to:

**TERRORISM**

Any "injury or damage" arising, directly or indirectly, out of a certified act of terrorism, or out of an other act of terrorism that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the coverage territory.

**B.** For the purposes of this endorsement, the following definitions are added:

   **1.** Certified act of terrorism means an act that is an act of terrorism pursuant to the federal Terrorism Risk Insurance Program. The federal Terrorism Risk Insurance Program sets forth the criteria for a certified act of terrorism:

   **a.** The act resulted in aggregate losses in excess of a prescribed amount; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   **2.** Other act of terrorism means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Program. Multiple incidents of an other act of terrorism which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a certified act of terrorism or an other act of terrorism that is not subject to this exclusion, coverage does not apply to any "injury or damage" that is otherwise excluded under this Coverage Part.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL OR CHEMICAL EXCLUSION

This endorsement modifies insurance provided under this policy.

This policy does not apply to any actual or alleged liability arising out of, based upon, or related in any way, either directly or indirectly, to:

1. The actual, threatened, attempted or suspected use, release, dispersal or application of any:
   a. Nuclear material, or
   b. Nuclear material that directly or indirectly results in:
      1. Nuclear reaction;
      2. Radiation; or
      3. Radioactive contamination; or
   c. Pathogenic or poisonous biological or chemical materials;

   and it appears that the use, release, dispersal or application of such material(s) is part of any plan, effort, or design to intentionally cause "injury or damage.

2. Any actual or alleged negligence or other wrongdoing with respect to the:
   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Hiring;
   e. Monitoring;
   f. Reporting to the proper authorities, or failure to so report; or
   g. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **1.** above.

This endorsement does not change any other provisions of this policy.

HXC 408 0215                                                                                                                    Page 1 of 1



# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"). **Please read this Policyholder Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

HXC OFAC 0814                                                                                                           Page 1 of 1
Includes copyrighted material of ISO Properties, Inc. used with permission.