**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.   23-cv-01705-RMR

Houston Casualty Company,

    Plaintiff,

v.

C3 Manufacturing LLC,

    Defendant.

---

**HCC'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

Houston Casualty Company ("HCC"), by and through counsel, Arnett Litigation, LLC, files this Response in Opposition to Defendant's Motion to Dismiss.  In support of its Response, HCC states the following:

### I.  PRELIMINARY STATEMENT

There is no pending case by defendant C3 Manufacturing LLC ("C3") against HCC and no basis for this Court to abstain from exercising its jurisdiction. C3 bases its motion on a potential case that C3 may file in Washington state court, which potential case would involve different claims and different parties. Dismissing this lawsuit on the basis of such a tenuous connection to a potential lawsuit would be unprecedented and an abuse of discretion. Even if C3 does file a state court lawsuit against HCC, the exceptional circumstances required for this Court to abstain from exercising its jurisdiction over this case would be absent.

HCC was the first to file, and it filed this lawsuit in the most appropriate forum – in federal court venued in the state where C3 was formed and has its principal place of business, the state where the Policy was issued, and the state whose laws will apply to this matter. There is no significant issue of state law – and certainly not of Washington state law – with which this Court would interfere by exercising its jurisdiction over the case.

This Court should deny C3's motion and the Court should exercise its jurisdiction over the lawsuit presently before the Court.

## II. BACKGROUND

HCC initiated this declaratory judgment action to obtain a ruling on the validity of the insurance policy rescission that resulted from C3's fraudulent application. The case pending in Washington State court is a personal injury suit brought by Michael Vandivere against Vertical World and C3 for injuries Mr. Vandivere suffered when he fell while rope climbing. ECF No. 5 ¶¶ 25-26. HCC is not a party to that underlying lawsuit.

HCC was put on notice of the underlying lawsuit almost three years after that suit had been filed. *Id.* ¶ 29. HCC then discovered that C3 had issued at least two recalls, notwithstanding that C3 had represented in its application for insurance that C3 had never recalled any product and was not considering recalling a product. *Id.* ¶¶ 36-39. HCC then rescinded the policy on the basis of fraud and returned the premium amount to C3. *Id.* ¶ 40.

Several months after the rescission, C3 demanded that HCC pay the $4 million limits of the rescinded excess policy to settle the underlying lawsuit. *Id.* ¶ 46. Because there was no policy in place, HCC declined, *id.* ¶ 47, and HCC sought, by means of the present lawsuit, a declaratory

judgment that the rescission of the policy was effective and that HCC therefore has no obligation to C3.

C3 disagrees with HCC's position, and HCC has learned through C3's Motion to Dismiss (the "Motion") that C3 may file a lawsuit against HCC in Washington state court. HCC also learned through the Motion that two unnamed law firms may be named as defendants for failing to notify other parties to the underlying lawsuit about HCC's recission of the Policy, in addition to other alleged misconduct. But no such suit has been filed, and indeed it may never be filed. At this point in time, a C3 lawsuit against HCC is nothing more than a theoretical possibility.

## II. LEGAL ARGUMENT

**A.     This Court Should Hear the Declaratory Judgment Action Pending Before It**

C3 implies that the Court can decide whether or not to hear the present declaratory judgment matter, essentially based on nothing more than a whim. ECF No. 17 at 3. But a federal court "in the exercise of its discretion should declare the parties' rights and obligations when the judgment will (1) clarify or settle the legal relations in issue and (2) terminate or afford relief from the uncertainty giving rise to the proceeding." *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1275 (10th Cir. 1989). In the insurance context, even if an underlying case is pending, "nothing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues." *Id.* at 1276 (finding that the district court properly ruled on the declaratory judgment action).

Here, HCC has sought a declaration to settle the legal relations between itself and C3 in light of HCC's rescission of the Policy and C3's insistence that HCC pay its policy limits under

the rescinded Policy. A declaratory judgment on the effectiveness and the effect of the rescission will afford relief to the uncertainty regarding the status of the rescinded Policy. This Court should exercise its jurisdiction and hear the declaratory judgment proceeding currently before it.

