**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01705-RMR-NRN

HOUSTON CASUALTY COMPANY,

 Plaintiff,

v.

C3 MANUFACTURING LLC,

 Defendant.

---

**DEFENDANT, C3 MANUFACTURING LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS BASED ON *COLORADO RIVER* ABSTENTION [DOC. 17]**

---

 Defendant C3 Manufacturing LLC ("C3"), by and through its attorneys Bradley A. Levin and Kerri J. Anderson of LEVIN SITCOFF WANEKA PC, respectfully submits the following Reply in Support of Motion to Dismiss Based on *Colorado River* Abstention:

### I. INTRODUCTION

 Plaintiff Houston Casualty Company ("HCC") rests its resistance to the Motion to Dismiss Based on *Colorado River* Abstention [Doc. 17] (the "Motion") primarily on the failure of C3 to beat HCC to the courthouse. In this action, HCC seeks a declaration that its attempted rescission in January 2023 of an insurance policy it issued to C3 was proper. That attempted rescission took place after a covered accident under the policy and during the pendency of an underlying suit against C3 in Washington relating to that accident -- *Vandivere v. Vertical World, Inc., a Washington state corporation, C3 Manufacturing LLC, a Colorado company, Defendants*, Superior Court of the State of Washington, County of King, Case No. 19-2-27385-2 SEA (the

"*Vandivere* Action"). C3's position is that HCC attempted to rescind the policy in bad faith and that the rescission is invalid as a matter of Washington law. The Washington Insurance Fair Conduct Act, RCW 48.18.015 ("IFCA"), requires that a "right to cure" letter be sent that gives a carrier twenty (20) days (plus three for mailing) to respond before filing a claim. C3 has sent its letter but the statutory period will not expire until August 29, 2023. C3 will file a complaint in Washington state court by September 1, 2023, the following business day.

The fact that HCC filed this preemptive Declaratory Judgment Act lawsuit against the natural plaintiff seeking to have its legal rights determined before the underlying lawsuit was even settled does not determine whether the Court should exercise its discretion to dismiss this matter. HCC knew when it filed this lawsuit that C3 believed that HCC breached its obligations in bad faith, which in turn means that HCC knew that, before C3 could file suit, C3 had to provide the statutory notice and let the statutory period run. In filing this preemptive suit, HCC is trying to take advantage of the statutory cure period, which is the opposite of what that statute is intended to facilitate. HCC is not trying to cure. HCC is trying to obtain a tactical advantage The Court should not reward HCC's gamesmanship. Instead, it should abstain from exercising jurisdiction and dismiss this action pursuant to the *Colorado River* abstention doctrine. *See Tetra Tech Inc. v. Town of Lyons,* --- F.Supp.3d ---- (D. Colo. Nov. 16, 2022), 2022 WL 16961720, *7. So that the Court can compare the action C3 will file in Washington against the allegations in this action, C3 intends to file a motion for leave to supplement its motion to dismiss, attaching the as-filed complaint after the statutory period has run. HCC will suffer no prejudice if the Court defers its ruling until after it has all relevant pleadings before it.

## II. ARGUMENT

HCC argues that abstention in declaratory judgment cases is the exception and not the rule. While that may be true, the "exceptional circumstances" factors weigh in favor of letting C3's dispute with HCC be decided in the parallel proceedings that will be filed on or before September 1, 2023.

### A. The State Court Action And The Federal Declaratory Judgment Action Are Parallel Because They Involve The Same Parties And Issues.

As noted in C3's Motion to Dismiss, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox v. Maulding,* 16 F.3d 1079, 1080 (10th Cir. 1994) (quoting *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). *see also Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, 2020 WL 4926114, at *6 (D. Colo. Aug. 21, 2020), reconsideration denied, 2021 WL 492492 (D. Colo. Feb. 10, 2021). Here, HCC has asked that the Court declare that it has no obligations in connection with the *Vandivere* Action, as a result of its attempted rescission / cancellation of the excess insurance policy it issued to C3. Were C3 required to litigate here, it would assert counterclaims against HCC for breach of contract, and common law and statutory "bad faith" – the same claims that will be included in C3's soon-to-be filed Washington complaint. HCC presumably will include its rescission argument as an affirmative defense, as it is the only argument HCC has raised to date as to why it refused to participate in the settlement of the *Vandivere* Action.

HCC contends that the parallel requirement does not exist because the Washington lawsuit has not yet been filed. Again, the reason, the Washington action has not been filed is because the statutory cure period has not yet expired, which is why HCC rushed to file this lawsuit and why it has refused to consent to routine requests for extension. *See* Exhibit 1.

