IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01705-RMR-NRN

HOUSTON CASUALTY COMPANY,

Plaintiff,

v.

C3 MANUFACTURING LLC,

Defendant.

---

**RECOMMENDATION DENYING
DEFENDANT C3'S MANUFACTURING'S MOTION TO DISMISS BASED ON
*COLORADO RIVER* ABSTENTION (Dkt. #17)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on Defendant C3 Manufacturing LLC's Motion to Dismiss based on *Colorado River* Abstention ("Motion to Dismiss"). Dkt. #17. The motion was referred to me for a recommendation by Judge Regina M. Rodriguez on July 28, 2023. Dkt. #19. Plaintiff responded to the Motion to Dismiss with its opposition on July 31, 2023. Dkt. #20. Defendant C3 Manufacturing file its reply on August 21, 2023. Dkt. #25. Having reviewed the Motion to Dismiss, the response, and reply, the Court will recommend that the Motion to Dismiss be **DENIED**.

**Background**

This is a lawsuit by the Plaintiff insurance company, Houston Casualty Company ("HCC"), seeking a declaratory judgment that an excess general and products liability insurance policy issued to the Defendant C3 Manufacturing LLC ("C3") is void or

rescinded *ab initio* due to fraud, with the result that HCC has no duties or obligations to C3 under the rescinded policy. *See* Dkt. #1 at 1.

C3 is a company incorporated in Colorado, with its principal place of business in Colorado. C3 manufactures an automatic belay device for climbing (on rocks or in gyms). One basis for the alleged recission of the policy is that in submitting the application for the liability insurance policy, C3 checked the box labeled "No," to the question, "Has the Applicant ever recalled or is it considering recalling a product?" The allegation is that if C3 had answered "Yes" to this recall question, HCC would not have issued the excess policy in question.

HCC asserts that it has evidence that C3 had issued a recall notice for certain belay devices on August 15, 2018. Then, 16 days later, C3 filled out the insurance policy application representing that C3 had never recalled any product and was not considering recalling a product. *See* Dkt. #1 at 6. After discovering this information, on January 26, 2023, HCC rescinded the excess insurance policy. C3 has objected to the rescission.

C3 is (or was) facing a multimillion-dollar lawsuit brought by a sport climber who fell and was injured at a climbing gym facility in Washington State while using one of C3's belay devices. It is alleged that the device that was being used during this accident (and that allegedly failed) was one of the C3 belay devices that was subject to a recall. C3 has objected to the rescission and has demanded that HCC, to settle the product liability lawsuit, tender the $4 million limit of the rescinded excess policy. HCC responded to the policy limit demand by reiterating its rescission of the policy and declining to pay the $4 million.

Faced with C3's challenge to the rescission and corresponding demand for a payment of the $4 million policy limit, HCC brought this declaratory judgment lawsuit seeking a declaration that the excess policy has been rescinded (or was rescinded *ab initio*) and that HCC therefore has no duties and no obligations with respect to the rescinded excess policy. Dkt. #1 at 8.

**Defendant C3's Motion to Dismiss**

C3 has moved to dismiss this case, arguing that the Court should abstain from exercising jurisdiction pursuant to the *Colorado River* abstention doctrine. In its motion, C3 claims that it intends to file a "parallel" action in the Superior Court for the State of Washington, King County, concerning all the losses sustained by C3 as a result of the personal injury litigation pending in that court. In the as-yet unfiled suit, C3 says it will bring claims against HCC and two Washington state law firms that allegedly failed to promptly inform C3 of HCC's rescission of the insurance policy. C3 asserts that entertaining this Colorado federal court action while the state court action is pending "will result in a duplicity of claims and/or piecemeal litigation . . .[and] the state court will be able to provide a full remedy concerning the claim for relief at issue in this lawsuit." Dkt. #17 at 2. In its reply, C3 says it has not yet filed the Washington State lawsuit because Washington law requires a cure period before an insured can sue its insurer. C3 says that once the cure period expires, the lawsuit will be filed.

**The Colorado River Abstention Doctrine**

The *Colorado River* abstention doctrine permits a federal court to dismiss or stay a federal action in deference to a pending parallel state court proceeding where the

3

federal court would otherwise have concurrent jurisdiction with the state court. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

That said, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). The general rule is that, as between state and federal courts, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction . . . ." *Id.* at 817. Indeed, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Id.* Given this obligation, the Supreme Court has cautioned that the circumstances permitting dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of juridical administration and efficiency "are considerably more limited" than other recognized reasons for abstention. *Id.* at 818.

There are a number of factors that a federal court can consider in determining whether exceptional circumstances exist that would justify staying or dismissing a federal case in the face of a parallel state court proceeding. *See Tetra Tech, Inc. v. Town of Lyons*, Civ. No. 22-cv-00239-NYW-NRN, 2022 WL 16961720, at *9 (Nov. 16, 2022). The non-exhaustive list of factors includes:

4

- the possibility that one of the two courts has exercised jurisdiction over property;

- the inconvenience in litigating in the federal forum;

- the avoidance of piecemeal litigation;

- the sequence in which the courts obtained jurisdiction;

- the vexatious or reactive nature of either case;

- whether the state-court action can provide an effective remedy for the federal plaintiff;

- and the applicability of federal law.

*Id.*

**Decision**

One could, step by step, weigh the relevance of these various factors in the context of this case. But the truth is, this case does not require a detailed (or any) analysis of these factors. As of the filing of Defendant's Motion to Dismiss, there was NO parallel litigation, and NO basis on which this Court could abstain from deciding this federal case. To file a motion to dismiss on abstention grounds, purportedly because of a pending parallel state court litigation, when there is no actual pending parallel litigation, borders on the frivolous.

In the event Defendant does actually file the state court case and wants to refloat the idea that this federal court should abstain from deciding this declaratory judgment matter, the Court suggests that refiling such an abstention motion would be a wasteful exercise. HCC filed its lawsuit after a $4 million demand by C3. There is nothing vexatious or reactive about HCC wanting to get a court to declare whether it has any continuing obligations under the excess insurance policy. To the contrary, it appears that C3's own lawsuit (which again, had not been initiated as of the filing of the

5

abstention motion) is (or will be) the reactive lawsuit. HCC filed its suit in Colorado, where C3 is incorporated and has its principal place of business. It presumably would be convenient for C3 to litigate the case here. The addition of other defendants to C3's state court lawsuit (the law firms who supposedly committed malfeasance by not promptly informing C3 of HCC's rescission) would complicate what should be an otherwise simple declaratory judgment insurance coverage suit. The critical and, presumably, dispositive issue here will be whether C3 made material misrepresentations in its insurance application. This discrete question should not take long to litigate in this forum. By contrast, throwing in law firm defendants and potential legal malpractice claims will unnecessarily complicate the state court case and delay a decision on the question that needs to be answered relatively quickly—whether HCC properly rescinded the excess policy.

In sum, there is nothing about the hypothetical state court lawsuit that would create the exceptional circumstances that would justify this federal court abstaining from its "unflagging" obligation to adjudicate a controversy properly before it.

For these reasons, it is **RECOMMENDED** that Defendant's Motion to Dismiss (Dkt. #17) be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file**

6

**and serve such written, specific objections waives** *de novo* **review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:   August 22, 2023
        Denver, Colorado

                                                  N. Reid. Neureiter
                                                  United States Magistrate Judge