IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01705-RMR-NRN

HOUSTON CASUALTY COMPANY,

Plaintiff,

v.

C3 MANUFACTURING LLC,

Defendant.

---

**DEFENDANT C3 MANUFACTURING LLC'S MOTION TO DISMISS OR STAY UNDER THE *BRILLHART* ABSTENTION DOCTRINE**

---

Defendant C3 Manufacturing LLC ("C3"), by and through its attorneys, Bradley A. Levin and Kerri J. Anderson of LEVIN SITCOFF WANEKA PC, respectfully requests that, under the *Brillhart* abstention doctrine, the Court dismiss or stay this declaratory judgment action filed by Plaintiff Houston Casualty Company ("HCC"), and in support thereof, states as follows:

**INTRODUCTION**

HCC's Complaint seeks a declaration that, because HCC allegedly had a right to rescind the policy it issued to C3, it has no duty to indemnify C3 for damages incurred in connection with the suit styled *Vandivere v. Vertical World, Inc., a Washington state corporation, and C3 Manufacturing LLC, a Colorado company,* Superior Court of the State of Washington, County of King, Case No. 19-2-27385-2 SEA (the "Underlying Action"). On August 22, 2023, C3 filed its Motion to Dismiss Based on Colorado River Abstention (the "Motion to Dismiss") [Doc. 17], which the Court denied primarily on the ground that no competing action had yet been filed. As C3 explained in the briefing, it was unable to file the competing action in Washington at that time

1

because, among other reasons, a mandatory "cure period" imposed by Washington law prevented the same.  Since the filing of the Motion to Dismiss, circumstances have changed in a number of material respects.  First, the Underlying Action in Washington state has been settled, and C3 has assigned its rights against HCC to Great American Insurance Company ("Great American"), which paid the full amount of the settlement.  Second, C3 has obtained the approval of the Washington court for the settlement of the Underlying Action – required because it involved a minor – and it has cleared away other impediments to filing the competing action in Washington.  Third and most important, the competing action (the "Washington Coverage Action") has now been filed and in it, the same fundamental issues as this action are raised.  *See* Exhibit 1.

In denying the Motion to Dismiss, the Court recognized that the filing of a competing action would change the situation but suggested that renewing the motion might be a "wasteful exercise."  *See* Recommendation Denying Defendant C3's Motion to Dismiss Based on *Colorado River* Abstention ("Recommendation"), Doc. 26, at 5.  Accordingly, C3 is ***not*** renewing its motion even though the Washington Coverage Action has been filed.  Instead, C3 is filing a different motion based on the *Brillhart* doctrine – a doctrine that was not available to C3 earlier because it requires the pendency of a competing action (more clearly so than does the *Colorado River* doctrine), and the Washington Coverage Action had not yet been filed.

Under the *Brillhart* doctrine – originally set forth in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and re-affirmed in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) – a district always has discretion to dismiss a declaratory judgment action when a competing state court action is pending; no "exceptional circumstances" are needed, as they would be under the *Colorado River* doctrine.  The *Brillhart* doctrine is therefore "more permissive" than the *Colorado*

*River* doctrine.  *See Wilton*, *supra,* 515 U.S. at 285.  Under *Brilhart*, the only question is whether the issues "can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495 (quoted in *Wilton*, 515 U.S. at 283).

The *Brillhart* doctrine applies here because the issue raised by the complaint – whether HCC had the right to rescind – will be decided in the Washington Coverage Action.  Moreover, that action will also address a dispositive sub-issue:  whether HCC had the right to rescind in the specific circumstances of this case, namely, where the liability-causing events took place before the purported rescission.  Washington's public policy prohibits such a rescission in order to protect both injured persons and policyholders such as C3.  Issues of Washington statutory interpretation hinging on Washington public policy are best handled by Washington courts, not by a federal court in Colorado.  That is particularly the case where Colorado's only connection to this case is as the principal place of business of C3 and C3's interest in this case has been significantly diminished by the settlement of the Underlying Action and C3's assignment of its right to Great American.

