1
2
3
4
5
6
7

IN THE SUPERIOR COURT OF WASHINGTON STATE
FOR KING COUNTY

8
9
10
11
12
13
14
15
16
17

| | |
|---|---|
| GREAT AMERICAN E & S INSURANCE COMPANY, INDIVIDUALLY, AND AS ASSIGNEE OF CLAIMS FROM ITS INSURED C3 MANUFACTURING LLC, A COLORADO COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> HOUSTON CASUALTY COMPANY, GORDON REES SCULLY MANSUKHANI, LLP, SINARS SLOWIKOWSKI TOMASAKA LLC, J. SCOTT WOOD and CHRISTOPHER FURMAN, <br><br> Defendants. | NO. <br><br> **COMPLAINT FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, EQUITABLE SUBROGATION, LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY** |

18
19
20

COMES NOW THE PLAINTIFF, Great American E & S Insurance Company ("Great American"), individually, and as Assignee of Claims From its Insured C3 Manufacturing LLC, a Colorado Company, and for its causes of action against the defendants allege as follows:

21

**I.     PLAINTIFF**

22
23

1.1     Great American is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio.

24
25

COMPLAINT FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, EQUITABLE SUBROGATION, LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY- 1

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

EXHIBIT 1

1.2     Great American brings this action as the assignee of claims against the defendants which were assigned to Great American by C3 Manufacturing LLC ("C3"), a Colorado LLC, as a result of a written assignment of claims executed between Great American and C3 on August 4, 2023.

1.3     Great American also brings this action in its individual capacity owing to its right to equitable subrogation from Houston Casualty Company ("Houston Casualty"), described herein below.

## II.   DEFENDANTS

2.1     Houston Casualty is a corporation organized under the laws of the State of Texas with its principal place of business in Texas. At all times material times, Houston Casualty was engaged in the business of issuing policies of insurance and providing insurance coverage to its policy holders, including in Washington State.

2.2     J. Scott Wood is an attorney at law licensed to practice law in Washington State. Mr. Wood resides in Seattle, King County, Washington. Mr. Wood was employed at the Seattle office of defendant Sinars Slowikowski Tomaska LLC ("Sinars") from January 2022 to April 28, 2023 and then at the Seattle office of defendant Gordon Rees Scully Mansukhani, LLP ("Gordon Rees") from April 28, 2023 to the present.

2.3     Christopher Furman is an attorney at law licensed to practice law in Washington State. Mr. Furman resides in Seattle, King County, Washington. At all times material hereto, Mr. Furman was employed at the Seattle office of defendant Sinars.

2.4     Gordon Rees is a law firm doing business as a limited liability partnership organized under the laws of the State of California, with its principal place of business in California. Gordon Rees maintains an office in Seattle, King County, Washington where all relevant acts and omissions took place.

COMPLAINT FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, EQUITABLE SUBROGATION, LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY- 2

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1      2.5     Sinars is a law firm doing business as a limited liability company organized

2  under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

3  Sinars maintains an office in Seattle, King County, Washington where all relevant acts and

4  omissions took place.

### III.    JURISDICTION AND VENUE

6      3.1     Jurisdiction is proper in the Superior Court pursuant to Wash. Const. Art. IV,

7  §6, RWC 4.28.185(1)(a), (b) and (d) and RCW 48.05.215.

8      3.2     Venue in King County is proper because the acts and/or omissions giving rise to

9  the claims set out in this Complaint took place in King County, Washington and, pursuant to

10  RCW 48.05.220, the cause of action against Houston Casualty arose in King County,

11  Washington.

### IV.    VICARIOUS LIABILITY

13      4.1     The acts and/or omissions by Mr. Wood described herein took place within the

14  scope and course of his employment with Sinars and Gordon Rees such that Sinars and/or

15  Gordon Rees are liable for his tortious conduct.

16      4.2     The acts and/or omissions by Mr. Furman described herein took place within the

17  scope and course of his employment with Sinars such that Sinars is liable for his tortious

18  conduct.

### V.    FACTS

20      5.1     On August 1, 2019, while climbing a vertical wall at the Vertical World rock

21  climbing gym in Seattle, Michael Vandivere fell and sustained significant injuries.

22      5.2     On October 16, 2019 Mr. Vandivere filed suit for personal injuries in King

23  County Superior Court against Vertical World.

24      5.3     At the time he fell, Mr. Vandivere was using an auto belay, a device intended to

25

COMPLAINT FOR BREACH OF CONTRACT,
INSURANCE BAD FAITH, VIOLATIONS OF THE
WASHINGTON CONSUMER PROTECTION ACT,
EQUITABLE SUBROGATION, LEGAL
MALPRACTICE AND BREACH OF FIDUCIARY
DUTY- 3

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1  assist vertical wall climbers to safely descend a climbing wall, that was manufactured by C3.

