**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.   23-cv-01705-RMR

Houston Casualty Company,

     Plaintiff,

v.

C3 Manufacturing LLC,

     Defendant.

---

**HCC'S RESPONSE IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO DISMISS**

---

Houston Casualty Company ("HCC"), by and through counsel, Arnett Litigation, LLC, files this Response in Opposition to Defendant's Second Motion to Dismiss, ECF No. 28. In support of its Response, HCC states the following:

### I. PRELIMINARY STATEMENT

Defendant C3 Manufacturing LLC ("C3") has filed an improper second, out of time, motion to dismiss (the "Second Motion to Dismiss"). ECF No. 28. This second bite at the apple should be denied outright for its flagrant disregard of the Federal Rules of Civil Procedure. While C3 makes a half-hearted attempt to argue that it could not have brought its Second Motion to Dismiss earlier, C3 can point to only false distinctions between the *Colorado River* and *Brillhart* abstention doctrines, at least insofar as timing is concerned.

Even if this Court considers the *Brillhart* abstention doctrine, which it need not do in light of the procedural impropriety of the Second Motion to Dismiss, the motion must fail. Colorado

law applies to the dispute before this Court – whether the rescission of the policy issued in Colorado to a Colorado company was effective. The Washington state court is not the most convenient or economical forum for deciding an issue of Colorado law. And while C3's assignee, Great American E & S Insurance Company ("Great American"), raised several bad faith and related causes of action against HCC, it did not ask the Washington state court for a determination on the necessarily preliminary issue of the effectiveness of the rescission. In addition, the Washington state suit includes malpractice causes of action against two law firms and two individual attorneys. As this Court stated in its Recommendation denying the first motion to dismiss, "C3's own lawsuit . . . is . . . the reactive lawsuit. . . . The addition of other defendants . . . would complicate what should be an otherwise simple declaratory judgment insurance coverage suit." ECF No. 26 at 5-6.

C3 is unnecessarily complicating this matter in a desperate attempt to have this case heard in Washington state. Try as it might to transform this into a Washington state issue, C3 cannot escape the reality that Colorado is the most appropriate forum for this Colorado matter to be decided. Even if this Court were to look past the procedural inappropriateness of the Second Motion to Dismiss, which it need not do, the Court should deny the motion as a futile, "wasteful exercise." ECF No. 26 at 5. Because a $4 million demand has been made of HCC, with respect to a policy that it rescinded, HCC has an interest in receiving a determination about the effectiveness of the rescission, and thus its obligations with respect to C3, as soon as practicable.

## II. BACKGROUND

HCC initiated this declaratory judgment action to obtain a ruling on the validity of the insurance policy rescission that resulted from C3's fraudulent application. The underlying case is a personal injury suit brought by Michael Vandivere in Washington state court against Vertical World and C3 for injuries Mr. Vandivere suffered when he fell while rope climbing. ECF No. 5 ¶¶ 25-26. HCC is not a party to that underlying lawsuit.

Great American issued a commercial general liability insurance policy to C3, and HCC issued an excess policy, policy number H18PX50121-00 (the "Excess Policy"). HCC issued the Excess Policy in reliance on the application for insurance submitted by C3, which represented that C3 had never recalled or was considering recalling any product. ECF No. 5-1, Application at page 4 of 7, question 11.

C3 did not put HCC on notice of the underlying lawsuit. Rather, Great American notified HCC of the underlying lawsuit almost three years after that suit had been filed. *Id.* ¶ 29. HCC then discovered that C3 had issued at least two recalls before it submitted its application for insurance to HCC –notwithstanding that C3 represented in its application for insurance that C3 had never recalled any product and was not considering recalling a product. *Compare* ECF No. 5-1, Application at page 4 of 7, question 11; *with* ECF No. 5-4, Feb. 4, 2022 R. Naranjo Dep. at 78:22-79:22, 83:17-24, 104:5-14, 108:8-18. HCC rescinded the Excess Policy on the basis of fraud and returned the premium amount to C3. Exhibit 1, Jan. 26, 2023 L. Kasheta letter to R. Naranjo.

C3 responded to the rescission – through the same attorneys representing C3 in the present suit – by letter dated February 27, 2023. (Exhibit 2, Feb. 27, 2023 K. Anderson letter to L. Kasheta.) After HCC provided a response on March 17, 2023, (Exhibit 3, Mar. 17, 2023 A. Lavin

3

letter to K. Anderson), HCC heard nothing further from C3 or its counsel about the rescission until late June 2023.

