# EXHIBIT E



**TOKIO MARINE HCC**

LDG Reinsurance Corporation
401 Edgewater Place, Suite 400
Wakefield, MA 01880 USA
Tel: 781-245-2220   Fax: 781-245-0052

January 26, 2023

VIA CERTIFIED MAIL

Mr. Ron Naranjo
C3 Manufacturing LLC
3809 Norwood Dr.
Littleton, CO 80125

Re:  Named Insured:   C3 Manufacturing LLC ("C3")
     Policy No.:      H18PX50121-00 (10/11/2018-2019) (the "Excess Policy)
     U/W Company:     Houston Casualty Company ("HCC")

## NOTICE OF RESCISSION OF EXCESS INSURANCE POLICY

Dear Mr. Naranjo,

Please consider the following a notice that Houston Casualty Company rescinds the Commercial Excess Liability Policy, policy number H18PX50121-00, with effective dates of October 11, 2018 to October 11, 2019, which was issued to C3 Manufacturing. The basis for the rescission of the Excess Policy is explained below.

## APPLICATION

On August 31, 2018, Mr. Naranjo signed a Veracity Insurance Solutions' Products Liability Insurance Application while attempting to obtain an excess insurance policy. This Application was provided by Veracity to HCC and HCC relied on C3's representations when underwriting the Excess Policy. In Section 9 of the application, Mr. Naranjo warranted that (1) the information provided, after reasonable inquiry, was true and complete and (2) was the basis of the policy and deemed incorporated therein.

In the Application, Section 3, Question 11 asked, "Has the Applicant ever recalled or is it considering recalling any product?" C3's response was "No." Section 6, Question 2 to the Application asked, "Is (are) any person(s) or organization(s) proposed for this insurance aware of any fact, incident, circumstance, situation, condition, defect or suspected defect which may result in a Products Liability claim?" C3's response was "No."

As set forth in the policy language, by accepting the Excess Policy, C3 agreed that the statements in the Declarations were based upon representations C3 made to HCC and that HCC issued the Excess Policy in reliance upon C3's representations. Here, the representations were made in the application process. Further, the Excess Policy provides that it is void in any case of fraud by C3 as it relates to the Excess Policy. *See* Form HXC1 001 0814, Sec. IV, 13.

A member of the Tokio Marine HCC group of companies

2
C3 Manufacturing

## INVESTIGATION

Following the July 2022 notice of the *Michael Vandivere et al v. Vertical World, Inc., et al.*, King County, Washington Superior Court, Case No. 19-2-2738502 lawsuit, for the first time, HCC became aware that C3 may have had prior recalls of its product that pre-dated the issuance of the Excess Policy. More specifically, HCC reviewed a deposition summary from retained counsel that indicated Mr. Naranjo had testified about recalls. Thereafter, in September 2022, subject to a reservation of rights, HCC submitted a request for information to C3 to provide further information for HCC's consideration regarding whether there had been a material misrepresentation in the Application. Through its counsel, by letter dated November 2, 2022, C3 refused to provide the requested information but suggested HCC contact defense counsel to access some of the requested documents. HCC complied with that suggestion and acquired copies of Mr. Naranjo's deposition transcripts and exhibits.

HCC has reviewed the transcripts and referenced exhibits. In the February 4, 2022 deposition, Mr. Naranjo testified under oath concerning recalls of C3's product. The first recall occurred on May 9, 2016, and the second occurred on August 15, 2018. When asked to identify Exhibit 1, Mr. Naranjo testified, "So that is a recall notice that we issued on May 18th of 2016." *See* February 4, 2022 Deposition Transcript, 78:25-79:1. When asked to identify Exhibit 4, Mr. Naranjo stated, "That's a recall notice from August 15, 2018." *See id.* at 108:13. Exhibit 1 stated, "C3 Manufacturing recently became aware of a material defect which may cause the device to cease to retract the lanyard. Our investigation indicates that defects in the material used to manufacture the retraction spring of the affected device may cause partial or complete fracture of the retraction spring in the affected units causing inadequate or complete loss of retraction." Exhibit 4 had similar language and also stated, "Complete fracture of the retraction spring will result in loss of retraction and the possibility of the lanyard 'paying out', thereby losing tension on the line." Both letters directed consumers to immediately remove affected auto belays from service and return them for repairs. In addition, at the deposition, Mr. Naranjo agreed that the retraction spring defect could increase the risk of injury to climbers using the product. *See* February 4, 2022 Deposition, 99:5-9.

In Exhibit 3, Mr. Naranjo's August 13, 2018 email identified his knowledge of 13 failures occurring between July 13 and August 10, 2018. Mr. Naranjo's email to representatives of Lesjöfors Springs America Inc., stated, "I am going to have to recall our devices with springs from the lots that we had talked about previously. We have had 15 failures with 13 happening since July 13."

## MATERIAL MISREPRESENTATION

From review of the 2022 deposition and its exhibits, HCC concludes that Mr. Naranjo, on behalf of C3, made material misrepresentations in the application process to obtain the Excess Policy. Had Mr. Naranjo accurately responded to the questions, HCC would not have issued the Excess Policy.

More specifically, in the month prior to signing the Application, Mr. Naranjo knew of 13 failures and the need for a recall, but indicated he was not aware of any defect, which may result in a products liability claim. This was less than 3 weeks before he signed the Application representing otherwise. Further, given he issued a recall approximately two weeks prior to affirming the application, his representation in the application that C3 never had any recalls was also false.

When signing the Application, Mr. Naranjo declared that to the best of his knowledge and belief,

3
C3 Manufacturing

after reasonable inquiry, the statements in the Application were true and complete. In fact, the representations were false and concealed information. Further, given the recent communications about recalls and defects, C3 knowingly made the false statement and concealed information. The false statement and concealed information materially affected the acceptance of the risk by HCC because providing excess liability coverage for products that have been subject to recalls and are known to fail inherently creates more risk. This is especially true when the product is utilized in rock climbing and the failure to retract can lead to bodily injury. Mr. Naranjo agreed at his deposition that the retraction spring defect could increase the risk of injury to climbers using the product. HCC had no knowledge of the true facts at the time the Excess Policy incepted. When issuing the Excess Policy, HCC relied, to its detriment, on the false statements and lack of presented information. All elements of material misrepresentation are satisfied and, under Colorado law, HCC is permitted to rescind the Excess Policy.

## **RESCISSION**

Based upon the foregoing, HCC is rescinding the Excess Policy. Enclosed is a premium refund check. Should you believe HCC's analysis is incorrect or should you have additional information that would be material to HCC's decision to rescind the Excess Policy, please direct the same to the undersigned.

If you believe that HCC's position is improper, you may have the matter reviewed by the Department of Insurance in Colorado. The appropriate address for such review is:

Division of Insurance, Colorado Department of Regulatory Agencies
Mail to: 1560 Broadway, Suite 850, Denver, CO 82020
Phone: 303-894-7499 or 1-800-930-3745

Sincerely,

*[signature: Lauren Kasheta]*

Lauren Kasheta
Claims Director
LDG Reinsurance Corp.
Lauren_kasheta@ldgre.com
781-716-5115

Enclosure: Premium refund check

cc: James H. Moss, Esq.
Veracity Insurance Solutions