IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01705-RMR-NRN

HOUSTON CASUALTY COMPANY,

Plaintiff,

v.

C3 MANUFACTURING LLC,

Defendant.

---

**C3 MANUFACTURING LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR STAY UNDER THE *BRILLHART* ABSTENTION DOCTRINE [DOC. 28]**

---

C3 Manufacturing LLC ("C3"), by and through its attorneys, Bradley A. Levin and Kerri J. Anderson of LEVIN SITCOFF WANEKA PC, respectfully submits this Reply in Support of its Motion to Dismiss or Stay Under the *Brillhart* Abstention Doctrine [Doc. 28].

## INTRODUCTION

The opposition filed by Plaintiff Houston Casualty Company ("HCC") (the "Opp.") in response to the Motion to Dismiss or Stay Under the Brillhart Abstention Doctrine (the "Motion") inappropriately argues that "C3 simply failed to find *Brillhart* the first time around" and that application of Colorado law, should the Court find that law to apply, "could prove challenging to a Washington state court." Opp. at 6, 9. Neither statement is fair. C3, of course, found *Brillhart* the first time around; C3 could not have moved under the *Brillhart* abstention doctrine when it filed its first motion to dismiss because there was no parallel state court action pending then. Now there is, which is why this time around C3 moves under the *Brillhart* doctrine. And, HCC has no

basis to argue that the Washington court may be incapable of applying Colorado law should it determine that state's law applies. The Court should disregard these arguments.

The remainder of HCC's arguments are no better. HCC says the Washington complaint does not ask the Washington court to rule on the effectiveness of the rescission. Opp. at 2. But it does: the first cause of action is for breach of contract by HCC "by unilaterally and wrongfully purporting to rescind and/or cancel" its policy. Washington Complaint [Doc. 28-1] at 12. HCC then argues that this motion is procedurally improper because Rule 12(g)(2) generally bars a second Rule 12 motion based on defenses or objections that were available when the first motion was filed. Opp. at 5-6. But C3's second motion is based on a defense that that was *not* available when it filed its first motion, namely, the pendency of the parallel Washington action. *See* Wash. Rev. Code Ann. § 48.30.015 (a Washington coverage action had not and could not have been filed at the time C3 filed its first motion because the "cure" period was still active). This situation is why there is an exception under Rule 12(g)(2). And finally, HCC's brief ironically highlights the Washington-centric nature of this dispute. HCC concedes that it "moved as quickly as possible" to obtain a ruling on rescission because of the $4 million demand of it and the trial of the Vandivere lawsuit. Opp. at 10. In other words, HCC did not file this action when it learned of C3's purported misrepresentation in its policy application; rather, HCC filed this action when it knew it was staring down the barrel of a Washington case that could implicate its limits. This is a Washington-centric dispute that implicates Washington public policy. This Court, accordingly, should abstain.

## ARGUMENT

I.   **C3'S MOTION IS PROCEDURALLY PROPER.**

    A.   **C3's Motion Is Timely.**

HCC argues that C3's motion to dismiss is late because Rule 12(a)(1)(A) requires that a responsive pleading be filed within 21 days after service of the complaint and C3 filed its motion 40 days after service. Opp. at 5.  HCC is mistaken.  Rule 12(a)(1)(A) extends the deadline for filing until fourteen days after a motion to dismiss has been denied.[1]  Here, C3 filed its first motion to dismiss on July 27, 2023.  On August 22, 2023, the Magistrate Judge issued a recommendation to deny C3's first motion.  The fourteenth day from August 22, 2023 was September 5, 2023.

To support its argument, HCC relies on *Scott v. Allen*, No. 21-CV-02011-NYW-KLM, 2022 WL 16961940, at *2 (D. Colo. Nov. 16, 2022).  Opp. at 5.  HCC misunderstands that case. In *Scott*, the magistrate judge recommended denial of the first motion to dismiss on July 11, 2022; the defendant objected, and the district judge adopted the recommendation on October 3, 2022. *Scott, supra,* at *1.  The defendant did not file a second motion to dismiss until November 8, 2022 – four months after the magistrate judge's initial recommendation and more than a month after the district judge adopted it.  *Id.*  The district judge observed that the defendant's filing was due by October 17, 2022, fourteen days *after her adoption of the recommendation*.  *Id.* at *2.  C3 does not run into the issue in *Scott*.  Here, C3 filed within fourteen days of the Recommendation.

