IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 23-cv-01705-RMR-NRN

HOUSTON CASUALTY COMPANY,

    Plaintiff,

v.

C3 MANUFACTURING LLC, and
GREAT AMERICAN E & S INSURANCE COMPANY, as an assignee of C3 MANUFACTURING LLC,

    Defendants.

## ORDER

This matter is before the Court on two Recommendations: (1) the Recommendation of United States Magistrate Judge N. Reid Neureiter, ECF No. 46, entered November 21, 2023, addressing Defendant C3 Manufacturing, LLC's ("C3") Motion to Dismiss or Stay Under the *Brillhart* Abstention Doctrine, ECF No. 28, and (2) the Recommendation of United States Magistrate Judge N. Reid Neureiter, ECF No. 96, entered April 2, 2024, addressing Defendant Great American E & S Insurance Company's ("Great American") Motion to Dismiss Second Amended Complaint, ECF No. 67. Magistrate Judge Neureiter recommends that both Motions to Dismiss be denied.

C3 timely filed an Objection to the Recommendation denying its Motion to Dismiss. ECF No. 49. HCC filed a Response to C3's Objection. ECF No. 52. Great American also timely filed an Objection to the Recommendation denying its Motion to Dismiss. ECF No.

97. HCC filed a Response to Great American's Objection. ECF No. 98. For the reasons stated below, the Court respectfully SUSTAINS C3's Objection, ECF No. 49; SUSTAINS Great American's Objection, ECF No. 97; and respectfully REJECTS the Recommendations, ECF Nos. 46 and 96.

## I.   LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations.  28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).  In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  When no proper objection is

filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."[1]  Fed. R. Civ. P. 72(b) advisory committee's note to 1993 amendment.

## II. BACKGROUND

The factual background of this case is more fully laid out in the Recommendations. *See* ECF No. 46 at 2-5; ECF No. 96 at 2-5. The factual background is incorporated herein by reference and is restated only to the extent necessary to address the objections.

C3 is a Colorado company that makes an automatic belay device for rock climbing. In May 2021, C3 was facing a multi-million-dollar lawsuit in Washington state brought by a rock climber who was injured while using one of C3's belay devices (the "Washington Personal Injury Lawsuit"). At the time of the lawsuit, C3 was insured under two insurance policies covering commercial general liability and products liability claims. The first policy was issued by Great American, and provided C3 with primary commercial general liability insurance, subject to a $1,000,000 per occurrence limit (the "Great American Policy"). The second policy was an excess umbrella policy issued by HCC, which provided $4,000,000 of umbrella coverage over the Great American Policy (the "HCC Excess Policy").

After C3 was sued in the Washington Personal Injury Lawsuit, Great American notified HCC. While investigating the lawsuit, HCC learned that C3 had allegedly recalled and/or considered recalling products between 2016 and 2018. But in August 2018, when

---

[1] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review, Fed. R. Civ. P. 72(b).  *See, e.g.*, *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 249 n.1 (D. Colo. 2014) (Daniel, J.).

3

C3 filled out the application for the HCC Excess Policy, it answered "No" to the question "Has the applicant ever recalled or is it considering recalling a product?" HCC represents that if C3 had answered "Yes" to that question, it would not have issued the HCC Excess Policy. Thus, in January 2023, after learning that C3 had apparently falsely answered the question on the application, HCC purported to rescind the HCC Excess Policy on the basis of fraud. C3 objected to the rescission. However, neither plaintiff's counsel in the Washington Personal Injury Lawsuit nor Great American learned of HCC's purported rescission until trial was imminent. As a result of the late disclosure, the trial court in the Washington Personal Injury Action imposed sanctions and granted plaintiff's request to instruct the jury that they could draw negative inferences from the discovery misconduct.

On June 26, 2023—the night before trial—C3 demanded that HCC tender the $4,000,000 limit of its policy to help settle the Washington Personal Injury Lawsuit. HCC reiterated its rescission and declined to pay. The Washington Personal Injury Lawsuit then settled, with Great American paying most (or all) of the settlement payment. In connection with the settlement, on August 4, 2023, C3 assigned certain rights under the allegedly rescinded HCC Excess Policy to Great American.

On July 5, 2023, HCC filed this action seeking a declaration that the HCC Excess Policy is rescinded on the basis of fraud, and that the policy is rescinded *ab initio*, with the result that HCC has no duties or obligations to C3 or Great American under the rescinded HCC Excess Policy. ECF No. 47.