**B.      There Is No Concurrent Litigation, and This Court Should Exercise Its Jurisdiction Over the Case**

As the Supreme Court has ruled, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Contrary to the impression that C3 tries to convey, "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction….'" *Id.* at 817 (citation omitted). Indeed, "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819. "[T]he Court's task . . . 'is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of the jurisdiction.'" *Tetra Tech Inc. v. Town of Lyons*, Nos. 22-cv-00110 and 22-cv-00239, 2022 U.S. Dist. LEXIS 208130, *21 (D. Colo. Nov. 16, 2022) (Wang, J.) (citations omitted). "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

As C3 points out, the first step to determining whether a court should abstain from exercising its jurisdiction is to determine if the proceedings are parallel. ECF No. 17 at 3 (citing *Tetra Tech*). But this analysis cannot be performed here because there are not two pending proceedings. Indeed, "[t]he Court examines 'the state proceedings *as they actually exist* to

Page 4

determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction.'" *Tetra Tech*, 2022 U.S. Dist. LEXIS 208130, *23 (citation omitted). Only the present lawsuit is pending; there is no other pending proceeding against which to compare this lawsuit.

If this Court were to analyze the potential, unfiled lawsuit to determine whether it should abstain from exercising its jurisdiction over the present case, such a decision would be without precedent. C3 cites no cases involving unfiled, potential lawsuits, and undersigned counsel could find none. Such a ruling would be an abuse of discretion. *See id.* at *20; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (regarding "a serious abuse of discretion"); *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) ("[I]f we are to conduct any meaningful review of a district court's exercise of discretion under the *Colorado River* doctrine, the court must make its findings about the parallel nature of the state and federal proceedings and the balance of the factors on the record.").

**C.   The Suits Would Be Not Be Parallel if C3 Were to File a Lawsuit Against HCC in Washington State and None of the Abstention Factors Would Weigh in Favor of Abstention**

In the event this Court decides that it can analyze a potential lawsuit to determine whether to abstain from exercising its jurisdiction over this controversy, HCC emphasizes that the suits would not be parallel and none of the abstention factors weigh in favor of abstaining.

    1.   <u>The Suits Would Not Be Parallel</u>

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox,* 16 F.3d at 1081 (citation omitted). C3 has represented that it intends to file suit against two law firms in Washington state court. HCC is not a law firm, and HCC has not sued

any law firms in the present action. Thus, the same parties would not be involved in the potential Washington State lawsuit. Whatever claims C3 intends to pursue against law firms is between C3 and those firms – not HCC.

In addition, C3 represents in the Motion that it intends to bring a breach of contract and bad faith claim against HCC for declining to settle the underlying lawsuit. The present lawsuit, by contrast, seeks a declaratory judgment that the rescission of the Policy, due to C3's fraudulent statements on the application for insurance, is valid and effective. These are different claims. Even if C3 counterclaims for bad faith breach of insurance contract in this case, the claim asserted by HCC, that there is no contractual obligation as between HCC and C3 due to rescission of the Policy, must necessarily be determined before a court can opine on C3's potential claims or counterclaims, breach of contract and bad faith. If HCC's rescission of the Policy is effective, no Policy is in place and there can be neither a breach of contract nor a bad faith claim. Further, Colorado law will apply to any dispute between HCC and C3,[1] and a federal court located in Colorado, which is accustomed to applying Colorado law, will be best suited to make the determinations requested by the parties.

2. The *Colorado River* and *Tetra Tech* Factors Weigh in Favor of This Court Exercising Its Jurisdiction

None of the abstention factors apply in favor of abstention. Those non-exclusive factors are:

    1. the possibility that one of the two courts has exercised jurisdiction over property
    2. the inconvenience from litigating in the federal forum
    3. the avoidance of piecemeal litigation

---

[1] Colorado law will apply to this lawsuit because the insurance policy at issue, now rescinded, was issued in Colorado to a Colorado limited liability company. *See, e.g.*, *Ackerman v. Foster*, 974 P.2d 1, 3 (Colo. Ct. App. 1998); *Ludwig v. USAA Gen. Indeminity Co.*, No. 15CV30764, 2016 Colo. Dist. LEXIS 886, *6-7 (Colo. Dist. Ct., Pueblo Cty. Feb. 9, 2016).

    4. the sequence in which the courts obtained jurisdiction
    5. the "vexatious or reactive nature" of either case
    6. the applicability of federal law
    7. the potential for the state-court action to provide an effective remedy for the federal plaintiff
    8. the possibility of forum shopping.

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1122 (10th Cir. 2018) (citing *Maulding*, 16 F.3d at 1082).

    The first factor is not applicable because this controversy does not involve property. The second factor, inconvenience from litigating in the federal forum, weighs in favor of this Court exercising its jurisdiction. Defendant C3 is a Colorado limited liability company with its primary place of business in Colorado. Exhibit 1, Apr. 27, 2023 Periodic Report of C3 to Colorado Secretary of State. The Policy was issued in Colorado, and Colorado law will apply. Exhibit 2, Declaration page of HCC Commercial Excess Liability Policy number H18PX50121-00. A court located in Colorado is the most convenient forum. In addition, both parties will surely require Colorado counsel to advise on Colorado law. Unless one of the parties happens to find counsel admitted in both Washington and Colorado, the parties would require two sets of attorneys if they were to litigate this matter in Washington state court.