3

The fact that the lawsuit will also name Sinars Slowikowski Tomaska ("Sinars") and Gordon Rees Skully Mansukhani, LLP ("Gordon Rees") as additional defendants also does not mean the two cases cannot be parallel.[1]  Response in Opposition to Defendant's Motion to Dismiss [Doc. 20] (the "Response"), p. 5-6.  *See* Exhibit 2.  The case law indicates that what matters is the claims between the two parties in this lawsuit, not the claims that C3 has against the law firms that will be co-defendants alongside HCC for the harm suffered by C3 in the Vandivere Action.  *See Tetra Tetra Tech Inc. v. Town of Lyons,* --- F.Supp.3d ----, 2022 WL 16961720 (D. Colo. Nov. 16, 2022)*, *10 (that additional parties were defendants in one action but not the other insignificant for parallelism purposes).  To reiterate, the actions need not be mirror images of each other for purposes of *Colorado River* abstention so long as they are "substantially the same[.]" *See id.* at *11.

### B. The "Exceptional Circumstances" Factors Support *Colorado River* Abstention.

The fact that Sinars and Gordon Rees are necessary parties in order to obtain complete relief for C3's losses in the Vandivere Action  highlights that declining to abstain will result in a multiplicity of suits.   This is because the attorneys and Sinars would not likely be subject to jurisdiction in Colorado.[2]  Factor 3, then – avoidance of piecemeal litigation – supports dismissal.

---

[1] HCC feigns ignorance about the identities of these law firms but knows full well which law firms are referenced,  because of the ethical conflict that arose from Gordon Rees representing HCC in connection with the attempted rescission of C3's insurance policy and then also representing C3 in the Vandivere Action.  Resp., p. 3.

[2] Sinars is a law firm with offices in Seattle and five other locations, none of which is in Colorado. https://www.sinarslaw.com/locations/     *See e.g., Goodwin v. Bruggeman-Hatch,* 2014 WL 4244214 (D.Colo. July 14), not reported but adopted at 2014 WL 4243822 (D.Colo. Aug. 27) (analyzing personal jurisdiction of several law firms and attorneys, concluding in part that hauling California law firm representing Colorado resident into court here would offend notions of fair play and substantial justice even if minimum contacts could be established).

4

*See D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.* 705 F.3d 1223, 1234-35 (10th Cir. 2013) (noting factor 3 weighed heavily in the analysis). And because litigating only a portion of the claims that will afford C3 complete relief in a federal forum more than one thousand miles apart from the state court forum where *all* claims could be brought, factor 2 supports dismissal. *See id.* at 1234 (affording factor 2 scant weight when the federal and state courts were close to each other and no party raised issues with physical or logistical inconvenience of litigating in both). Factor 4 is neutral at best because this declaratory judgment action is not even at issue yet; it is not "first in time" but the progress made in each case which is important. *See id.* at 1235. Federal law does not apply so factor 6 supports abstention and relatedly, the Washington state courts can provide every bit as effective a remedy to HCC as can the United States District Court for the District of Colorado. If anything, HCC's rush to file litigation against its insured while the insured was still involved in defending itself against the allegations about misconduct that stemmed from HCC's own actions is indicative of the vexatious nature of this declaratory judgment action, as is HCC's refusal to offer the basic courtesy of a modest extension of time to file this Reply and the tone of its response to C3's motion seeking the same. Factor 5 supports dismissal as well.

Both parties agree that factors 1 and 8 are not implicated or are neutral, but HCC argues that factors 2, 3, 4, 5, 6, and 7 point in favor of the Court keeping the case. HCC argues that there would be no inconvenience from litigating this case because Colorado law would be applied. Even if HCC were correct on what law applies, inconvenience is not tied to the applicable law. Factor 2, rather, addresses the burden on the parties if the case was litigated in federal court. HCC has not identified any reason why litigating the same issues in Washington state court would be inconvenient and so factor 2 fails to support HCC's position.

Factor 3, says HCC, is not implicated because there is only one case pending at this time. Resp., p. 7. As set forth above, the Washington case cannot be filed until the expiration of the "right to cure" period which expires on September 1, 2023, and the parties are prepared to move forward at that time. Further, the case was not officially settled until July 27, 2023 – more than three weeks after HCC filed this action and before steps could reasonably be taken to move forward with litigation against the other parties that C3 claims are responsible for forcing that settlement. In other words, no basis exists for arguing that the parties have delayed proceeding with the Washington litigation in a manner that suggests the Washington lawsuit "may never be filed." Resp., p. 3. HCC certainly has not addressed the merits of factor 3 or explained why, once the Washington case that has been described *is* on file, it will not result in piecemeal litigation. HCC's protestations about factor 3 should not persuade the Court to hear the case as a result.