Finally, a factor weighing in favor of *Brillhart* abstention is whether the plaintiff has engaged in "procedural fencing."  Here, HCC purported to both rescind and cancel C3's policy in January 2023, but it took no further action at that time.  On February 27, 2023, C3's counsel objected to the rescission and demanded HCC retract its position.  HCC responded to the letter a few weeks later, maintaining its position, but did nothing further.  What prompted this lawsuit was a letter from Great American's counsel dated June 17, 2023, suggesting that Great American would pursue claims against HCC if it did not reconsider its position.  At that point, HCC knew that it would soon be facing an action for breach in Washington state by or on behalf of the natural plaintiff – C3. Within three weeks, it filed this preemptive action, presumably to deny C3 its choice

of forum, and to increase its chances of evading the applicability of Washington law. HCC 's efforts to push this case forward at rapid pace is evidence of HCC's untoward objectives. When C3 made the routine and expected offer to waive service of process, which under Rule 12 would have extended its time to respond from 21 days to 60 days, HCC refused the offer. It did so explicitly to deny C3 the additional time. In the words of counsel: "In light of the underlying litigation, *we are not wanting to wait for an answer the amount of time that a waiver would provide*. We'd like to just be able to serve the summons and complaint without evasion of service." (Emphasis supplied.) HCC then filed its response just three days after the Motion to Dismiss was filed and then opposed a one-week extension of the time for C3 to submit its reply. The motivation for doing so is clear: HCC has been seeking to gain an advantage by establishing a foothold in the Colorado federal district court in the face of certain litigation in the state where the harm that is the subject of these two competing actions occurred – Washington. HCC's hurry-up tactics are well-illustrated by the fact that this second motion to dismiss is filed on the day that C3's *initial* responsive pleading would have been due, but for the refusal to accept waiver of service.

## ARGUMENT

I. **UNDER THE *BRILLHART* DOCTRINE, THIS CASE SHOULD BE STAYED OR DISMISSED.**

    A. **Under *Brillhart* and *Wilton*, the Court Has Complete Discretion as to Whether to Hear This Case.**

In *Brillhart*, an insurer, anticipating a state-court action for breach against it by its insured, filed an action in federal court seeking a declaratory judgment that it had no liability. The district court dismissed in favor of the state proceedings; the circuit reversed, ordering the district court to hear the case; and the Supreme Court then reversed the circuit court, on the ground that hearing a

declaratory judgment action is discretionary and is inadvisable when the matter concerns state law and can be decided by a state court:

> Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, 28 U.S.C.A. s 400, it was under no compulsion to exercise that jurisdiction. The petitioner's motion to dismiss the bill was addressed to the discretion of the court. . . . **Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.** Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 494–95 (emphasis supplied). In deciding whether to exercise its discretion to hear a declaratory judgment action, a district court "should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Id.* at 495.

As the Court subsequently explained in *Wilton*, "*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton* rejected the insurer plaintiff's claim that the "exceptional circumstances" standard of *Colorado River* applied:

> Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone*. . . .
>
> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (1988 ed., Supp. V) (emphasis added). The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the

5

> declaratory judgment context from other areas of the law in which concepts of discretion surface.

515 U.S. at 286–87. In short, in the specific context of declaratory judgments, abstention is governed by *Brillhart* and *Wilton*, not by *Colorado River*, and *Colorado River's* observation about the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" does not apply. *Colorado River*, 424 U.S. at 817.

Here, as in *Brillhart* and *Wilton*, the plaintiff insurer, anticipating a state-court action, has filed a declaratory judgment action seeking a declaration of its rights under state law. The only issue raised in the complaint – whether HCC had the right to rescind – is the same issue as one raised in the Washington Coverage Action filed this day. *See* Ex. A (Complaint). Under *Brillhart*, it would "[o]rdinarily" be "uneconomical as well as vexatious" for this Court to hear the case. Neither *Brillhart* nor *Wilton* attempts to create a rigid test for distinguishing cases a court should hear from those it should not hear, but, as shown below, the Tenth Circuit cases applying *Brillhart* strongly point toward stay or dismissal here.

### B. Under the Applicable Tenth Circuit Guideline, the Court Should Exercise Its Discretion to Decline to Hear the Case.