2      5.4    On May 21, 2021, in a second-amended complaint, Mr. Vandivere named C3 as

3  a defendant in the lawsuit, alleging that C3's auto belay device failed, owing to defects in

4  manufacturing and/or design.

5      5.5    On or about May 25, 2021, Mr. Vandivere's counsel served C3.

6      5.6    At the time Mr. Vandivere was injured, C3 was insured by two policies of

7  insurance covering commercial general liability, including products liability claims.

8      5.7    One policy was issued to C3 by Great American under Policy No. PL1745347-

9  01 (the "Great American Policy"). The Great American Policy provided C3 with primary

10 commercial general liability insurance, subject to a $1,000,000 per occurrence limit.

11      5.8    The second policy, an excess-umbrella policy, was issued to C3 by Houston

12 Casualty under Policy No. H18PX50121-00 to C3 (the "Houston Casualty Policy"). The

13 Houston Casualty Policy is excess to the Great American Policy and provided C3 $4,000,000

14 of umbrella coverage over the Great American Policy.

15      5.9    The Houston Casualty Policy generally follows form to the terms and conditions

16 of the Great American Policy but also contains its own terms, including terms that limit the

17 circumstances under which Houston Casualty may seek to cancel or attempt to void the policy.

18      5.10    Section IV (Conditions), Paragraph 8 of the Houston Casualty Policy is entitled

19 "Cancellation."  It provides in relevant part that Houston Casualty may cancel the policy but

20 only by providing written notice to C3 "at least . . . 60 days before the effective date of the

21 cancellation."

22      5.11    The Cancellation provision does not permit Houston Casualty to retroactively

23 cancel the policy. Section IV (Conditions), Paragraph 13 of the Houston Casualty Policy is

24 entitled "Representations or Fraud." It provides that Houston Casualty may void a policy if it

25

COMPLAINT FOR BREACH OF CONTRACT,
INSURANCE BAD FAITH, VIOLATIONS OF THE
WASHINGTON CONSUMER PROTECTION ACT,
EQUITABLE SUBROGATION, LEGAL
MALPRACTICE AND BREACH OF FIDUCIARY
DUTY- 4

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

determines that the "statements in the Declarations" are not accurate and complete because of fraud. None of the statements in the Declarations is untrue, much less fraudulent. Moreover, Houston Casualty's attempt to rescind or cancel the policy nearly three and a half years after Mr. Vandivere's accident and six months before trial violated Washington law, including RCW 48.18.320.

5.12    Shortly after the second amended Vandivere complaint was filed, C3 was served with a summons and complaint that it tendered to Great American, C3's primary insurer for the period implicated by the claims in the lawsuit.

5.13    Great American retained Mr. Wood, then a lawyer at Foley & Mansfield, to defend C3 against the lawsuit.

5.14    On or about January 2022, Mr. Wood left Foley & Mansfield and joined Sinars. C3 subsequently retained Sinars and Mr. Wood.

5.15    Mr. Wood worked on the *Vandivere* action with other Sinars lawyers, including Duncan Lemmon, a partner based in California, and Christopher Furman, an associate based in Seattle.

5.16    While employed at Sinars, Mr. Wood prepared discovery responses on C3's behalf, which disclosed the Great American and Houston Casualty policies as policies that provided coverage to C3 at the time of the accident.

5.17    Mr. Wood, also while employed at Sinars, prepared a response to a discovery request that asked C3 to identify all dates and locations in which employees, agents, attorneys, directors, and officers of Vertical World met with employees, agents, attorneys and directors and officers of C3. In that response, Mr. Wood identified two incidents involving Vertical World's tour of C3's facility and a meeting in April 2022 with Vertical World, C3 and the Plaintiffs and stated that C3 did not recall meeting on any other occasion.

COMPLAINT FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, EQUITABLE SUBROGATION, LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY- 5

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1       5.18    Great American notified Houston Casualty of the action on July 22, 2022.

2       5.19    On January 26, 2023, Houston Casualty sent a letter to C3 purporting to rescind

3 the Houston Casualty Policy based on alleged material misrepresentations it claimed C3

4 knowingly made in the application for the policy.

5       5.20    Also on January 26, 2023, the broker that placed the Houston Casualty policy,

6 Veracity Insurance Solutions, sent a Policy Change Notification to C3. The cover e-mail

7 forwarding the cancellation notice described it as a "FLAT CANCELLATION of policy per

8 the carrier's request." In breach of the cancellation provision in the Houston Casualty Policy,

9 the Policy Change Notification indicated that the Houston Casualty Policy was "cancelled

10 effective inception."