It seemed the rescission was a done deal and that HCC had no further involvement in the Vandivere action. Indeed, when Great American provided HCC with a pretrial report in May 2023, HCC stated that the Excess Policy had been rescinded and that there was therefore no need for Great American to provide updates to HCC on the claim. Exhibit 4, May 11, 2023 L. Kasheta email to P. Wood. Counsel for Great American then requested that HCC reconsider the rescission and included standard reservation language in the letter, stating that "Great American reserves all rights against Houston Casualty." Exhibit 5, June 17, 2023 J. Ruggeri letter to L. Kasheta.

After hearing nothing from C3 for four months, C3's current counsel demanded, out of the blue, that HCC tender the $4 million limits of the rescinded Excess Policy. This demand was sent shortly after midnight on June 26, 2023, the day jury selection was scheduled to begin in the underlying lawsuit, and demanded that HCC respond by 8:00 a.m. the same day. Exhibit 6, June 26, 2023 K. Anderson email to A. Lavin, attaching demands. HCC responded that it maintained its decision to rescind the policy. Exhibit 7, June 26, 2023 A. Lavin email to K. Anderson. After receiving this eve of trial demand for the limits of the rescinded Excess Policy, HCC filed the present lawsuit, seeking a declaration that the Excess Policy was rescinded and that HCC therefore has no obligations with respect to the rescinded Excess Policy.

After this suit was filed, C3 attempted to evade service of the summons and complaint, *see* ECF No. 12, and then filed a motion to dismiss based on the *Colorado River* abstention doctrine. ECF No. 17. Magistrate Judge Neureiter issued a Recommendation to deny the motion, ECF No. 26, C3 filed objections, ECF No. 27, and HCC responded to the objections, ECF No. 30. On

September 5, 2023, C3 also filed the Second Motion to Dismiss, this time based on the *Brillhart* abstention doctrine, ECF No. 28, attaching a lawsuit filed (but not yet served) by C3's assignee, Great American, in Washington state court, ECF No. 28-1.

## II.  LEGAL ARGUMENT

### A.  The Second Motion to Dismiss Should Be Denied as an Impermissible Second Bite at the Apple and for Being Out of Time

Federal Rule of Civil Procedure 12(a)(1)(A) requires that a responsive pleading be filed within 21 days after service of the summons and complaint. A motion to dismiss must be filed before a responsive pleading. Fed. R. Civ. P. 12(b). Here, the summons and complaint were served on July 6, 2023, ECF No. 15, requiring that an answer or motion to dismiss be filed by July 27, 2023. C3 timely filed its first motion to dismiss on July 27, 2023. ECF No. 17. C3 has not filed an Answer, but instead filed the Second Motion to Dismiss on September 5, 2023 – *40 days* after the deadline to file a motion to dismiss.

C3 presents no basis for this late filing, and case law provides no support. In *Scott v. Allen*, defendant filed a second motion to dismiss after a first motion to dismiss was denied. The court found that the filing of a second motion to dismiss in lieu of an answer "does not render the Second Motion to Dismiss timely filed." No. 21-cv-02011, 2022 U.S. Dist. LEXIS 208131, at *4-5 (D. Colo. Nov. 16, 2022). Similarly here, the Second Motion to Dismiss filed by C3 in this case should be denied as untimely.

In addition, defendants are not permitted to file two motions to dismiss. Federal Rule of Civil Procedure 12(g)(2) instructs that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). As explained by Magistrate Judge

5

Neureiter in another case, "Rule 12(g) contemplates a single, pre-answer motion in which the defendant asserts all the Rule 12 defenses that are then available to it and generally precludes a second motion based on any Rule 12 defense or objection that the defendant could have but neglected to raise in the original motion." *Schober v. Thompson*, No. 21-cv-01382, 2023 U.S. Dist. LEXIS 62894, *3 (D. Colo. Feb. 8, 2023) (finding that second motion to dismiss was barred and the defense of lack of personal jurisdiction waived), *affirmed by* 2023 U.S. Dist. LEXIS 62895 (D. Colo. Mar. 6, 2023). *See also, e.g.*, *Am. Fid. Assur. Co. v. Bank of N.Y. Mellon*, 810 F.3d 1234, 1237, 1241-42 (10th Cir. 2016) (finding that defendant waived its Rule 12 defense and upholding denial of motion).