**B.      A Second Motion to Dismiss Is Permissible.**

Relying on Rule 12(g)(2), HCC next argues that "defendants are not permitted to file two motions to dismiss."  Opp. at 5.  This argument is wrong in two different ways.  Rule 12(g)(2)

---

[1] *See Burris v. Bob Moore Auto Grp., Inc., LLC*, 517 F. App'x 639, 640 (10th Cir. 2013) ("When a complaint has been challenged by a motion to dismiss, Rule 12(a)(4)(A) supplants the filing deadlines in Rule 12(a)(1)(A), tolling the time for an answer until fourteen days after notice that the motion has been denied . . . ."); *Felmlee v. Oklahoma*, 620 F. App'x 648, 652 (10th Cir. 2015) ("The Defendants first filed a motion to dismiss and were not required to file an answer to the complaint before the district court ruled on that motion.").

provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection *that was available to the party* but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2) (emphasis added).  Here, HCC opposed the earlier motion precisely on the ground that, absent a pending competing action, abstention was *not* available, and Magistrate Judge N. Reid Neureiter agreed. Recommendation Denying Defendant C3's Manufacturing's Motion to Dismiss Based on Colorado River Abstention [Doc. 17] at 5.  In other words, HCC's argument now – that abstention was available earlier – contradicts its initial argument that abstention was not available.

**II.    ON THE MERITS, THE COURT SHOULD ABSTAIN.**

As HCC acknowledges, an abstention analysis is guided by the factors set forth in *St. Paul Fire & Marine Insurance Co. v. Runyon*, 53 F.3d 1167 (10th Cir. 1995).  Opp. at 8.  Under the *Runyon* factors, the Court should choose to abstain.  Indeed, HCC generally disregards those factors as much as it can, preferring to rely on considerations, such as choice of law and priority of filing, that appear neither in *Brillhart* nor *Runyon*, nor in cases applying those decisions.

The first two factors are whether the declaratory action would settle the controversy and whether it would serve a useful purpose those factors consider "the degree of identity of parties and issues in the concurrent proceedings." *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002).  Where there is considerable identity, the court should abstain. *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495 (1942).

Here, this action is duplicative of the Washington state court action filed by Great American (the "Washington Coverage Action").  That Washington action states a claim for breach of contract against HCC for improperly purporting to rescind its policy:  "Houston Casualty

4

breached the Houston Casualty Policy by unilaterally and wrongfully purporting to rescind and/or cancel its policy with C3 after an injury-causing event.  Washington Complaint [Doc. 28-1] at 12.  HCC's Colorado Complaint conversely seeks a declaration the rescission was proper.  Doc. 1 at 8.  HCC nevertheless contends these complaints do not raise the same issue:

> C3's assignee, Great American, did not seek a ruling in the Washington state case about the effectiveness of the rescission.  Rather, Great American asserts claims that HCC violated Washington's Insurance Fair Conduct Act and Consumer Protection Act by, among other things, wrongfully rescinding the Excess Policy.  These claims, while referring to the rescission, are distinct from a request for a declaratory judgment that HCC effectively rescinded the Excess Policy under Colorado law.

Opp. at 9.  HCC makes the needlessly precise observation that Great American did not seek declaratory relief on the issue of rescission, but rather, pursues other causes of action prosecuting HCC's decision to rescind.  This argument should be ignored; substantively, those claims involve substantially the same legal and factual issues.

The third *Runyon* factor is "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*." 53 F.3d at 1169 (internal quotation marks omitted).  HCC argues that it employed hurry-up tactics merely because it wanted to resolve the issues quickly.  Opp. at 9 ("C3 confuses HCC's desire for a quick resolution of this dispute . . . with a race to the courthouse.").  The record tells a different story.  HCC purported to rescind on January 26, 2023, months after it learned of the alleged misrepresentation.  Doc. 32-1 at 4.  C3 protested the purported recission in a letter dated February 27, 2023, and declined to cash a check representing return of premium.  Doc. 32-2.  In its response of March 17, 2023, HCC refused to reconsider its rescission.  Doc. 32-3.  Even then, HCC did not move to obtain declaratory relief approving its rescission; indeed, it took no action at all.  As HCC itself

5

says, from its perspective, "[i]t seemed the rescission was a done deal and that HCC had no further involvement in the [underlying] action." Opp. at 4.