Two months after HCC filed the instant declaratory action, Great American filed a lawsuit in Washington State Court (the "Washington State Action") against HCC, two law

firms, and two individual lawyers. In the Washington State Action, Great American asserts that certain legal missteps by individual lawyers and law firms in the Washington Personal Injury Lawsuit, combined with HCC's unlawful rescission, put Great American in the position of having to settle the personal injury case for an amount far in excess of Great American's own policy limits. Great American brings claims against HCC for breach of contract, statutory unfair insurance conduct, violation of Washington State's Consumer Protection Act, and equitable indemnity/subrogation. Great American also brings claims of legal malpractice and breach of fiduciary duty against the two law firms and two individual lawyers. In that action, HCC has pleaded affirmative defenses based on the lawyers' alleged malpractice. C3 is not a party to the Washington Malpractice/Insurance Lawsuit, but represents that it is amenable to joining the lawsuit.

C3 previously moved to dismiss or stay this case based on the *Colorado River* abstention. ECF No. 17. That motion was denied. ECF No. 42. Given the filing of the Washington State Action, C3 then moved to dismiss or stay this action based on the *Brillhart* abstention doctrine. ECF No. 28.

Thereafter, HCC filed a Second Amended Complaint, adding Great American, as assignee of C3, as a defendant. ECF No. 47. Great American then moved to dismiss this action, arguing that (1) there is no specific personal jurisdiction over it in Colorado; and (2) the Court should abstain in favor of the Washington state court action. ECF No. 67.

On November 21, 2023, Magistrate Judge Neureiter recommended denying C3's motion to dismiss. ECF No. 46. C3 objected to the Recommendation and HCC responded to the objection. ECF Nos. 49, 52. On April 2, 2024, Magistrate Judge Neureiter

recommended denying Great American's motion to dismiss, for largely the same reasons he recommended denying C3's motion to dismiss. ECF No. 96. Great American objected to the Recommendation and HCC responded to the objection. ECF Nos. 97, 98.

### III.     ANALYSIS

Both C3 and Great American ask this Court to exercise its discretion and abstain from hearing HCC's claim for declaratory relief in favor of the parallel litigation in the Washington State Action. Magistrate Judge Neureiter recommends denying both motions to dismiss, reasoning that the relevant factors weigh against abstention.[2] C3 and Great American both object to the Recommendations on the grounds that that Magistrate Judge Neureiter erred in his application of the relevant factors and in his conclusion that the factors weigh against abstention. Great American also argues the Magistrate Judge erred in finding that the Court has personal jurisdiction over it.

#### A.     The Declaratory Judgment Act and *Brillhart/Mhoon* Abstention Doctrine

District courts have the discretionary authority to adjudicate claims for declaratory judgment pursuant to the Declaratory Judgment Act, which provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).

---

[2] Magistrate Judge Neureiter also reasoned that, under the law-of-the-case doctrine, he has already decided that *Brillhart* abstention is improper in his Recommendation on C3's second motion to dismiss, and did not find grounds to revisit the issue as to Great American's motion to dismiss. However, [t]he law of the case rule applies only when there has been a final decision." *Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986). This Court has not made a final decision on C3's second motion to dismiss and therefore the law-of-the-case doctrine does not apply here.

The use of 'may' vests district courts with "unique and substantial discretion" to hear actions for declaratory judgment even if those actions are otherwise justiciable. *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002); *see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) ("[T]he district court is not obliged to entertain every justiciable declaratory claim brought before it.").

When a court is faced with a declaratory judgment action regarding an issue that is also the subject of a parallel proceeding, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). A court's decision on whether to exercise its discretion should guided by the factors outlined in *Brillhart*, as well as other cases that "might shed light on additional factors . . . ." *Id.*

When deciding whether to exercise its discretion to hear a declaratory judgment action, the Tenth Circuit has explained that a court should be guided by the reasoning articulated in *Brillhart* and the five factors articulated in *Mhoon*. *See City of Las Cruces*, 289 F.3d at 1180-83. *Brillhart* instructs that a district court "should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. To determine if a case is "better

settled" in the state court action, district courts should consider the scope of the pending state action and the nature of defenses open there; whether the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding; whether necessary parties have been joined, and whether such parties are amenable to process in that proceeding. *Id.*

In *Mhoon*, the Tenth Circuit provided additional guidance by enumerating five factors for district courts to consider in evaluating whether to exercise jurisdiction over declaratory actions:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (citations omitted). Upon consideration of the *Brillhart/Mhoon* factors, the Court finds that this case is better settled in the Washington State Action. Although the Court reaches the opposite conclusion of the Magistrate Judge by deciding to abstain from this action, the Court recognizes that Magistrate Judge Neureiter properly considered the *Brillhart/Mhoon* factors and finds no fundamental error with his recommendations. Nonetheless, the decision on whether to exercise jurisdiction is discretionary, and this Court finds it appropriate to exercise its discretion and abstain from hearing this declaratory action for the reasons described below.