    Third, there is no piecemeal litigation because no other suit has been filed. Even if suit is filed in Washington state court, this Court can determine any potential counterclaims that C3 may assert against HCC. Potential claims against law firms would involve different parties, different claims, and the law of a different state (Washington). The potential claims against the law firms cannot weigh in favor of the drastic decision to abstain from exercising jurisdiction. This is certainly not a situation where this Court is being asked to rule on "the same issues [on which] the state court has already [entered an] order[]." *Tetra Tech*, at \*34.

Fourth, this Court obtained jurisdiction first, a factor which C3 simply ignores. Motion at 6-7. As discussed *infra*, this Court therefore has priority of jurisdiction. Fifth, there is no vexatious or reactive nature with respect to this matter, and C3 does not claim that there is. This is not a situation where the federal plaintiff, HCC, filed a federal complaint after a state court ruling against it was issued. *Cf. Tetra Tech*, at *35-36. Sixth, while federal law does not apply to this case, Colorado state law does apply, and this Court is undoubtedly accustomed to applying Colorado law to insurance disputes. A Washington state court will be less accustomed to applying Colorado law, if it has ever done so. Seventh, with no filed state-court action, it is impossible to determine whether any such potential suit would provide an effective remedy for HCC, the federal plaintiff. And finally, there is no forum shopping by HCC, which filed this case in federal court located in the state where C3 exists and in the state whose laws will apply. This is not a case where HCC filed suit in federal court only after receiving a state court ruling with which it was dissatisfied. *Cf. Tetra Tech*, at *40-41.

The facts of the cases relied upon by C3 are distinguishable. *Colorado River* involved applicability of a federal law that vested determination of water rights in state districts. There, "involvement of state water rights" were "extensive." 424 U.S. at 820. Under those circumstances, the Court found that the state court action should proceed. *Id.* Here, by contrast, there is no involvement of Washington state rights in the determination of the HCC – C3 suit; rather, Colorado law will apply. In *Tetra Tech*, the conflict was between a first-filed state court action, a subsequent motion for a stay pending arbitration, and a later-filed federal lawsuit seeking a declaration that certain parties were not subject to arbitration. 2022 U.S. Dist. LEXIS 208130. The federal plaintiffs sought, in essence, a ruling contrary to an already-issued state court ruling and arbitration order.

*Id.* at *13-14, 40. That is not the situation here, as there have been no previous rulings on the dispute between HCC and C3; this is the first-filed suit.

There is no basis for abstention, and the Court should deny Defendant's Motion.

### D.     This Court Has Priority of Jurisdiction

"Where two courts may exercise jurisdiction over the same parties and subject matter, we have stated that the first action filed has priority of jurisdiction, and that the second action must be stayed until the first is finally determined ('priority rule')." *Town of Minturn v. Sensible Hous. Co.*, 2012 CO 23, P19 (citations omitted). *See also, e.g.*, *Wisehart v. Wisehart*, No. 2016CV30032, 2016 Colo. Dist. LEXIS 1932, *6 (Colo. Dist. Ct., Delta Cty. Aug. 29, 2016). As explained by the Colorado Supreme Court, "[i]n our country, where there are two separate jurisdictions – federal and state – the rule which preserves the two systems of courts from conflict of jurisdiction, is that the court which first acquires jurisdiction of the subject matter of the litigation, whether it be person or property, must be permitted to exhaust its jurisdiction, to attain that for which it assumed control, before the other court may assert jurisdiction for its own purpose." *Gonzales v. Horan,* 138 Colo. 275, 278 (Colo. 1958).

Here, this Court clearly has priority over the dispute between HCC and C3. HCC filed the action first, in the most convenient forum. As of the drafting of this response, C3 has not filed a lawsuit against HCC. The priority rule dictates that this Court has priority and the case should not be dismissed.

### III.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, C3's motion to dismiss should be denied.

Page 9

**DATED** this 31st day of July 2023.

    Respectfully submitted,

ARNETT LITIGATION, LLC

By: *s/ *Jennifer C. Arnett*

Jennifer C. Arnett, Esq.
1630 30th Street
Suite A-184
Boulder, Colorado 80301
Tel: (720) 726-5852
jennifer@arnettlawyers.com
*Attorney for Plaintiff Houston Casualty Company*

## CERTIFICATE OF SERVICE

  I hereby certify that on July 31, 2023, I electronically filed the foregoing **HCC'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                 *s/ Christine Giaquinto*
                 Legal Assistant for Arnett Litigation, LLC