As to Factor 4, HCC claims that because the Colorado case was filed first then Colorado must take the case. Resp., p. 8. This is simply not true and HCC cites no case in which such a rule was recited or applied. *See D.A. Osguthorpe, supra* at 1235. HCC argues that for Factor 6, Colorado law is applicable to this case and hence this Court is better adept at determining the rights and obligations of the parties under the disputed contract. The notion that the Washington state courts cannot understand and apply basic contract law – or even insurance bad faith law – from Colorado is nonsense. Even if one assumed Colorado law applies (an issue not addressed by the parties to date), HCC identifies no similarities or differences between the two that would somehow hamstring the Washington state courts in deciding what HCC's insurance policy says or what the law of rescission requires in this instance. Washington courts are able to understand Colorado law and apply it properly.

6

Lastly[3], HCC claims that it cannot know whether it would have an effective remedy in the Washington case until that case is actually on file. As C3 has described the Washington litigation, however, this is indisputably true. Washington has its own Uniform Declaratory Judgment Act, RCW 7.24.010, that would allow HCC to pursue the same remedies it seeks here. C3 contends that HCC, Sinars, and Gordon Rees are all responsible for the harm suffered from having to settle the otherwise defensible Vandivere Action for multiples of the underlying policy limits. HCC will obviously be able to assert a counterclaim seeking declaratory relief to the effect that its excess policy was rescinded and/or cancelled, just as it has done here.

### C. There Is No Priority Of Jurisdiction That Overrides The *Colorado River* Abstention Doctrine.

As a final effort to persuade the Court, HCC contends that the "priority of jurisdiction" doctrine means that the Court is required to hear the case and cites three Colorado state court cases. Resp., p. 9. Of course, whatever the state's "priority of jurisdiction" rules about two cases filed in state court, they do not control the federal district court or override the *Colorado River* abstention doctrine. This argument should be disregarded as inapplicable to the instant case for clear reasons.

### III. CONCLUSION

A "careful balancing" of the exceptional circumstances factors that inform the decision to abstain under the *Colorado River* doctrine should lead to the conclusion that this case should be dismissed. The Washington pleadings are ready to file on September 1, 2023 after the statutory "right to cure" period has expired and will assert claims for relief that are founded upon the very conduct at issue in this action – HCC's attempted rescission of an excess insurance policy issued

---

[3] HCC does not address factor 5.
7

to C3. Piecemeal litigation would be the product of the Court exercising jurisdiction over this matter, as C3 would not be afforded the opportunity to seek full relief without claims against Sinars and Gordon Rees, at least the former of which could not be brought in Colorado. The courts in Washington must be presumed to have the ability to decide basic issues of contract and insurance law, even those that are rooted in Colorado. Litigating in two forums 1300 miles apart would be inconvenient for both parties but HCC will have the same ability to pursue its claim for declaratory relief in Washington state court.

WHEREFORE, for the foregoing reasons as well as those set forth in the Motion to Dismiss, Defendant C3 Manufacturing, LLC respectfully requests that the Court exercise its discretion to abstain from hearing this matter and grant such other and further relief as the Court deems just and proper.

Dated this 21st day of August 2023.

Respectfully submitted,

**LEVIN SITCOFF WANEKA PC**

*s/Kerri J. Anderson*
Bradley A. Levin
Kerri J. Anderson
455 N. Sherman Street, Ste. 490
Denver, Colorado 80203
Telephone: (303) 575-9390
Fax: (303) 575-9385
brad@lsw-legal.com
kerri@lsw-legal.com
***Attorney for Defendant***

8

## CERTIFICATE OF SERVICE

      I hereby certify that on this 21st day of August 2023, a true and correct copy of the foregoing **DEFENDANT, C3 MANUFACTURING LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS BASED ON *COLORADO RIVER* ABSTENTION** was electronically filed with the Clerk of the Court using the CM/ECF system and served on the following by the method indicated which will send notification of said filing to the following email addresses:

Jennifer C. Arnett
Arnett Litigation, LLC
1630 30th Street, Ste. A-184
Boulder, CO 80301
jennifer@arnettlawyers.com
*Attorneys for Houston Casualty Company*

                                             *s/ Nicole R. Peterson*
                                             Nicole R. Peterson