In *St. Paul Fire & Marine Insurance Co. v. Runyon*, 53 F.3d 1167 (10th Cir. 1995) ("*Runyon*"), the Tenth Circuit restated the factors a court should consider in deciding whether to abstain from hearing a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

6

*Id.* at 1169 (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

The first two factors – whether the declaratory action would settle the controversy and whether it would serve a useful purpose – are related and frequently considered together. *See Farm Bureau Prop. & Cas. Ins. Co. v. Gomez*, No. 21-CV-527-BRB-GJF, 2021 WL 4521061, at *4 (D.N.M. Oct. 4, 2021) ("The first two *Mhoon* factors . . . are best considered together"). As the Tenth Circuit explained in *United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002) ("*Las Cruces*"):

> These [first] two factors are necessarily driven by the degree of identity of parties and issues in the concurrent proceedings. Without some degree of similarity between the proceedings, a federal declaratory judgment will likely not settle the controversy between the parties, nor would it clarify all the legal relations at issue.

*Id.* at 1183.

Here, the issue in this action and one in the Washington Coverage Action are the same: whether HCC's purported rescission was proper and valid. In this action, HCC asks for a declaration that C3's policy was rescinded *ab initio*; the Washington complaint state claims for breach of contract and other violations, all based on the purported rescission. There is also substantial identity of the parties: HCC is a party in both cases, and in the Washington Coverage Action, Great American will be, in part, asserting C3's rights as its assignee. This substantial identity is enough; *Las Cruces* looked to "the *degree* of similarity" between the parties, 289 F.3d at 1182 (emphasis supplied) and rejected the argument that *Brillhart* abstention requires perfect identity, noting that "[e]ven in the *Colorado River* context . . . exact identity of parties and issues is not required." *Id.* To the extent that the two actions differ, the Washington Coverage Action is the more comprehensive, also addressing factually related issues of malpractice by C3's attorneys.

7

This action is therefore essentially duplicative of part of the Washington Coverage Action and serves little or no useful purpose.

The third factor look to whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*. *Runyon*, 31 F.3d at 983. Here, a review of the facts shows that HCC is using this action to angle for position. HCC purported to rescind its policy on January 26, 2023; if it was concerned about obtaining a declaration of the propriety of its action, that was the time to seek it, but it took no action as time went by and its insured prepared for trial without its assistance. However, when in June 2023, counsel for Great American advised HCC that Great American did not believe the rescission was valid, HCC swung into action, knowing that the Washington Coverage Action would soon be filed. The Washington action resolved and HCC began its race to *res judicata* immediately, refusing to accept C3's waiver of service, specifically in order to deny it the additional time to respond it would receive from the waiver. None of this was necessarily improper or in bad faith per se, but it is obvious that HCC sought to deny C3, the natural plaintiff here, its choice of a Washington forum, and to push this case along as fast as possible for *res judicata* purposes. In short, HCC was engaged in "procedural fencing," and that weighs against the retention of jurisdiction.

It is true that this action was filed prior to the Washington Coverage Action, but that is not a significant factor in *Brillhart* analysis. As one district court in this circuit observed:

> The first-filed rule appears to involve only cases filed in more than one state court. . . . Instead, the issue here involves potential friction between the state and federal levels. In other words, the first-filed concept does not seem to be a critical factor under the *Brillhart/Mhoon* analysis.

*Burlington Ins. Co. v. Las Cruces Gospel Rescue Mission, Inc.*, No. 2:11-CV-0544-WJ-WPL, 2011 WL 13284626, at *4 (D.N.M. Oct. 12, 2011). In support of this conclusion, the court cited *Runyon*,

where the Tenth Circuit affirmed abstention where the declaratory action was filed by the insurer one day before the deadline the insured had set for filing his own action for breach. *Id.* Although the insurer's maneuvering to file first in *Runyon* was unusually conspicuous, "procedural fencing" does not require that the insurer act to beat the insured's specified deadline. *See Nationwide Mut. Ins. Co. v. C.R. Gurule, Inc.*, 156 F. Supp. 3d 1308, 1314–15 (D.N.M. 2016). It is enough that the insurer act in anticipation of the insured's threatened suit, which happened here.