11      5.21    Mr. Wood was contemporaneously notified of Houston Casualty's position that

12 the Houston Casualty Policy was rescinded and cancelled but he did not supplement C3's

13 discovery responses in the *Vandivere* action with respect to the insurance coverage available to

14 potentially pay Mr. Vandivere's and the other Plaintiffs' claims.

15      5.22    The January 26 letter enclosed a refund check for the premium associated with

16 the Houston Casualty Policy, and the Policy Change Notification was accompanied by an

17 invoice that also reflected the return of the premium amount to C3 as a result of the

18 cancellation.

19      5.23    C3 did not cash the check and contested the rescission/cancellation attempt

20 because it was based on a false premise that C3 intentionally misrepresented a material fact

21 with the intent to deceive Houston Casualty.

22      5.24    In fact, C3 answered the question Houston Casualty used to try to justify

23 rescission truthfully, based on its understanding of the meaning of the question in consultation

24 with its broker.

25

COMPLAINT FOR BREACH OF CONTRACT,
INSURANCE BAD FAITH, VIOLATIONS OF THE
WASHINGTON CONSUMER PROTECTION ACT,
EQUITABLE SUBROGATION, LEGAL
MALPRACTICE AND BREACH OF FIDUCIARY
DUTY- 6

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA  98121-2174
(t) 206.386.5566

5.25     On February 27, 2023, C3's coverage counsel responded to Houston Casualty's purported termination/cancellation and explained why Houston Casualty's acts were inappropriate and based on the false premise that C3 intentionally made false statements in its insurance application with the intent to deceive Houston Casualty.

5.26     On March 13, 2023, Andrew Lavin and Melissa Wiese, lawyers at Gordon Rees, wrote C3's coverage counsel on behalf of Houston Casualty and affirmed Houston Casualty's coverage position, wrongly accusing C3 of making material misrepresentations in its insurance application.

5.27     Upon information and belief, Mr. Lavin and Ms. Wiese and Gordon Rees had been Houston Casualty's insurance coverage counsel with respect to C3's claim for coverage from at least the fall of 2022.

5.28     Although C3 disagreed with, and continues to disagree with, Houston Casualty's position, Washington Rule of Court 26(e) required Mr. Wood to seasonably supplement C3's discovery responses to reflect Houston Casualty's purported recission, which was communicated to Mr. Wood no later than January 26, 2023.

5.29     Mr. Wood did not supplement the discovery responses, nor did he notify Mr. Vandivere's counsel of the material change in the amount of insurance coverage available for the Vandiveres' damages.

5.30     On April 1, 2022, the same day C3, Vertical World, and Plaintiffs inspected C3's allegedly defective product, Mr. Furman joined a Vertical World climbing facility in Lynnwood, Washington without telling C3 or any party to the Vandivere case. Mr. Furman did inform Mr. Lemmon.

COMPLAINT FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, EQUITABLE SUBROGATION, LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY- 7

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1    5.31    On March 5, 2023, Mr. Furman joined Vertical World's Seattle facility, the

2    same facility where Mr. Vandivere was injured.  Between April 1, 2022, and April 26, 2023,

3    Mr. Furman visited the Lynnwood and Seattle gyms dozens of times.

4    5.32    Neither Mr. Wood nor anyone at Sinars supplemented C3's discovery responses

5    to report Mr. Furman's contact with employees of Vertical World.

6    5.33    Mr. Furman testified in a deposition that he ultimately decided to notify Vertical

7    World that he had been using the gym because, in his words, certain Vertical World employees

8    were giving him "some side-eye" and he felt "kind of being observed by people in the gym,"

9    although he could not identify the employees to whom he was referring by gender, age, or any

10   other identifying characteristic.

11   5.34    On April 28, 2023, Mr. Wood, while representing C3, joined the firm of Gordon

12   Rees, the same firm where Mr. Lavin and Ms. Wiese worked while representing Houston

13   Casualty with respect to the rescission and cancellation of the Houston Casualty Policy.

14   5.35    Prior to the date he joined Gordon Rees and took C3's defense of the Vandivere

15   case with him, Mr. Wood and Gordon Rees knew or should have known that Gordon Rees

16   represented Houston Casualty in an insurance coverage dispute against Mr. Wood's client C3.

17   5.36    For a period of two weeks, Mr. Wood continued to represent C3 at Gordon Rees

18   even though he and Gordon Rees had an ethically impermissible conflict of interest between

19   representing both C3 and Houston Casualty. During this time period, Mr. Wood did not

20   disclose Houston Casualty's attempt to rescind and cancel the Houston Casualty Policy.