C3 claims that it could not have brought this Second Motion to Dismiss before filing the Washington state action because *Brillhart* alone requires that there be a pending state court action. ECF No. 28 at 2. But this is a false distinction. Both *Colorado River* and *Brillhart* presume that a state court action is pending before a federal court will contemplate abstaining from exercising its jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 808 (1976) (discussing concurrent state proceedings); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942) (discussing a proceeding pending in state court). When C3 filed its first motion to dismiss, *Brillhart* was just as available to it as was *Colorado River*. It seems clear that C3 simply failed to find *Brillhart* the first time around and is now seeking a proverbial second bite at the apple. The Rules clearly disallow such tactics, and the Second Motion to Dismiss should be denied.

**B.      Colorado Law Applies to the Question Presented by This Lawsuit**

If this Court analyzes the substance of the Second Motion to Dismiss, a choice of law analysis is a necessary precursor. One of the key questions under *Brillhart* is whether the issues "can better be settled in the proceeding pending in the state court." 316 U.S. at 495.

The Second Restatement applies to conflict of laws questions raised in contract disputes. *Wood Bros. Homes, Inc. v. Walker Adjustment Bur.*, 198 Colo. 444, 447 (1979) (adopting the Restatement (Second) for contract actions). The Restatement looks for the state with the most significant relationship to the issue at hand. RESTATEMENT (SECOND) OF CONFLICT OF LAW § 188. The Tenth Circuit has determined that when an insurance contract was "negotiated and entered in Colorado and the insured's place of business is in Colorado," "Colorado therefore has the most significant relationship to the insurance policy." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). *See also DISH Network Corp. v. Arch Specialty Ins. Co.*, 734 F. Supp. 2d 1173, 1177–78 (D. Colo. 2010) (finding that Colorado law applied even though the underlying action was filed in California because the insured "paid their premiums and maintain their principal place of business in Colorado"), *rev'd and remanded on other grounds by* 659 F.3d 1010 (10th Cir. 2011).

Here, the HCC excess policy was issued to C3 in Colorado. *See* ECF No. 5-2, HCC Excess Policy at page 2 of 20. C3 was formed under Colorado law, and its principal place of business is in Colorado. *See* ECF No. 20-1, Apr. 27, 2023 Periodic Report of C3 to Colorado Secretary of State. C3's unsupported statements to the contrary,[1] Colorado law applies to determine whether HCC's rescission of the excess policy was effective.

---

[1] C3 states, without support, that the Washington state court will decide whether HCC had the right to rescind the

7

### C. This Court Can Best Settle the Rescission Dispute

Due to the procedural impropriety of the Second Motion to Dismiss, the Court does not need to reach the substantive issue raised by the Second Motion to Dismiss, whether the Court should abstain from exercising its jurisdiction pursuant to *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942). But even if the Court does reach this question, the Court should find that abstention would be inappropriate. The dispute before the Court – whether HCC's rescission of the Excess Policy was effective – can best be settled by this Court.

*Brillhart* instructs that a federal district court "should ascertain whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." 316 U.S. at 495.[2] The Tenth Circuit has listed several factors for district courts to consider in determining whether to abstain from hearing a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995). In *Runyon*, the court found that the issues raised in the state and federal case were identical, *id.* at 1169, and the district court perceived that the federal plaintiff "was using the declaratory judgment action to provide an arena for a race to res judicata," *id.* at 1170. Under these circumstances, the Tenth Circuit found that the district court did not err by refusing jurisdiction. *Id.* at 1169-70.

---

Excess Policy, and that Washington statutory interpretation will apply to the dispute. ECF No. 28 at 3, 6. There is no basis for Washington law, rather than Colorado law, to apply to this dispute.

[2] In *Wilton v. Seven Falls Co.*, the Supreme Court ruled that *Brillhart*, not *Colorado River*, governs declaratory judgment actions. 515 U.S. 277, 289-90 (1995).

The present case is distinguishable. First, as discussed above, Colorado law applies to the question of whether the excess policy was rescinded. A Washington state court will be unfamiliar with Colorado state law, whereas this Court, sitting in Colorado, most certainly has substantial experience applying Colorado insurance law. As alluded to by C3, Washington state has unique jurisprudence on rescission, ECF No. 28 at 3, and application of Colorado's differing jurisprudence could prove challenging to a Washington state court.

Second, C3's assignee, Great American, did not seek a ruling in the Washington state case about the effectiveness of the rescission. ECF No. 28-1, Washington state case, at ¶¶ 6.1-9.6. Rather, Great American asserts claims that HCC violated Washington's Insurance Fair Conduct Act and Consumer Protection Act by, among other things, wrongfully rescinding the Excess Policy. These claims, while referring to the rescission, are distinct from a request for a declaratory judgment that HCC effectively rescinded the Excess Policy under Colorado law.