But in a June 17, 2023 letter, counsel for Great American advised HCC that HCC should join in efforts to settle the underlying tort case, which (as HCC knew) was set for trial on June 23, 2023. Doc. 32-5. The letter pointed out that HCC's purported rescission after the happening of liability-causing events was invalid under either Colorado *or* Washington law. *Id.* If HCC refused to reconsider, Great American advised that it would reserve its rights against HCC. *Id.* At this point, two things were apparent: 1) if HCC was unwilling to participate in the settlement of the underlying case, Great American would bring legal action to enforce its rights; and 2) Great American was going to seek to enforce those rights *in Washington*, the situs of the underlying case and a jurisdiction that takes a particularly dim view of attempts to cold-shoulder an insured after its liability arises. HCC thereafter swung into action, filing this action weeks later in an effort to preempt a filing in Washington.[2]

That was at least "procedural fencing," if not indeed an improper anticipatory filing. As a court in this district recently observed:

> An improper anticipatory filing is one made under threat of a presumed adversary filing in a different district of the 'mirror image" of that suit. In contract disputes, this can occur when a breaching party, who expects to be sued, files a declaratory

---

[2] In a footnote, HCC feigns ignorance: "HCC could not have known, based on this generic reservation language, that Washington state litigation was imminent." Opp. at 10 n.3. First, the language was not generic; Great American's June 17, 2023 letter stated that HCC's rescission lacked a legal basis, then continued: "Should Houston Casualty refuse to reconsider its position and that decision cause Great American to have to pay amounts that it would not otherwise have to pay, Great American reserves all rights against Houston Casualty." Doc. 32-5. To anyone familiar with either law or insurance, that is shot across the bow. Second, the letter came from outside coverage counsel – that is to say, from lawyers who litigate for a living. HCC knew what was coming, as shown by its nearly immediate preemptive filing after months of inaction.

> judgment action in a forum convenient to it in order to pre-empt an anticipated breach of contract action in another venue. Indeed, courts have acknowledged that the "natural plaintiff" in a lawsuit is the one who wishes to present a grievance for resolution by a court and thus courts have expressed wariness at the prospect of a suit for declaratory judgment aimed solely at wrestling the choice of forum from the "natural plaintiff."

*Great-W. Life & Annuity Ins. Co. v. Malan*, No. 21-CV-03367-RMR-STV, 2022 WL 2287535, at *3 (D. Colo. Apr. 19, 2022), *report and recommendation adopted*, No. 1-21-CV-03367-RMR-STV, 2022 WL 3099234 (D. Colo. June 15, 2022) (citations and quotation marks omitted). Here, C3 and its assignee Great American are the natural plaintiffs because they are the parties with a grievance: neither has been indemnified for its loss. HCC, in contrast, was happy to do nothing – to regard the rescission as a "done deal" – until it realized it was going to be sued in Washington.

In its response, HCC states: "in light of the impending trial, HCC moved as quickly as possible to obtain a ruling on its January 2023 rescission." Opp. at 9. But this makes no sense because HCC could not possibly "obtain a ruling" from this Court in time to make any difference in the underlying case with trial just days away. *See* Order Denying Defendant C3 Manufacturing, LLC's Motion to Continue Trial Date, *Michale Vandivere, et al. v. Vertical World, Inc. & C3 Manufacturing, LLC*, No. 19-2-27385-2 SEA, King County Superior Court, Washington. And in fact, by the time HCC filed this action on July 5, 2023, the underlying case had already settled in principle. In short, HCC's efforts to push things along did not begin until after the underlying case was resolved. HCC began that campaign, not "in light of the impending trial," but in light of an impending Washington lawsuit.

The fourth *Runyon* factor is "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." 53 F.3d at

7

1169. HCC asserts that this Court is the better forum because the case is governed by Colorado law because Colorado courts follow the principles of the Restatement (Second) of Conflicts of Law, and "The Restatement looks for the state with the most significant relationship to the issue at hand." Opp. at 7. This argument fails in two ways. First, even if this case truly had a strong relationship with Colorado, HCC is unable to cite a single case finding that choice of law is a significant factor under either *Brillhart* or *Runyon*. HCC resorts to making the unsupportable suggestion that a Washington court might find it "challenging" to apply Colorado's general law of rescission. Opp. at 9. But HCC does not bother to show that Colorado's general law of rescission is so unique that it would overwhelm the capacities of the Washington judiciary.

Perhaps the biggest problem with HCC's argument is that it mischaracterizes the relative interests of Colorado and Washington here. Colorado's only real connection with this case is as C3's principal place of business, but C3 has assigned its claims to Great American. At this point, however, this matter is essentially a dispute between a Texas insurer, HCC, and an Ohio insurer, Great American, concerning an accident that took place in Washington state. Great American's independent claim for equitable indemnity from HCC does not depend on C3's rights at all and therefore has *no* Colorado nexus.