### B.   Analysis of *Brillhart/Mhoon* Factors

In the introduction of its Second Amended Complaint, HCC "seeks a declaration confirming that its rescission, on the basis of fraud, of the excess policy of insurance issued to C3, is effective and that the policy is rescinded *ab initio*, with the result that HCC has no duties or obligations to C3 or its assignee Great American <u>under</u> the rescinded policy." ECF No. 47 at 1 (emphasis added). In its Prayer for Relief, however, HCC requests "[a] declaration that the Excess Policy that had been issued to C3 Manufacturing, LLC, policy number H18PX50121-00, is rescinded *ab initio* and that HCC has no duties or obligations <u>with respect to</u> the rescinded Excess Policy." *Id.* at 9 (emphasis added). Meanwhile, in the parallel Washington State Action, Great American alleges that even if the HCC had grounds to rescind, the manner in which HCC chose to rescind was improper, in bad faith, and prejudicial to third parties. Great American alleges that HCC's improper actions with respect to the rescission, together with the malpractice of C3's lawyers in the Washington Personal Injury Lawsuit, forced Great American to settle the Washington Personal Injury Lawsuit for an amount far in excess of its policy limits, resulting in damages to Great American.

First, the Court finds that the first and second *Mhoon* factors weigh against this Court exercising jurisdiction. There can be little doubt that the Washington State Action will resolve all issues between the relevant parties related to HCC's purported rescission and Great American's settlement of the Washington Personal Injury Lawsuit, while this declaratory action will leave many of the related issues unresolved. *See Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 (10th Cir.

9

2012) ("[C]ourts have resolved the first two *Mhoon* factors against exercising jurisdiction when the declaratory judgment action would leave unresolved other, related issues in parallel state court proceedings.") (citation omitted). Adjudicating the issue of the validity of HCC's purported rescission would be duplicative, as the same issue is present in the Washington State Action. Although the Washington state court is presently declining to address the rescission issue because it is pending before this Court, the Court finds that the parties would be better served by having one court—the Washington state court—clarify all the legal relations at issue, many of which are overlapping and involve substantial factual inquiries. *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195 (D. Colo. 2018) ("It is also not clear that a separate adjudication of plaintiff's claim for declaratory relief would serve any useful purpose, given that the question of whether plaintiff fulfilled its duties under the insurance contract will necessarily be addressed in the Court's resolution of [the substantive claims before it]."). Indeed, the Washington state court's decision to avoid the rescission issue while the rest of the Washington State Action goes forward demonstrates the judicial inefficiency of this action proceeding in two forums.

Next, given the overlapping issues, the Court finds that the use of this declaratory action would increase friction between our federal and state courts. *See Mhoon*, 31 F.3d at 983. As noted above, HCC uses different language in its introduction versus in its prayer for relief as to the declaration it is seeking. In the introduction, HCC asks for a declaration that "HCC has no duties or obligations to C3 or its assignee Great American <u>under</u> the rescinded policy." ECF No. 47 at 1 (emphasis added). In its prayer for relief,

however, HCC asks for a declaration that "HCC has no duties or obligations <u>with respect to</u> the rescinded Excess Policy." *Id.* at 9 (emphasis added). While the plain meaning of "under" suggests information directly flowing from or under the policy, the language "with respect to" is broader. "In ordinary usage, 'respecting' means 'concerning; about; regarding; in regard to; relating to.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 710 (2018). In the legal context, use of the word "respecting" "generally has a broadening effect, ensuring that a provision's scope covers not only its subject but also matters relating to that subject." *Id.* (citation omitted). Indeed, the Supreme Court "has typically read the phrase 'related to' – one of respecting's meanings – expansively." *Id.* (citation omitted).

Thus, by using the language "with respect to," HCC's request for relief is broader than simply determining whether HCC had grounds to rescind the HCC Excess Policy. Determining HCC's duties or obligations "with respect to" the HCC Excess Policy opens the door for this Court to decide all issues related to the purported rescission, including the propriety of the timing and manner of HCC's purported rescission, HCC's interaction with C3's lawyers, and other questions that are squarely at issue in the Washington State Action. Resolving these issues would likely require the Court to determine whether HCC complied with its obligations under the law, which may in turn require an analysis of whether Washington law applies.

This Court's analysis would also require a review and determination of the meaning of the plain language of both policies and a factual determination of whether certain damages would be covered. For example, the HCC Excess Policy provides that excess

coverage is only provided to the same extent as the underlying policy (the Great American Policy). *See* ECF No. 1-2 at 1, 6. Thus, the Court would need to review and determine what the underlying policy (the Great American Policy) covered and whether the damages alleged in the underlying litigation were covered. Again, this entails a review of matters that are already at issue in the Washington State Action. *See Addison Ins. Co. v. Rippy*, No. CIVA.08-CV-00237-PAB-MJW, 2009 WL 723322, at *5 (D. Colo. Mar. 18, 2009) ("[A] federal district court should stay or dismiss an anticipatory declaratory judgment action which requires the court to make a factual finding that likely will be made, and will be material, in the underlying state court action.") (citing *Mhoon*, 31 F.3d at 984).