In the briefing on C3's *Colorado River* motion, decided under different standards, the parties did not delve into these background facts. What was apparent from the briefing was that this action had already been filed and no competing action had been. Under these circumstances, the Magistrate Judge was understandably inclined to think that "it appears that C3's own lawsuit (which again, had not been initiated as of the filing of the abstention motion – is (or will be) the reactive lawsuit." Recommendation at 5-6. The fuller account of the facts presented here demonstrate that what formerly may appeared to be the case is not so.

The fourth factor is "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Runyon*, 31 F.3d at 983. In *Wilton*, the Supreme Court noted that, under *Brillhart*, where the competing cases concern the same state law issues, "a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed." 515 U.S. 277, 277. *See also Runyon*, 53 F.3d at 1169 ("Because the state court will determine, under state contract law, whether the tort action is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract."); *Nationwide Mut. Ins. Co. v. C.R. Gurule, Inc.*, 148 F. Supp. 3d 1206, 1229 (D.N.M. 2015) (as a factor favoring abstention, "this case involves solely state law issues");

*Philadelphia Indem. Ins. Co. v. Greenway Park Com. Owners Ass'n, Inc*, No. CIV-16-797-C, 2017 WL 521569, at *3 (W.D. Okla. Feb. 8, 2017) ("The Court is wary of treading upon state jurisdiction by ruling on issues that overlap with two cases currently pending before the state court. This factor favors abstention."). Here, the issues are strictly issues of state law. The broader issue of whether HCC had a right to rescind depends on the fact-intensive question of whether C3 made misrepresentations in its application, and "the federal court . . . should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Runyon*, 53 F.3d at 1170. The narrower issue of whether HCC had a right to rescind specifically after the happening of the events giving rise to its potential liability is more of a legal question, but it is a legal question under Washington law and it closely implicates questions of Washington public policy in the protection of persons injured in Washington. Those questions are better answered by a Washington state court. *See Indian Harbor Ins. Co. v. Coombes Trucking, Inc.*, No. CV 20-156 JAP/GJF, 2020 WL 3542300, at *6 (D.N.M. June 30, 2020) ("resolution in state court provides a better and more effective resolution of an insurance company's obligations. The state court is in a better position to apply state law") (internal quotation marks omitted); *Safeco Ins. Co. of Am. v. Brindeiro*, No. CV 19-962 JAP/GBW, 2020 WL 2467742, at *5 (D.N.M. May 13, 2020) ("This policy dispute is better left for a state court to decide.").

The fifth factor is "whether there is an alternative remedy which is better or more effective." *Runyon*, 31 F.3d at 983. The alternative remedy is obvious: allowing the rescission issues to be decided in Washington state court. In *Runyon*, the Tenth Circuit, affirming the district court's decision to abstain, noted: "The district court, in this case, refused jurisdiction because the

10

same issues were involved in the pending state proceedings, and therefore, there existed a more effective alternative remedy." Here, too, the same issues are involved in the Washington Coverage Action, and this action is unnecessary.

## CONCLUSION

For the reasons set forth above, C3 asks the Court to dismiss or stay this action in favor of the competing Washington Coverage Action. The distinction between dismissal and stay is "of little moment . . . because the state court's decision will bind the parties under principles of res judicata." *Wilton*, 515 U.S. at 283.

DATED this 5th day of September, 2023.

Respectfully submitted,

LEVIN SITCOFF WANEKA PC

*s/Kerri J. Anderson*
Bradley A. Levin
Kerri J. Anderson
455 N. Sherman Street, Ste. 490
Denver, Colorado 80203
Telephone: (303) 575-9390
Fax: (303) 575-9385
brad@lsw-legal.com
kerri@lsw-legal.com
***Attorneys for Defendant***

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September 2023, a true and correct copy of the foregoing **DEFENDANT C3 MANUFACTURING LLC'S MOTION TO DISMISS OR STAY UNDER THE *BRILLHART* ABSTENTION DOCTRINE** was electronically filed with the Clerk of the Court using the CM/ECF system and served on the following by the method indicated which will send notification of said filing to the following email addresses:

Jennifer C. Arnett
Arnett Litigation, LLC
1630 30th Street, Ste. A-184
Boulder, CO 80301
jennifer@arnettlawyers.com
*Attorneys for Houston Casualty Company*

                *s/ Karen J. Hammock*
                Karen J. Hammock