21   5.37    In May of 2023, Mr. Wood and Gordon Rees acknowledged that their dual

22   representation of C3 and Houston Casualty constituted an ethically improper and impermissible

23   conflict of interest, and they moved to withdraw as C3's counsel.

24

25   COMPLAINT FOR BREACH OF CONTRACT,
     INSURANCE BAD FAITH, VIOLATIONS OF THE
     WASHINGTON CONSUMER PROTECTION ACT,
     EQUITABLE SUBROGATION, LEGAL
     MALPRACTICE AND BREACH OF FIDUCIARY
     DUTY- 8

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1       5.38    Sinars refused to reengage in C3's defense, forcing Great American to bring in a

2   new law firm to defend C3 only weeks before the scheduled trial.

3       5.39    The Court granted the motion for Mr. Wood to withdraw as C3's counsel in the

4   *Vandivere* action, but in a scathing May 22, 2023 order, one month before trial, chastised C3

5   and Mr. Wood for what it described as a "dizzying array of attorney withdrawals/substitutions

6   and law firm changes by counsel" and highlighted the problem Mr. Wood caused by joining a

7   firm with a known conflict:

8       The Court notes that this matter has been continued no fewer than 6
        times.  The parties have waited four and half years for their day in
9       court.  The Court is troubled by what can only be described as C3's
        dizzying array of attorney withdrawals/substitutions and law firm
10      changes by counsel.  With an Order signed by Judge Shaffer on
        October 12, 2022 indicating there would be no further continuances
11      **for any reason** and an **agreed** trial date of June 5, 2023 entered on
        October 18, 2022, requesting a continuance two weeks away from trial
12      is unacceptable and **prejudices all parties and counsel**.  Counsel for
        C3 was fully aware of the October 12th and 18th Orders and yet chose
13      to change firms within a month of a hard set trial **without first
        ascertaining that there was no conflict with the new firm.**
14

15  (emphasis supplied).

16      5.40    On May 5, 2023, Vertical World disclosed to the Plaintiffs that, notwithstanding

17  C3's discovery responses, Mr. Furman had accessed the Vertical World gyms without notice

18  more than two dozen times.

19
20      5.41    On May 22, 2023, after Mr. Wood's withdrawal, C3's new counsel promptly

21  disclosed to the parties to the *Vandivere* action that Houston Casualty had attempted to cancel

22  and/or rescind its policy and was taking the position that there was no coverage available under

23  its policy for the Plaintiffs' claims.

24

25  COMPLAINT FOR BREACH OF CONTRACT,            **JOHNSON FLORA SPRANGERS PLLC**
    INSURANCE BAD FAITH, VIOLATIONS OF THE       2001 Western Avenue, Suite 205
    WASHINGTON CONSUMER PROTECTION ACT,                Seattle, WA  98121-2174
    EQUITABLE SUBROGATION, LEGAL                        (t) 206.386.5566
    MALPRACTICE AND BREACH OF FIDUCIARY
    DUTY- 9

1

2       5.42    On May 24, 2023, Plaintiffs moved for sanctions against C3 based on Mr.

3   Furman's undisclosed visits and the failure to disclose, before May 22, 2023, Houston

    Casualty's coverage position.
4

5       5.43    On June 14, 2023, shortly before trial was scheduled to begin, the Court granted

6   Plaintiffs' motion, ordered monetary sanctions, and indicated that it would provide a jury

7   instruction that would allow the jury to make a negative inference from what it found to be

8   C3's discovery misconduct.

9       5.44    The Court also made a number of factual and legal findings, including that: (i)

10  Mr. Wood's misconduct was egregious and a "massive breach of the rules of discovery by C3

11  and its attorneys"; (ii) Mr. Furman's visits to Vertical World were an "unbridled effort" to

12  engage in "covert discovery"; (iii) Mr. Furman's unauthorized contact with Vertical World's

13  employees was a violation of Washington Rules of Professional Conduct 4.2 and 4.3; and (iv)

14  Mr. Wood knew about the Houston Casualty conflict and that "he never could have taken [the

15  *Vandivere* Action] with him because [Gordon Rees] represent[ed] the insurance company

16  which rescind[ed] the excess insurance policy."

17      5.45    The Court also, for the first time in ten years on the bench, referred an attorney

18  to the Washington State Bar Association, Mr. Wood.

19
        5.46    The Plaintiffs in the *Vandivere* action also alleged that, as a result of the above-
20
    referenced misconduct, Great American was obligated to fund the entirety of any judgment,
21
    irrespective of its limit.
22

23

24

25  COMPLAINT FOR BREACH OF CONTRACT,              **JOHNSON FLORA SPRANGERS PLLC**
    INSURANCE BAD FAITH, VIOLATIONS OF THE            2001 Western Avenue, Suite 205
    WASHINGTON CONSUMER PROTECTION ACT,                   Seattle, WA   98121-2174
    EQUITABLE SUBROGATION, LEGAL                              (t) 206.386.5566
    MALPRACTICE AND BREACH OF FIDUCIARY
    DUTY- 10

5.47    Faced with negligence and breaches of fiduciary duty by two law firms, and a breach of contract by a co-insurer on the eve of trial, all of which declined to participate in discussions regarding an appropriate settlement of the *Vandivere* action, C3 and Great American were forced to resolve the *Vandivere* action for an amount that was significantly higher than it otherwise would have been and involved sums greatly in excess of Great American's policy limits; sums that should have been paid by Houston Casualty (or one or more of the other defendants).

5.48    Houston Casualty's breach of its contract, its bad faith claims handling, and the negligence and breaches of fiduciary duty by Mr. Wood, Mr. Furman, Sinars, and Gordon Rees forced C3 and Great American to resolve the *Vandivere* action for a confidential amount that was significantly higher than it otherwise would have been and involved sums greatly in excess of Great American's policy limits; sums that should have been paid by Houston Casualty.

5.49    On August 9, 2023, the Court awarded additional monetary sanctions to Vertical World as a result of Mr. Wood's, Mr. Furman's and Sinar's misconduct. Great American is paying on C3's behalf a portion of those sanctions concurrently with the filing of this action and anticipates paying an additional amount on or before September 29, 2023.

## VI.    FIRST CAUSE OF ACTION

### *Breach of Contract by Houston Casualty*

6.1    Plaintiff incorporates by reference Sections I-V as if set forth fully herein.

6.2    By refusing to provide coverage, by refusing to participate in the settlement of the *Vandivere* action, and by refusing to fund its share of the *Vandivere* Settlement,

COMPLAINT FOR BREACH OF CONTRACT,
INSURANCE BAD FAITH, VIOLATIONS OF THE
WASHINGTON CONSUMER PROTECTION ACT,
EQUITABLE SUBROGATION, LEGAL
MALPRACTICE AND BREACH OF FIDUCIARY
DUTY- 11

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

Houston Casualty breached the Houston Casualty Policy by unilaterally and wrongfully purporting to rescind and/or cancel its policy with C3 after an injury-causing event, without a reasonable basis to do so, in violation of terms of the contract, the doctrine of equitable estoppel and Washington State's insurance bad faith law including, but not limited to, Washington's public policy to preserve insurance compensation sources for injured persons after an injury-causing event.

6.3     As a direct and proximate result of Houston Casualty's breach of contract, Great American, as C3's contractual and equitable subrogee and assignee, has suffered damages including that: (i) Great American paid the portion of the settlement of the *Vandivere* action that was rightfully and legally owed by Houston Casualty and; (ii) the amount paid to resolve the *Vandivere* action was higher than it would have been but for Houston Casualty's breach(es) of contract.

## VII.   SECOND CAUSE OF ACTION

### *Violation of Washington's Insurance Fair Conduct Act By Houston Casualty*

7.1     Plaintiff incorporates by reference Sections I-VI as if set forth fully herein.

7.2     Houston Casualty's wrongful purported rescission and/or cancellation of C3's policy violated Washington State's Insurance Fair Conduct Act (IFCA), including RCW 48.30.010, 48.30.015 and Washington Administrative Code Regulations, including WAC 284-30-330 and Washington's public policy to preserve insurance compensation sources for injured persons after an injury-causing event.

7.3     C3 did not make material misrepresentations in connection with its application for insurance and, as a result, Houston Casualty had no good faith basis to attempt to rescind or cancel the Houston Casualty Policy. Houston Casualty also had no good faith basis to attempt to rescind or cancel the Houston Casualty Policy after the occurrence of Mr. Vandivere's injury

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1  for which C3 was alleged to be liable.

2       7.4     Houston Casualty had a duty not to attempt to rescind or cancel the Houston

3  Casualty Policy, a duty to participate in settlement discussions, a duty to pay its share of the

4  settlement of the *Vandivere* action and also a duty not to make false allegations of fraud and

5  dishonesty against its policyholder, knowing that the Plaintiffs in the *Vandivere* action would

6  learn about the allegations, thereby allowing them to be unfairly used against C3.

7       7.5     As a direct and proximate result of one or more of the aforesaid breaches of

8  duty by Houston Casualty, Great American, as C3's contractual and equitable subrogee and, to

9  the extent permitted, assignee, has suffered economic and noneconomic damages, including

10  that: (i) Great American funded the portion of the settlement of the *Vandivere* action owed by

11  Houston Casualty and; (ii) the amount paid to resolve the *Vandivere* action was higher than it

12  would have been but for Houston Casualty's breaches of duty.

13       7.6     Plaintiff seeks all damages recoverable under the IFCA, including treble

14  damages and attorney's fees as authorized by the IFCA.

## VIII.   THIRD CAUSE OF ACTION

### *Violation of Washington's Consumer Protection Act By Houston Casualty*

17       8.1     Plaintiff incorporates by reference Sections I-VII as if set forth fully herein.

18       8.2     Houston Casualty's wrongful purported rescission/cancellation of the Houston

19  Casualty Policy, including its bad faith denial of coverage and other violations of

20  Washington's Insurance Fair Conduct Act and Washington Administrative code regulations

21  cited herein above, constitute per se violations of Washington's Consumer Protection Act,

22  Chapter 19.86 RCW ("CPA").

23       8.3     As a direct and proximate result of Houston Casualty's violations of

24  Washington's CPA, Great American, as C3's contractual and equitable subrogee and, to the

25  
COMPLAINT FOR BREACH OF CONTRACT,
INSURANCE BAD FAITH, VIOLATIONS OF THE
WASHINGTON CONSUMER PROTECTION ACT,
EQUITABLE SUBROGATION, LEGAL
MALPRACTICE AND BREACH OF FIDUCIARY
DUTY- 13

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA  98121-2174
(t) 206.386.5566

extent permitted, assignee, has suffered damages as a result of the violations, including that: (i) Great American funded the portion of the settlement of the *Vandivere* action owed by Houston Casualty and; (ii) the amount paid to resolve the *Vandivere* action was higher than it would have been but for Houston Casualty's breach.

8.4     Plaintiff seeks all damages recoverable under the CPA, including treble damages and attorney's fees as authorized by the CPA.

## IX.     FOURTH CAUSE OF ACTION

### *Equitable Indemnity/Subrogation From Houston Casualty*

9.1     Plaintiff incorporates by reference Sections I-VIII as if set forth fully herein.

9.2     In addition to claims based on Great American's status as C3's contractual and equitable subrogee and assignee, Great American also has an independent claim for equitable subrogation against Houston Casualty.

9.3     Houston Casualty's breach of its contract with C3 and its violation of Washington's IFCA and CPA proximately caused damage to Great American by interfering with Great American's ability to resolve the *Vandivere* action when it was prudent and reasonable to do so, and by exposing Great American to litigation with the Plaintiffs and C3.

9.4     Great American reached a settlement resolving all claims in the *Vandivere* action but was forced to fund the portion of the settlement that should have been paid by Houston Casualty.

9.5     Great American's actions were necessitated by, and the proximate result of, Houston's Casualty's wrongful acts and breaches of duty and were necessary to protect Great American's and C3's interests because, had Great American not resolved the *Vandivere* action, Great American would have been forced to continue paying defense costs in the action and was exposed to potential claims from both the Plaintiffs in the *Vandivere* action and C3.

COMPLAINT FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, EQUITABLE SUBROGATION, LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY- 14

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1   9.6    Great American is entitled to equitable indemnity from Houston Casualty for

2   the damages Great American sustained, including that: (i) Great American funded the portion

3   of the settlement of the *Vandivere* action owed by Houston Casualty and; (ii) the amount paid

4   to resolve the *Vandivere* action was higher than it would have been but for Houston Casualty's

5   breach.

## X.    FIFTH CAUSE OF ACTION

### *Legal Malpractice By Mr. Wood, Mr. Furman, Sinars, and Gordon Rees*

8   10.1    Plaintiff incorporates by reference Sections I-IX as if set forth fully herein.

9   10.2    As C3's attorneys, Mr. Wood, Mr. Furman, Sinars, and Gordon Rees owed C3 a

10  duty to comply with the standard of care of reasonable, careful, and prudent attorneys in the

11  State of Washington acting in the same or similar circumstances.

12  10.3    Mr. Wood and Gordon Rees breached the duty of care by, among other things,

13  failing to timely supplement C3's discovery responses relating to the Houston Casualty

14  insurance coverage dispute.

15  10.4    Mr. Wood, Mr. Furman and Sinars also breached the duty of care by allowing

16  Mr. Furman to visit the Vertical World gym while participating in the defense of the Vandivere

17  action.

18  10.5    Prior, and subsequent to, Mr. Wood's becoming an employee of Gordon Rees,

19  Mr. Wood and Gordon Rees had an obligation to disclose to C3, Great American and the Court

20  in the *Vandivere* action that Mr. Wood intended to join the firm and, as such, he would have a

21  disqualifying conflict of interest created by his representation of C3 and Gordon Rees's

22  representation of Houston Casualty in the C3 coverage dispute.

23  10.6    Mr. Wood's, Mr. Furman's, Sinars's, and Gordon Rees's aforementioned

24  breaches of the duty, proximately caused damage to Great American, as C3's contractual and

25
COMPLAINT FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, EQUITABLE SUBROGATION, LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY- 15

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

equitable subrogee and, to the extent permitted, assignee by: (i) it was required to pay more in settlement of the *Vandivere* action, and; (ii) it paid and expects to pay in the future court-ordered sanctions on C3's behalf.

## XI.    SIXTH CAUSE OF ACTION

### *Breach of Fiduciary Duty by Mr. Wood, Mr. Furman, Sinars and Gordon Rees*

11.1    Plaintiff incorporates by reference Sections I-X as if set forth fully herein.

11.2    As C3's attorneys, Mr. Wood, Mr. Furman, Sinars, and Gordon Rees owed C3, as a matter of law, a fiduciary duty, including the obligations of utmost good faith, complete honesty, full disclosure (the duty to inform) and loyalty.

11.3    Mr. Wood and Gordon Rees breached their fiduciary duty to C3 by failing to identify and disclose, prior to Mr. Wood's accepting at Gordon Rees, that his employment would create a direct conflict of interest between Gordon Rees's representation of C3 and Gordon Rees's representation of Houston Casualty.

11.4    Mr. Furman and Sinars breached their fiduciary duty to C3 by failing to inform C3, prior to Mr. Furman's visits that they intended to conduct intentional and unethical contacts with a represented party, by failing to explain the potential adverse consequences to C3 and by failing to inform C3 that they had done so.

11.5    Mr. Wood's, Mr. Furman's, Sinar's, and Gordon Rees's breaches of fiduciary duty proximately caused damage to Great American, as C3's contractual and equitable subrogee and, to the extent permitted assignee, including that: (i) it was required to pay more in settlement of the *Vandivere* action than it otherwise would have had to pay, and; (ii) it paid and expects to pay in the future court-ordered sanctions on C3's behalf.

## XII.    AD DAMNUM

COMPLAINT FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, EQUITABLE SUBROGATION, LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY- 16

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1   WHEREFORE, Plaintiff seeks judgment in its favor for all damages recoverable under

2   Washington law against Defendants Houston Casualty, Gordon Rees, Mr. Wood, Mr. Furman

3   and Sinars as follows:

4   The portion of the settlement of the *Vandivere* action that should have been paid by

5   Houston Casualty;

6   The excess amount required to resolve the *Vandivere* action;

7   The court ordered sanctions Great American paid on C3's behalf;

8   Treble and punitive damages, to the extent permissible; and

9   Awarding Great American such attorney's fees and litigation costs, and such other

10  relief that the Court deems just and proper.

11

12  Dated this 5th day of September, 2023

13

14

15                                        JOHNSON FLORA SPRANGERS PLLC

16
                                          By: */s/Mark Johnson*
17                                        Mark Johnson, WSBA No. 8463
                                          Michael Sprangers, WSBA No. 45501
18                                        2001 Western Ave, Ste 205
                                          Seattle, WA 98121
19                                        206-386-5566
20                                        mark@johnsonflora.com
                                          michael@johnsonflora.com
21
                                          Attorneys for Plaintiff Great American
22

23

24

25  COMPLAINT FOR BREACH OF CONTRACT,                    **JOHNSON FLORA SPRANGERS PLLC**
    INSURANCE BAD FAITH, VIOLATIONS OF THE              2001 Western Avenue, Suite 205
    WASHINGTON CONSUMER PROTECTION ACT,                    Seattle, WA   98121-2174
    EQUITABLE SUBROGATION, LEGAL                            (t) 206.386.5566
    MALPRACTICE AND BREACH OF FIDUCIARY
    DUTY- 17

# King County Superior Court Clerk's Office Register for Eservice Confirmation Receipt

Case Number:       23-2-16817-8

Case Title:        Great American E&S Insurance Company, Individually VS Houston Casualty Company, Gordon Rees Scully Mansukhani, LLP

Firm ID:

Association:       Attorney for Petitioner/Plaintiff

Date:              9/5/2023

Name:              Mark Johnson

# King County Superior Court Clerk's Office EFiling Confirmation Receipt

| | |
|---|---|
| Case Number: | 23-2-16817-8 SEA |
| Case Title: | Great American E&S Insurance Company, Individually, and as Assignee  vs Houston Casualty Company, Gordon Rees Scully Mansukhani, LLP, Et al. |
| Submitted By: | Mark Johnson |
| Bar Number: | 8463 |
| User ID: | MarkJohnson |
| Submitted Date/Time: | 9/5/2023 10:53:59 AM |
| Received Date/Time: | 9/5/2023 10:53:59 AM |
| Payment Reference: | 142103223 |
| Total Cost: | $242.49 |

**DOCUMENTS**

Document Type:  COMPLAINT FOR MALPRACTICE - OTHER

File Name:      Complaint - Signed.pdf

Cost:           $0.00

---

Document Type:  ORDER SETTING CASE SCHEDULE

File Name:      schedule.pdf

Cost:           $0.00

---

Document Type:  CASE INFORMATION COVER SHEET

File Name:      cics.pdf

Cost:           $0.00

---

Document Type:  SUMMONS

File Name:      Summons - Houston Casualty.pdf

Cost:           $0.00

---

Document Type:  SUMMONS

File Name:      Summons - Gordon Rees.pdf

Cost:           $0.00

---

Document Type:  SUMMONS

File Name:      Summons - Sinars Slowikowski Tomasaka.pdf

Cost:           $0.00

---

Document Type:  SUMMONS

File Name:      Summons - J. Scott Wood.pdf

Cost:           $0.00

---

Document Type:  SUMMONS

File Name:      Summons - Christopher Furman.pdf

Cost:           $0.00

---

Printed On:                     9/5/2023 10:55:52 AM

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF KING**

| | |
|---|---|
| Great American E&S Insurance Company, Individually<br><br>VS<br><br>Houston Casualty Company, Gordon Rees Scully Mansukhani, LLP | No. 23-2-16817-8  SEA<br><br>**ORDER SETTING CIVIL CASE SCHEDULE**<br><br>**ASSIGNED JUDGE: Mark Larranaga, Dept. 33**<br>FILED DATE: 09/05/2023<br>TRIAL DATE:09/09/2024 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I.  NOTICES

**NOTICE TO PLAINTIFF:**
The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the ***Summons and Complaint/Petition.***  Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion.  The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this ***Schedule***. In order to comply with the ***Schedule***, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**You are required to give a copy of these documents to all parties in this case.**

## I. NOTICES (continued)

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and crossclaims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $250 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of $400 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Civil Rule 41.

**King County Local Rules are available for viewing at <u>www.kingcounty.gov/courts/clerk.</u>**

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|---|---|
| | Case Filed and Schedule Issued. | 09/05/2023 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$250 arbitration fee must be paid** | 02/13/2024 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [*See KCLCR 4.2(a) and Notices on Page 2*]. | 02/13/2024 |
| | **DEADLINE** for Hearing Motions to Change Case Assignment Area [*KCLCR 82(e)*]. | 02/27/2024 |
| | **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(k)*]. | 04/08/2024 |
| | **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(k)*]. | 05/20/2024 |
| | **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | 06/03/2024 |
| | **DEADLINE** for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | 06/03/2024 |
| | **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | 07/22/2024 |
| | **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | 08/12/2024 |
| | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [*KCLCR 4(j)*]. | 08/19/2024 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(1)*] | 08/19/2024 |
| | **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | 08/26/2024 |
| * | Joint Statement of Evidence [*See KCLCR 4 (k)*] | 09/03/2024 |
| | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 09/03/2024 |
| | Trial Date [*See KCLCR 40*]. | 09/09/2024 |

*The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.*

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED: 09/05/2023

_____
PRESIDING JUDGE

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule.  The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:**  Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

### A. Joint Confirmation regarding Trial Readiness Report
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand.  Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held.  FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

### C. Trial
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court.  The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge.  The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules.  Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered.  All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument."  Local Civil Rule

7 governs these motions, which include discovery motions.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge.  All other motions should be noted and heard on the Family Law Motions calendar.  Local Civil Rule 7 and King County Family Law Local Rules govern these procedures.  The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time.  However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule.  In addition,  discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B.  Original Documents/Working Copies/ Filing of Documents:  All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.  The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application.  Pre-registration to accept e-service is required.  E-Service generates a record of service document that can be e-filed.  Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/documents/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  **Do not file the original of the proposed order with the Clerk of the Court**.   Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.  The court may distribute orders electronically.  Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions.  If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the  Ex Parte and Probate Department.**  Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department.  **If final order and/or formal proof are entered in the Ex Parte and Probate Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count

includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

_____
PRESIDING JUDGE