Third, Great American's Washington state case includes claims against two law firms and two attorneys for legal malpractice. These are completely different claims against different parties. HCC is not implicated in Great American's claims against the law firms and lawyers. The attempt to have a question of Colorado law determined by a Washington state court by asserting altogether different claims against different parties should not be abided.

Finally, there is no "procedural fencing" by HCC. C3 confuses HCC's desire for a quick resolution of this dispute, in which $4M has been demanded from HCC on a rescinded policy, with a race to the courthouse. In concocting its story, C3 ascribes to HCC any number of horribles. For example, C3 points to HCC's filing of briefs before the deadline and declining to consent to C3's delay tactics as clear signs of "procedural fencing." But as this Court has already recognized,

9

"whether HCC properly rescinded the excess policy" is a "question that needs to be answered relatively quickly." ECF No. 26 at 6.

By way of further explanation, shortly after midnight on June 26, 2023, the morning of jury selection for the underlying Vandivere lawsuit, the Levin Sitcoff firm demanded, on behalf of C3, that HCC "make its $4 million available immediately" to resolve the underlying matter. Ex. 6, June 25, 2023 K. Anderson letter to A. Lavin, attached to June 26, 2023 K. Anderson email to A. Lavin. Recognizing the significance of the demand, and in light of the impending trial, HCC moved as quickly as possible to obtain a ruling on its January 2023 rescission. HCC filed a declaratory judgment action on July 5, 2023, in the forum that made the most sense – Colorado, where C3 is located and where the policy was issued. ECF No. 1.[3]

There is no procedural fencing by HCC, and this Court, sitting in Colorado and with substantial experience applying Colorado law to insurance disputes, can better resolve the dispute over the rescission of the Excess Policy than can a Washington state court. Certainly there is no prohibition against this Court exercising its jurisdiction. *See, e.g.*, *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1275-76 (10th Cir. 1989). This is the most appropriate forum, and the Court should exercise its jurisdiction over the case.

---

[3] C3 alleges, without basis, that the present lawsuit was prompted by a June 17, 2023 letter from Great American's counsel "suggesting that Great American would pursue claims against HCC if it did not reconsider its position. At that point, HCC knew that it would soon be facing an action for breach in Washington state . . . ." ECF No. 28 at 3. But the June 17, 2023 letter did not threaten litigation. Rather, the cited June 17 letter stated only what every letter written on behalf of an insurance company states, that "Great American reserves all rights." Ex. 5, June 17, 2023 J. Ruggeri letter to L. Kasheta at 2. HCC could not have known, based on this generic reservation language, that Washington state litigation was imminent.

### D. This Court Has Priority of Jurisdiction

"Where two courts may exercise jurisdiction over the same parties and subject matter, we have stated that the first action filed has priority of jurisdiction, and that the second action must be stayed until the first is finally determined ('priority rule')." *Town of Minturn v. Sensible Hous. Co.*, 2012 CO 23, P19 (citations omitted). *See also, e.g.*, *Wisehart v. Wisehart*, No. 2016CV30032, 2016 Colo. Dist. LEXIS 1932, *6 (Colo. Dist. Ct., Delta Cty. Aug. 29, 2016). As explained by the Colorado Supreme Court, "[i]n our country, where there are two separate jurisdictions – federal and state – the rule which preserves the two systems of courts from conflict of jurisdiction, is that the court which first acquires jurisdiction of the subject matter of the litigation, whether it be person or property, must be permitted to exhaust its jurisdiction, to attain that for which it assumed control, before the other court may assert jurisdiction for its own purpose." *Gonzales v. Horan,* 138 Colo. 275, 278 (1958).

Here, this Court clearly has priority over the dispute between HCC and C3. HCC filed the action first, in the most convenient forum. The priority rule dictates that this Court has priority and the case should not be dismissed.

### III. CONCLUSION

**WHEREFORE**, for the reasons stated herein, C3's second motion to dismiss should be denied.


**DATED** this 13th day of September 2023.

11

Respectfully Submitted,

ARNETT LITIGATION, LLC

By: *s/ *Jennifer C. Arnett*
Jennifer C. Arnett
1630 30th Street, Ste. A-184
Boulder, Colorado 80301
Tel: 720-726-5852
jennifer@arnettlawyers.com
*Attorney for Plaintiff Houston Casualty Company*

## CERTIFICATE OF SERVICE

  I hereby certify that on September 13, 2023, I electronically filed the foregoing **HCC'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                  *s/ Christine Giaquinto*
                  Legal Assistant for Arnett Litigation, LLC