Most importantly, Washington has a strong interest in the dispositive issue in this case, one HCC does not acknowledge. That issue is not whether rescission would be *generally* appropriate here; rather, it is whether an insurer may unilaterally rescind its policy *after the happening of the events giving rise to liability*. Here, HCC did not purport to rescind until after C3 had given it notice of a potentially huge claim. The timing is critical. If an insurer rescinds before its insured incurs liability, any dispute is confined to the parties to the insurance contract; no one else is

8

directly affected. If, however, the insurer does not invoke its alleged right to rescind until after the insured has incurred liability to injured persons, there are public policy consequences: where the insured lacks the resources to make the injured persons whole, their injuries may go uncompensated. Washington has a strong public policy in favor of protecting third-party claimants against the efforts of insurers to diminish coverage once liability has arisen. *See Pope Res. LP v. Certain Underwriters at Lloyd's, London*, 494 P.3d 1076, 1098 (Was. App. 2021) (third parties entitled to protection against untimely rescission because, once liability attaches, their rights are "vested"). In Washington, these public-policy considerations are sufficiently compelling to "materially outweigh" the interests of other states and to call for the application of Washington law. *Id.* at 1091.

The final *Runyon* factor is "whether there is an alternative remedy which is better or more effective." 53 F.3d at 1169. In *Runyon*, the "more effective alternative remedy" was the competing state court where "the same issues were involved." *Id.* The same is true here.

HCC makes two additional arguments that do not track the *Runyon* factors. First, relying on a state court case that obviously has nothing to do with *Brillhart*, *Runyon*, or any other aspect of federal procedure, it argues this action should have preference because it is earlier filed. This is wrong. Scores of federal cases hold that the preference is given to an earlier filed action only where both cases are in *federal* court.[3] Moreover, even where it would otherwise apply, the so-

---

[3] *See Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) ("the first-to-file rule 'permits,' but does not require, a federal district court to abstain from exercising its jurisdiction in deference to a first-filed case in a *different federal district court*") (emphasis supplied) (citing and paraphrasing *Buzas Baseball, Inc. v. Bd. of Regents of the Univ. Sys. of Ga.*, 1999 WL 682883, at *2 (10th Cir. 1999)); *Quint v. Vail Resorts, Inc.*, No. 1-20-CV-03569-DDD-GPG, 2022 WL 2753570, at *4 (D. Colo. June 27, 2022) ("[t]he first-to-file rule . . . . is specific to federal district courts, and Plaintiffs are focused on a state case").

9

called first-filed rule is not a rule – it is permissive, not mandatory. *Wakaya Perfection*, *supra,* 910 F.3d at 1124 (10th Cir. 2018). Finally, priority of filing carries no weight when the earlier filed action is a declaratory judgment action filed in anticipation of another action elsewhere. *See Great-West*, *supra,* 2022 WL 2287535, at *3 (D. Colo. June 15, 2022).

HCC's second argument is that this case is different from the Washington Coverage Action because the latter involves malpractice claims. But there is no reason why the presence of additional claims would complicate or delay the resolution of the dispute at issue here, and to the extent HCC does believe so, HCC could always seek bifurcation with the Washington court.

## CONCLUSION

For the reasons set forth above, C3 asks the Court to dismiss or stay this action in favor of the competing Washington Coverage Action.

Dated this 27th day of September, 2023.

        Respectfully submitted,

        LEVIN SITCOFF WANEKA PC

        *s/Kerri J. Anderson*
        Bradley A. Levin
        Kerri J. Anderson
        455 N. Sherman Street, Ste. 490
        Denver, Colorado 80203
        Telephone: (303) 575-9390
        Fax: (303) 575-9385
        brad@lsw-legal.com
        kerri@lsw-legal.com

        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of September 2023, a true and correct copy of the foregoing **DEFENDANT C3 MANUFACTURING LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR STAY UNDER THE *BRILLHART* ABSTENTION DOCTRINE** was electronically filed with the Clerk of the Court using the CM/ECF system and served on the following by the method indicated which will send notification of said filing to the following email addresses:

Jennifer C. Arnett
Arnett Litigation, LLC
1630 30th Street, Ste. A-184
Boulder, CO 80301
jennifer@arnettlawyers.com
*Attorneys for Houston Casualty Company*

                                              *s/ Nicole R. Peterson*
                                              Nicole R. Peterson