And even if the Court only resolved the narrow issue of whether HCC had grounds to rescind, that would not settle the controversy because the Washington State Action addresses the broader question of whether, even if HCC had grounds to rescind, its rescission was procedurally improper, prejudicial, and/or carried out in bad faith. Great American's claims do not necessarily depend on the validity of the rescission itself, and therefore such claims would go forward irrespective of the Court's ruling here. But one would have to assume if this Court were to enter the declaration as requested by HCC, HCC would then use that declaration to assert no further actions could be brought against it in Washington with respect to the rescinded policy. This, too, would cause friction with the Washington state court.

The Court finds that the third *Mhoon* factor—whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*—is neutral at best. Magistrate Judge Neureiter found that "if there has

been any 'procedural fencing,' it has been conducted by C3." ECF No. 46 at 10. C3 and Great American disagree and claim that HCC only filed the instant action because it anticipated a lawsuit being filed against it in Washington state. There is clearly much animosity between the parties and attempts at gamesmanship made by both sides. Thus, the Court does not find that this factor weighs heavily in either direction.

Finally, the fifth *Mhoon* factor asks "whether there is an alternative remedy which is better or more effective." *Mhoon*, 31 F.3d at 983. Analysis of this factor typically hinges on the question of whether there is another ongoing proceeding that could more effectively address the issues presented in the declaratory action claim. *Esurance Prop. & Cas. Ins. Co. v. Palm*, 2021 WL 4477686, at *7 (D. Colo. Sept. 30, 2021) (finding an "alternate remedy which is better or more effective" where parties interests can be addressed in a parallel proceeding); *Ark. River Power Auth. v. City Of Raton, N.M.*, 2008 WL 681471, at *2 (D. Colo. Mar. 7, 2008) (reasoning that fifth *Mhoon* factor weighs in favor of granting motion to stay when state action provides a better opportunity for a complete and efficient resolution of the parties' dispute.)

Given the many overlapping factual and legal disputes, the Court finds that the Washington State Action provides a better opportunity for a complete and efficient resolution of the parties' dispute. As described above, only the Washington State Action can address all relevant issues among all relevant parties. For example, Great American alleges it was damaged by the acts of HCC and C3's Washington lawyers. And in the Washington State Action, HCC has pleaded affirmative defenses based on the actions of the lawyers. This Court likely does not have jurisdiction over C3's Washington lawyers

and potentially does not even have personal jurisdiction over Great American. But the Court need not reach these jurisdictional issues, because the Washington State Action is more comprehensive, addresses all of the issues between the parties, and has all of the relevant parties in interest before it (including C3 if necessary, because C3 has conceded to jurisdiction in the Washington State Action). *See First Mercury Ins. Co. v. MRCO, Inc.*, No. CV 12-1057 JP/CEG, 2013 WL 12170302, at *5 (D.N.M. Mar. 21, 2013) (noting that although party to the declaratory action was not a party to the parallel suit, it "could intervene in the state court case to ensure its claims are heard in that forum").

For all of these reasons, the Court will exercise its discretion to abstain from hearing this declaratory judgment action and administratively close this matter pending the resolution of issues in the Washington State Action. To the extent that any party determines the issue in this case has not been resolved in the Washington State Action, such party may move to reopen this case.

## IV.   CONCLUSION

For the reasons stated above, it is

ORDERED that C3's Objection, ECF No. 52, is SUSTAINED; it is

FURTHER ORDERED that the Recommendation, ECF No. 46, is respectfully REJECTED; it is

FURTHER ORDERED that Great American's Objection, ECF No. 97, is SUSTAINED; it is

FURTHER ORDERED that the Recommendation, ECF No. 96, is respectfully REJECTED; it is

14

FURTHER ORDERED that C3's Motion to Dismiss or Stay Under the *Brillhart* Abstention Doctrine, ECF No. 28, is GRANTED; it is

FURTHER ORDERED, that Great American's Motion to Dismiss Second Amended Complaint, ECF No. 67, is GRANTED; it is

FURTHER ORDERED, that Great American's Motion for Leave to File a Reply, ECF No. 99, is DENIED AS MOOT; it is

FURTHER ORDERED, that HCC's Motion for Leave to File an Early Rule 56 Motion for Summary Judgment Against C3, ECF No. 62, is DENIED AS MOOT; it is

FURTHER ORDERED, that the Clerk of Court administratively close this matter subject to reopening for good cause pursuant to D.C.COLO.LCivR. 41.2.

DATED:  May 6, 2024

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge