# EXHIBIT 4

1

2

3

4

5

6

7

8

9

The Honorable Judge Mark Larrañaga
Hearing Date: Friday, April 19, 2024 at 10:15am
*With Oral Argument*
Moving Party

IN THE SUPERIOR COURT OF WASHINGTON STATE
FOR KING COUNTY

10

11

12

13

14

15

16

17

18

19

20

GREAT AMERICAN E & S INSURANCE
COMPANY, INDIVIDUALLY, AND AS
ASSIGNEE OF CLAIMS FROM ITS
INSURED C3 MANUFACTURING LLC, A
COLORADO COMPANY

                            Plaintiff,

     vs.

HOUSTON CASUALTY INSURANCE
COMPANY, GORDON REES SCULLY
MANSUKHANI, LLP, SINARS
SLOWIKOWSKI TOMASAKA, LLC, J.
SCOTT WOOD and CHRISTOPHER
FURMAN,

                    Defendants.

Case No. 23-2-16817-8 SEA

**MOTION OF PLAINTIFF GREAT
AMERICAN E & S INSURANCE
COMPANY FOR PARTIAL SUMMARY
JUDGMENT AGAINST DEFENDANT
HOUSTON CASUALTY COMPANY**

21

22

23

24

25

## I.    RELIEF REQUESTED

    Great American E & S Insurance Company ("Great American") hereby submits this motion for partial summary judgment against defendant Houston Casualty Company ("HCC") on HCC's affirmative defenses 11, 13, and 14.

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 1

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1    HCC's affirmative defenses fail as a matter of law, and the Court should so rule on

2    summary judgment.  Specifically, Great American respectfully requests the Court to grant

3    partial summary judgment against defendant HCC on HCC's affirmative defenses 11, 13, and

4    14.

5                **II.**      **INTRODUCTION AND STATEMENT OF ISSUES**

6    C3 Manufacturing LLC ("C3") manufactures climbing equipment.  For the October 18,

7    2018 to October 18, 2019 policy period, C3 obtained $1 million in primary liability insurance

8    from Great American and $4 million in excess liability insurance from HCC.  On August 1,

9    2019, Michael Vandivere, a climber using C3's equipment, was seriously injured in a fall at a

10   Seattle climbing facility.  He and members of his family sued C3 and Vertical World, the

11   climbing facility, on October 16, 2019, seeking millions in damages.  Great American, as the

12   primary insurer, defended C3; HCC, as the excess insurer, was placed on notice in July 2022.

13   In October 2022, the Court set the case for trial for June 12, 2023, warning the parties that the

14   trial date was firm.

15   HCC asserts that, in September or October 2022, some eight or nine months **before** the

16   scheduled trial, it learned of what it believed to be a misrepresentation in C3's insurance

17   application, the same application provided to Great American.  HCC made this purported

18   discovery after reviewing materials provided to it by August 8, 2022.  On October 4, 2022,

19   HCC sent C3 a letter alleging that C3's owner lied on the application because he denied the

20   existence of product recalls, when, according to HCC, there was at least one in 2016 and one in

21   2018.  HCC also asked for additional information.  C3, through counsel, provided that

22   information on December 1, 2022.  HCC concluded that the information gave it grounds to

23   rescind its policy.

24   On January 26, 2023, HCC issued separate notices of rescission (rebating the premium

25   charge without interest or disgorgement of profits) and cancellation.  C3 objected and declined

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 2

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1  to accept return of the premium.  The underlying case proceeded as scheduled, without

2  disclosure of HCC's purported rescission/cancellation, until May 22, 2023, when just three

3  weeks before the scheduled trial date, C3's lawyers informed the parties of HCC's purported

4  rescission.

5       The Vandiveres and Vertical World, both of whom understood from the insurance

6  disclosures in the case that C3 had $5 million in coverage to cover C3's liability and plotted

7  their litigation course accordingly, were blindsided.  Now, only three weeks before the

8  scheduled trial, they were told there was only $1 million available, if HCC could rescind.  In

9  response, they moved the Court for heavy sanctions, including the costs of litigating the case

10  from the date HCC purported to rescind and a negative inference instruction at trial.  The Court

11  granted those sanctions, effectively guaranteeing a punishing verdict against C3, which the

12  Vandiveres asserted Great American would have to pay because it retained the defense counsel

13  who failed to timely disclose HCC's purported rescission.

14       Despite knowing all of this – that C3 disputed HCC's purported rescission, that the

15  court levied sanctions because C3 failed to disclose the purported rescission, and that C3 was

16  facing the prospect of trial before an angry judge – HCC did nothing to ask a court to decide

17  whether it could lawfully rescind until July 5, 2023.  That was weeks after trial commenced

18  and nine days after Great American was forced to agree to fund the $5 million settlement,

19  subject to rights to pursue HCC as assignee or subrogee or otherwise, to avoid the potential for

20  a much higher judgment if the case went to verdict.

21       On September 5, 2023, Great American, individually and as assignee and subrogee,

22  filed suit against HCC and the lawyers and law firms that drove up the Vandiveres' settlement

23  demands and caused the trial court to award sanctions against C3.  This motion only concerns

24  Great American's claims against HCC; it does not concern claims against the lawyers or law

25  firms.  Specifically, this motion raises the issue of whether, under Washington law, an insurer

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 3

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1  may unilaterally and without court approval effect a rescission of a third-party liability

2  insurance policy when (i) the insured disputes the insurer's right to rescind and (ii) the

3  underlying bodily injury that would otherwise be covered has already occurred.

4       In its complaint, Great American pleads breach and bad faith claims against HCC, as

5  well as an equitable indemnity claim.  The first two claims are derivative of C3's; the latter is

6  not.  In response, HCC denied the counts pleaded and raised various affirmative defenses.  The

7  common thread through all of these denials and affirmative defenses is that HCC contends that

8  it was permitted to unilaterally rescind its policy, as and when it did, because C3 allegedly lied

9  on its application about product recalls.  This defense is shown perhaps most clearly through

10  the following affirmative defenses on which Great American specifically moves:

11          11. The Complaint alleges claims that are barred, in whole or in part,
            because Defendant's [HCC's] alleged conduct was justified.
12          13. Under the common law, HCC was permitted to rescind the HCC
            Policy based on the misrepresentations of C3 and properly did so, and as a
13          result plaintiffs' claims fail.
            14. Under the terms of the HCC Policy, HCC was entitled to void the
14          HCC Policy as a result of the fraud and misrepresentation by C3 and did
            so, and as a result plaintiffs' claims fail.
15

16       Washington law is clear that HCC could not – and indeed did not – legally effect a

17  rescission when it issued notices styled as rescission and cancellation on January 26, 2023.

18  The legal effect of those notices was to put C3 on notice that HCC believed it had grounds to

19  seek to rescind, or, as Washington courts have put it, they were offers for mutual rescission.

20  C3 had no authority to accept those offers because Mr. Vandivere was injured before HCC

21  offered to rescind, but C3 declined the offers in any event.  Under these circumstances, where

22  either the insured declines the offer to rescind or the bodily injury that would otherwise be

23  covered has already occurred, the course of action for the insurer seeking to rescind is clear:  it

24  must – not *may* but *must* – file suit within a reasonable time and ask the Court to relieve it of

25  obligations the insurer otherwise would have.  Unless and until the Court agrees with the

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 4

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA  98121-2174
(t) 206.386.5566

1  insurer, the policy is not rescinded.  HCC failed to meet its obligation to file for rescission

2  promptly, losing any right to rescind it might have had.

3         This prohibition against self-help in the face of disagreement by the insured protects not

4  only the insured but also the injured underlying claimants, whose rights under liability policies

5  vest when they are injured.  If insurers could do what HCC did – shoot first and ask questions

6  later – the losers would be injured underlying claimants where, as is often the case, the

7  insured/underlying defendant lacks the resources without insurance to pay the judgment or

8  settlement needed to resolve the case.

9                     **III.    STATEMENT OF UNDISPUTED FACTS**

10        _The Insured and Its Insurers_.  C3 is a company that manufactures an automatic belaying

11  device used in rock climbing.[1]  Great American is an insurer that issued C3 a primary general

12  liability policy with a policy limit of $1 million for policy period October 11, 2018 to October

13  11, 2019; HCC is an insurer that issued C3 an excess liability policy with a policy limit of $4

14  million for the same period. [2]

15        _The Accident and the Filing of the Underlying Lawsuit_.  On August 1, 2019, Michael

16  Vandivere, while using a belaying device manufactured by C3 at Vertical World, a climbing

17  facility in Seattle, fell about 45 feet and suffered serious injuries.[3]  On October 16, 2019, Mr.

18  Vandivere, his wife, and his minor daughter filed suit against Vertical World in Washington

19

20  _____

21  [1]      Complaint ¶ 23, _Houston Casualty Company v. C3 Manufacturing LLC, et al._, No.
   1:23-cv-1705 (July 5, 2023 D. Colo.) ECF No. 1 to the Declaration of James P. Ruggeri as

22  Exhibit 1 [hereinafter Exhibit 1].
   [2]      _See_, _e.g._, HCC's Response in Opposition to Defendant's Second Motion to Dismiss at

23  3, _Houston Casualty Company v. C3 Manufacturing LLC et al._, No. 1:23-cv-1705 (Sept. 13,
   2023 D. Colo.) ECF No. 32, to the Declaration of James P. Ruggeri as Exhibit 2 [hereinafter

24  Exhibit 2] ("Great American issued a commercial general liability insurance policy to C3, and
   HCC issued an excess policy, policy number H18PX50121-00").

25  [3]      Exhibit 1 ¶ 23.

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 5

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1    Superior Court, King County.[4]  On May 21, 2021, the Vandivere plaintiffs filed an amended

2    complaint adding C3 as a defendant.[5]

3        *The Vandivere Action and the Notice of Rescission*.  C3 tendered the Vandiveres' claims

4    to its primary insurer, Great American.  In July 2022, recognizing that the case could result in

5    an award in excess of its limits, Great American notified HCC of the case.[6]  In early August

6    2022, a representative of HCC asked Great American's claims handler for a copy of the claim

7    file, which she provided by August 8, 2022.[7]  On October 18, 2022, the *Vandivere* trial court set

8    a trial date of June 5, 2023, and stated it would grant no further continuances.[8]

9        On October 4, 2022, HCC sent C3 a letter alleging that C3's owner Ronald Naranjo

10   made a misrepresentation in the company's application for insurance for both the HCC policy

11   and the Great American policy.  HCC alleged that: (1) according to a summary of Mr.

12   Naranjo's deposition in the Vandivere action, he "discussed a May 9, 2016 product recall of

13   auto-belay devices due to a material defect"; and (2) the application did not disclose this

14   "recall" in response to a question about product recalls.[9]  HCC requested a copy of the

15   deposition transcript and other materials; C3 responded, sharply disputing that it had made a

16   misrepresentation and directing HCC to defense counsel for a copy of the transcript.[10]

17

18   _____

19   [4]   *Id.* ¶ 24.
     [5]   *Id.* ¶ 25.

20   [6]   Exhibit 1 ¶ 28.  This notice included the demand letter from the underlying plaintiffs'
     counsel, expressly seeking HCC's policy limits in their demand.

21   [7]   *See id.* ¶ 29.

22   [8]   Order Denying Defendant C3 Manufacturing, LLC's Motion to Continue Trial Date,
     *Vandivere et al v. C3 Manufacturing et al.*, No. 19-2-27385-2 SEA (May 12, 2023), attached to

23   the Declaration of Mark Johnson as Exhibit 1 [hereinafter Exhibit 3].
     [9]   Letter from Houston Casualty Company to Mr. Ron Naranjo at 2 (Oct. 4, 2022)

24   (entitled "Request for Information") attached to the Declaration of James P. Ruggeri as Exhibit
     3 [hereinafter Exhibit 4].

25   [10]   *See* Exhibit 1 ¶ 32.

     MOTION OF PLAINTIFF FOR PARTIAL                    **JOHNSON FLORA SPRANGERS PLLC**
     SUMMARY JUDGMENT AGAINST                           2001 Western Avenue, Suite 205
     DEFENDANT HOUSTON CASUALTY                          Seattle, WA   98121-2174
     COMPANY- 6                                          (t) 206.386.5566

1    HCC received a copy of the transcript on December 1, 2022,[11] and apparently

2  concluded that the transcript told the same story as the deposition summary it had cited to C3.

3  Nonetheless, HCC took no further action until January 26, 2023, when it sent both a notice of

4  rescission to C3 with a check representing the return of the policy premium and had its broker

5  send a notice of cancellation.[12]  C3's counsel responded on February 27, 2023 with a four-page

6  single-spaced letter denying that C3's request for the return of certain products constituted

7  recalls and asking HCC to acknowledge that the policy remained in force. [13]  C3 never cashed

8  HCC's check.

9    On May 11, 2023, HCC responded to a litigation update from Great American, stating

10  that it had purported to rescind the HCC Policy.[14]  In a June 7, 2023 motion hearing on the

11  *Vandivere* plaintiffs' motion for sanctions, the underlying plaintiffs described the undisclosed

12  rescission as prejudicial to them.[15]  On June 14, 2023, the *Vandivere* trial court granted the

13  plaintiffs' motion for sanctions and granted the request to enter an adverse inference against

14  C3.[16]

15    *The Settlement*.  The Vandiveres' suit settled June 26, 2023 and the trial ended.[17]

16

17

---

18  [11]    *Id.* ¶ 33.

19  [12]    *Id.* ¶¶ 39-41.

    [13]    *See* Exhibit 2 at 3.

20  [14]    *Id.* at 4.

21  [15]    Tr. of Motion Hearing, *Vandivere et al. v. C3 Manufacturing LLC et al.*, No. 19-2-27385-2 SEA (June 7, 2023) at 64, attached to the Declaration of Mark Johnson as Exhibit 2

22  [hereinafter Exhibit 5]

    [16]    Tr. of Pretrial Hearing, *Vandivere et al. v. C3 Manufacturing LLC et al.*, No. 19-2-

23  27385-2 SEA (June 14, 2023) at 14-18, attached to the Declaration of Mark Johnson as Exhibit 3 [hereinafter Exhibit 6].

24  [17]    *See* January 19, 2024 copy of Docket for *Vandivere et al v. C3 Manufacturing, et al.*, No. 19-2-27385-2 SEA at 6 (showing cessation of trial activities), attached to the Declaration

25  of Mark Johnson as Exhibit 4 [hereinafter Exhibit 7].

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 7

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1       *HCC's Colorado Lawsuit*.  On July 5, 2023, nine days after the Vandiveres' suit was

2    settled, HCC filed an action against C3 for rescission in federal court in Colorado.[18]

3       *Great American's Washington Lawsuit*.  On September 5, 2023, after the notice period

4    required under RCW 48.30.015(8)(a) to bring suit under the Insurance Fair Conduct Act, Great

5    American, individually and as assignee and subrogee, filed this action naming as defendants

6    HCC and the implicated lawyers and firms.  *See generally* Complaint.

7                        **IV.    STATEMENT OF ISSUE**

8       Whether under Washington law an insurer may unilaterally and without court approval

9    effect a rescission of a third-party liability insurance policy when (i) the insured disputes the

10    insurer's right to rescind and (ii) the underlying bodily injury that would otherwise be covered

11    has already occurred.

12                        **V.    EVIDENCE RELIED UPON**

13       Great American relies on the pleadings and records on file in this matter and submits the

14    following as evidentiary support for its motion for partial summary judgment:

15       1.    Declaration of Mark Johnson in support of Motion of Plaintiff Great American

16    E & S Insurance Company for Partial Summary Judgment Against Defendant Houston

17    Casualty Company; and

18       2.    Declaration of James P. Ruggeri in support of Motion of Plaintiff Great

19    American E & S Insurance Company for Partial Summary Judgment Against Defendant

20    Houston Casualty Company.

21

22

23

24

25    _____
[18]     *See generally* Exhibit 1.

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 8

## VI.    LEGAL AUTHORITY AND ARGUMENT

### I.    WASHINGTON LAW APPLIES TO THE ISSUES RAISED HERE.

The Court of Appeals has recently summarized the principles governing choice of law in Washington:

> Washington applies section 188 of the Restatement (Second) of Conflict of Laws (Am. Law Inst. 1971) when an actual conflict exists and the parties have not contracted for a choice of law provision. Under section 188, subsection (2), the "most significant relationship test," a court will apply "[t]he local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." In determining which state has the most significant relationship to the transaction, the factors to be considered are "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."

*Pope Res. LP v. Certain Underwriters at Lloyd's, London*, 19 Wash. App. 2d 113, 125, 494 P.3d 1076, 1084 (2021) ("*Pope Resources*"). Moreover, the section 188 factors apply and are to be evaluated in conjunction with the principles set forth in section 6 of the restatement, which underlie all choice of law provisions. *Id.* at 129, 1086. These principles include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* Washington "weigh[s] the contacts with potentially interested states under the circumstances and in the context of relevant policy considerations to determine which state's

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 9

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA 98121-2174
(t) 206.386.5566

1    law applies." *Id.*[19]

2          The issue raised by this motion is whether and if so how an insurer may seek rescission

3    under a liability insurance policy covering the injuries of a Washington citizen injured in

4    Washington.  On this issue, Washington indisputably has the dominant interest.  Under

5    Washington law, insurance is not a purely private, contractual matter between insurer and

6    insured; it affects the public interest generally, including the interests of third parties.  This is

7    made explicit in one of the introductory sections of the Insurance Code: "The business of

8    insurance is one affected by the public interest, requiring that all persons be actuated by good

9    faith, abstain from deception, and practice honesty and equity in all insurance matters."  RCW

10   § 48.01.030.

11   In order to protect the public interest, and not just the private interests of insurers and insureds,

12   the Insurance Code has an extremely broad reach:  "All insurance and insurance transactions in

13   this state, *or affecting subjects located wholly or in part or to be performed within this state,*

14   *and all persons having to do therewith* are governed by this code."  RCW § 48.01.020

15   (emphasis added).  Accordingly, the Code governs not only insurance transactions entered in

16   Washington but also insurance transactions outside of Washington affecting people in

17   Washington or acts to be performed in Washington.  This case affected numerous "subjects" in

18   Washington:  the insured C3 does business in this state, the Vandivere plaintiffs were injured

19   in this state, HCC's policy was in relevant part to be performed in this state, and HCC's

20   conduct disrupted the Vandivere litigation in this state.  Moreover, Washington's concern for

21   the public interest, and for third parties in particular, is manifested in another statute, highly

22

23   [19]     A court need not apply the same state's law to every issue in a case.  *See FutureSelect*
24   *Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wash. App. 840, 857 n.15, 309 P.3d
     555 (2013) ("different issues in a single case arising out of a common nucleus of facts may be
25   decided according to the substantive law of different states," sometimes referred to as
     "depeçage").

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 10

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1  relevant here and discussed in more detail below, that prohibits an insurer and insured from

2  cancelling or otherwise agreeing to annul a liability policy after the occurrence of any injury

3  giving rise to potential liability for the insured.  RCW § 48.18.320.

4        These statutes show that the Insurance Code governs wherever a liability insurance case

5  affects persons injured in Washington or other third parties in Washington.  Here, it is obvious

6  that Washington has a paramount and overriding interest in applying its law to the procedure

7  an insurer must follow to rescind an insurance policy after Washington citizens have been

8  injured in Washington.  *See, e.g., Canron, Inc. v. Fed. Ins. Co.*, 82 Wash. App. 480, 494 (1996)

9  ("Washington has a paramount interest in the health and safety of its people. . . . The existence

10  or absence of insurance proceeds can determine whether or not a [harm] is remediated.

11  Washington, therefore, has a significant interest in [the] insurance coverage.").  In *Pope*

12  *Resources*, which concerned a similar issue of post-loss rescission, numerous states had some

13  involvement with settlement agreements purporting to rescind insurance policies, but the court

14  chose to apply Washington law to the question of the effect of purported rescissions, in large

15  part because the third-party interests were those of residents of Washington.

16        HCC takes the position that, because C3 itself is a citizen of Colorado, Colorado law

17  applies to the issue of whether C3 made a misrepresentation giving rise to a right of rescission.

18  Great American disagrees but that position is not at issue in this motion.  The issue here is not

19  whether HCC could have rescinded had it followed the proper procedure for doing so.  The

20  issue is whether an insurer may, after a covered loss has occurred, attempt to rescind

21  unilaterally its insurance policy without first obtaining court approval.  Washington law

22  controls that issue because it implicates most significantly the interests of third-parties resident

23  in Washington, *i.e.*, underlying plaintiffs who were injured in Washington.

24

25

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 11

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA  98121-2174
(t) 206.386.5566

1   **II.      AS A MATTER OF LAW, HCC'S PURPORTED RESCISSION WAS**
2   **UNTIMELY AND IMPROPER.**

3   According to HCC, by sending C3 a notice of rescission on January 26, 2023, HCC
4   unilaterally relieved itself of its coverage obligations.  HCC contends that, after an exchange of
5   letters between HCC and C3, in which HCC asserted and C3 denied that C3 had made a
6   misrepresentation in its policy application, "[i]t seemed the rescission was a done deal and that
7   HCC had no further involvement in the Vandivere action."[20]  But HCC's reliance on its
8   unilateral notice of rescission is legally baseless because the notice was without legal effect.  In
9   order to obtain rescission, HCC was obligated to file an action in court promptly, which it did
10  not do.

11  **A.      Under Washington Law, Only A Court Can Rescind an Insurance Policy**
12  **After a Loss.**

13  Under Washington law, "[t]o rescind a contract is to declare it void in its inception and
14  to put an end to it as though it never were."  *GMB Enterprises, Inc. v. B-3 Enterprises, Inc.*, 39
15  Wash. App. 678, 687, 695 P.2d 145, 150 (1985).  In Washington, the procedure to be followed
16  for a party seeking to rescind is well established.

17  "Where a party desires to rescind upon the ground of mistake or fraud, he must, upon
18  the discovery of the facts, at once announce his purpose and adhere to it."  *Brown v. Van Tuyl*,
19  40 Wash. 2d 364, 367, 242 P.2d 1021, 1023 (1952) (quoting *Coovert v. Ingwersen*, 37 Wash.2d
20  797, 803, 226 P.2d 187, 190 (1951)).  Typically, the party seeking rescission announces its
21  purpose by sending a notice.  But the notice does not accomplish rescission.  Instead, it is
22  merely an offer:  "[A] notice of rescission . . . is regarded as an offer for mutual rescission by
23  agreement of the parties.  An offer to rescind a contract must be accepted before the contract

24

25  [20]    Exhibit 2 at 4.

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 12

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

can be considered terminated." *Bayley v. Lewis*, 39 Wash. 2d 464, 469–70, 236 P.2d 350, 353 (1951).  Absent acceptance of the offer, there is no rescission unless and until the party seeking to rescind has obtained confirmation of the rescission by a court.  *Id.*  In *Main v. W. Loan & Bldg. Co.*, 167 Wash. 1, 8 P.2d 281 (1932), the Supreme Court rejected the argument that a party can simply rescind unilaterally and then file an action at law to recover its damages.  Instead, it must file a civil action and it must do so within a reasonable time:

> The appellant says . . . that it was not necessary to bring an action to rescind the contract because he had already rescinded it by notice and moving out on account of the fraud which he claimed had been practiced upon him . . . .  **But one party to a contract, while he may give notice of his election to rescind, cannot rescind the contract over the objection of the other party** and recover the payments made thereon in an action at law.  **After having given notice of election to rescind, it is necessary that an action be brought for that purpose within a reasonable time, or the right to rescind, if one exists, will be lost.**  Whether the contract should be rescinded, when a controversy such as this arises, is a matter for a court of equity to determine.

167 Wash. At 5, 8 P.2d at 282-83 (emphasis in bold added).  *See also Higson v. Hughes*, 72 Wash. 362, 363–64, 130 P. 478, 479 (1913) ("The burden of acting and acting promptly is on the one asserting the right to rescind.  To act only after the lapse of time and upon suit to recover the purchase price, nothing appearing to excuse the delay, will bar the right to rescind.").[21]

What this means is that, where the insured disputes rescission, until a court approves the rescission, *the contract remains in effect and the party seeking rescission remains obligated to perform*.  Courts elsewhere have recognized this principle in the specific context of the

---

[21] Of course, if the insured promptly files suit seeking a declaration of the insurer's right to rescind, then the insurer may have no need to do so.  That was the situation in *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F.Supp.2d 988 (W.D. Wash. 2004), where underlying shareholder suits were filed in September 2002, the insurer issued a notice of rescission three months later, December 6, while those suits were in their infancy, and the insured filed suit on the insurer's right to rescind twenty days after that, December 26.

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 13

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

1   rescission of an insurance policy.  *See, e.g.*, *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 2 Misc. 3d

2   1006(A), 784 N.Y.S.2d 920 (Sup. Ct. 2004) ("until Federal's rescission claims are litigated in

3   its favor and the Policies are declared void *ab initio*, they remain in effect and bind the

4   parties"; collecting cases).

5          Moreover, Washington law is so wary of rescission that it prohibits an insurer from

6   effecting a rescission of a third-party liability policy even with the insured's consent where a

7   third party already has suffered a loss covered by that policy.  Third-party liability policies,

8   such as HCC's, insure against liability and therefore ultimately protect not only the insured but

9   also injured third parties.  *See Mulcahy v. Farmers Ins. Co. of Washington*, 152 Wash. 2d 92,

10  94 n.1, 95 P.3d 313, 315 n.1 (2004) ("third party benefits, such as those provided under

11  liability coverage, are paid to someone other than the insured").  For this reason, Washington

12  courts have recognized that an injured third party has rights under a liability policy that vest at

13  the time of injury.  *See Pope Resources*, 19 Wash. App. at 124, 494 P.3d at 1084 ("Where the

14  contract of insurance provides for liability to third persons, the insurer and the insured cannot

15  terminate such a contract by their voluntary action to the prejudice of a claimant's rights which

16  have already vested.") (quoting 2 COUCH ON INS. § 31:49).  This principle is codified in

17  Washington's anti-annulment statute, under which the insurer and insured, even by mutual

18  agreement, may not cancel or otherwise annul a policy after the occurrence of an event giving

19  rise to potential liability for the insured:

20              No insurance contract insuring against loss or damage through
21          legal liability for the bodily injury or death by accident of any individual,
            or for damage to the property of any person, shall be retroactively
22          annulled by any agreement between the insurer and insured after the
            occurrence of any such injury, death, or damage for which the insured may
23          be liable, and any such annulment attempted shall be void.

24  RCW § 48.18.320.

25

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 14

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA  98121-2174
(t) 206.386.5566

1    In construing the key word "annul," the Supreme Court of Washinton held that it means

2    "both prospective cancellation and *ab initio* rescission."  *Am. Cont'l Ins. Co. v. Steen*, 151

3    Wash. 2d 512, 521, 91 P.3d 864, 869 (2004) ("*Steen*").  The Court went on to make clear that

4    the purpose of the statute is to protect injured third parties who might be left uncompensated if

5    implicated policies are annulled after their injuries occur:  "The purpose of RCW 48.18.320 is

6    not the protection of either the insured or the insurer.  Its purpose is to protect the injured and

7    damaged by preventing insureds and insurers from coming together and canceling or

8    rescinding insurance contracts after a potentially covered injury, death, or damage has

9    occurred."   151 Wash. 2d at 524, 91 P.3d at 871.

10    In short, an insurer seeking to rescind an insurance policy after a loss cannot even avail

11    itself of mutual rescission.  Because unilateral rescission is never available absent court

12    permission, the insurer's only option is to seek court approval reasonably promptly and, if it

13    does not do so, it waives the right.  Moreover, in the interim, while the policy remains in effect,

14    the insurer still has to provide coverage to its insured.  This ensures that the rights of injured

15    third parties – rights that vest at the time of injury – will be protected and that such third parties

16    will not be left uncompensated.  HCC did not follow the required procedure to seek to rescind.

17    As a result, Great American is entitled to summary judgment as to HCC's Affirmative

18    Defenses 11, 13, and 14.

19    **B.**    **By Failing to Seek Rescission Within a Reasonable Time, HCC Lost Any**

20    **Right to Rescind It Might Have Had.**

21    As noted above, *Main* holds that an insurer seeking to rescind must file an action for

22    rescission within a reasonable time or lose any right it might have.  167 Wash. at 5, 8 P.2d at

23    282-83.  Thus, even if HCC's unlawful attempt to unilaterally rescind were not dispositive (and

24    it is), Great American still would be entitled to summary judgment because the undisputed

25

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 15

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA  98121-2174
(t) 206.386.5566

1   facts here show that HCC, as a matter of law, did not file within a reasonable time, waiting

2   until the Vandivere trial was over before filing a declaratory judgment action.

3       According to HCC, it learned of the alleged misrepresentation from a summary of Mr.

4   Naranjo's deposition, which it received no later than August 8, 2022.  That summary, on its

5   face, contained the information of the alleged prior "recalls" for which HCC purported to

6   rescind.  HCC notified C3 of the alleged misrepresentation in a letter dated October 4, 2022,

7   about a month after the trial court stated it intended to permit no further continuances of the

8   June 2023 trial date.  HCC asked C3 to respond within a month and to provide a full transcript

9   of the deposition.  C3 did respond within a month, and it directed HCC to defense counsel for

10  assistance in obtaining the transcript.  On December 1, 2022, HCC obtained the transcript,

11  which, in HCC's eyes, buttressed its previous conclusion:  that Mr. Naranjo's answer in the

12  deposition was inconsistent with C3's application for insurance.  At that point, HCC had

13  learned everything it would ever learn about its alleged grounds for rescission, and it needed no

14  time to digest the new information, because the new information merely confirmed what HCC

15  already knew.  Indeed, HCC had sought the new information for the express purpose of

16  confirming what it already knew.  Accordingly, by December 1, 2022, if not August 8, 2022,

17  HCC had all it needed to file an action for rescission.  It could easily have filed promptly.[22]

18      Moreover, on December 1, 2022 HCC knew far more than its grounds for rescission.  It

19  knew that its $4 million in coverage had been disclosed to the Vandivere plaintiffs, as those

20  plaintiffs sought HCC's policy limits by name in July 2022.  It knew that the plaintiffs, Great

21  American, and to some extent Vertical World were relying on that coverage in preparing for

22  either trial or settlement.  It knew that C3 disputed the basis of its claim for rescission.  And it

23

24  _____
    [22]     According to HCC's own account, it decided to file an action only on June 26, 2023.

25  *See* Exhibit 2 at 4.  It filed that action on July 5, 2023, *see generally* Exhibit 1 – nine calendar
    days later, including a weekend and a holiday.

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 16

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

knew, or should have known, that it needed to file an action for rescission in order to vindicate its alleged right to rescind.  Under these circumstances, it needed to speak up – that is, to assert its rights publicly, as it was obliged to do to preserve them.

Instead, HCC thought it could tiptoe away from its obligations without anyone noticing. Other than sending its ineffectual notice of rescission and a follow-up letter, HCC did nothing for more than eight months, from December 1, 2022 to July 5, 2023.  Although C3 was aware of HCC's position, other interested third parties were not.  On October 18, 2022, the Vandivere trial court set a firm trial date for June 5, 2023, and while HCC was relying inconspicuously on its ineffectual notice of rescission, the Vandivere parties, Great American, and Vertical World were readying for the upcoming trial.  Because HCC failed to file an action, which would have alerted all concerned, none of these interested parties even knew of the purported rescission. As a result, all three of them were blindsided when, in May 2023, just weeks from trial, C3's new lawyers informed the parties of HCC's purported rescission.  Plaintiffs' counsel regarded the nondisclosure as gravely prejudicial:  "They told everyone about the $4 million [HCC policy], and what they never did, despite months of knowing, was that [HCC] had rescinded that policy. . . . When we talk about prejudice, that's certainly a huge aspect of this."  Exhibit 5 at 64.  In agreeing with this assessment, counsel for co-defendant Vertical World explained why "the withholding of the insurance information and the basis for the rescission changed the landscape so dramatically for my client."  *Id.* at 72.  In short, the purported unilateral rescission was not merely a private matter between HCC and C3; the spillover effects turned the entire Vandivere litigation upside down.  HCC's behavior is a textbook example of why the law does not allow an insurer to engage in self-help, particularly when the interests of third parties on the eve of trial are involved.

Even after C3's lawyers broke the stunning news that HCC sent the notice, HCC continued to do nothing, except rebuff Great American's appeals that it contribute to

1   settlement, even though the HCC policy remained in full force and effect.  Not until July 5,

2   2023 did HCC file its action to rescind, two weeks after Great American settled the Vandivere

3   case, with no help from HCC.  In other words, HCC did not seek court approval of its

4   rescission for more than eight months after it had obtained all of the information on which it

5   bases its claim for rescission.   During those eight months, as HCC was well aware, the

6   Vandivere case entered its final phase, and for most of that time, most of the interested parties

7   were unaware of the critical fact that HCC had no intention of paying on its policy.  Under any

8   circumstances, delaying for eight months without excuse would not be acting promptly; under

9   these circumstances, the delay was unreasonable as a matter of law.

10          Moreover, the case actually settled before HCC brought its action to rescind.  On June

11  26, 2023, when Great American and the Vandivere plaintiffs struck a deal, C3's liability

12  became fixed and absolute – and at that time, HCC's policy was still in full force.  HCC's

13  unilateral notice of rescission had no effect, and HCC had not even taken the first real step

14  toward effecting rescission, by filing an action for rescission.

15          HCC may argue that, even by December 1, 2022, it was too late to file a new action and

16  obtain a court order of rescission before the Vandivere case went to trial.  But that is by no

17  means necessarily true.  HCC could have intervened in the Vandivere action and sought either

18  a stay of the main claim or an expedited resolution of its rescission claim.  At a minimum, the

19  trial court and the parties would have been fully apprised of HCC's position, and it would have

20  been up to the trial court to find a satisfactory resolution taking into account the rights of all

21  parties.  HCC's unexcused delays denied the court the chance to find that resolution.

22          Even if the trial court had declined to resolve HCC's rescission claim first, HCC would

23  not have been left without recourse.  It could have contributed its proper share to a judgment or

24  settlement and then sought recovery from C3 on the grounds that the policy was void for a

25  material misrepresentation.  *See Barrera v. State Farm Mut. Auto. Ins. Co.*, 71 Cal. 2d 659,

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 18

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA   98121-2174
(t) 206.386.5566

681, 456 P.2d 674, 689 (1969) ("The insurer may still prosecute a cause of action against the insured for damages for wrongful misrepresentation, after satisfying the injured person's claim, or, in an action brought by the insured.").

If, after HCC demonstrated a right to rescind, C3 lacked the funds to reimburse HCC for the amount of the Vandivere claim, there still would be no real unfairness to HCC. As shown above, liability insurance coverage benefits not only the insured but also those injured by the insured. If C3 were financially unable to pay the Vandivere claims itself, the choice is between letting innocent, injured plaintiffs go uncompensated or requiring HCC to pay on a policy obtained through a misrepresentation. As between the two parties, it is clear that the loss, as a matter of Washington public policy, should fall on HCC. As an insurer, HCC was in a better position to minimize the risk through careful underwriting and review of policy applications. Moreover, HCC is in the business of bearing risks, and the Vandivere plaintiffs were not. *See Barrera* 71 Cal. 2d at 668, 456 P.2d at 680 (1969) ("the 'quasi-public' nature of the insurance business" imposes a duty on insurers to investigate reliability of insured's insurance application).

There were, therefore, several alternative scenarios that could have played out if HCC had fulfilled its obligation to act promptly to vindicate its rescission claim. By its culpable inaction, HCC prevented any of them from taking place and, accordingly, waived its right to assert its claim of rescission.

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant Great American partial summary judgment on HCC's Affirmative Defenses Nos. 11, 13, and 14.

Respectfully submitted this 5th day of March , 2024

MOTION OF PLAINTIFF FOR PARTIAL
SUMMARY JUDGMENT AGAINST
DEFENDANT HOUSTON CASUALTY
COMPANY- 19

**JOHNSON FLORA SPRANGERS PLLC**
2001 Western Avenue, Suite 205
Seattle, WA  98121-2174
(t) 206.386.5566

1      We certify that this motion contains 6,142 words, in compliance with the LCR 56.

2

3                                    JOHNSON FLORA SPRANGERS PLLC

4                                    By: */s/Mark Johnson*
                                     Mark Johnson, WSBA No. 8463
5                                    Michael Sprangers, WSBA No. 45501
                                     2001 Western Ave, Ste 205
6                                    Seattle, WA 98121
                                     206-386-5566
7                                    mark@johnsonflora.com
8                                    michael@johnsonflora.com

9                                    Attorneys for Plaintiff Great American E & S
                                     Insurance Company
10

11                                   RUGGERI PARKS WEINBERG LLP

12
                                     By: */s/ James P. Ruggeri*
13                                        James P. Ruggeri (pro hac vice filed)
                                          Edward B. Parks, II (pro hac vice filed)
14                                        Ruggeri Parks Weinberg LLP
                                          1875 K Street NW, Suite 600
15                                        Washington, DC 20006-1251
                                          T/202-469-7750; F/202-469-7751
16                                        jruggeri@ruggerilaw.com
17                                        eparks@ruggerilaw.com

18                                        Attorneys for Plaintiff Great American E & S
                                          Insurance Company
19

20

21

22

23

24

25

MOTION OF PLAINTIFF FOR PARTIAL          **JOHNSON FLORA SPRANGERS PLLC**
SUMMARY JUDGMENT AGAINST                 2001 Western Avenue, Suite 205
DEFENDANT HOUSTON CASUALTY               Seattle, WA   98121-2174
COMPANY- 20                              (t) 206.386.5566

1

## CERTIFICATE OF SERVICE

2

3      I, Alana R. Smith, certify that on March 5, 2024, I sent out for service a true and correct copy of the following pleading: ***Motion of Plaintiff Great American E & S Insurance***

4      ***Company for Partial Summary Judgment Against Defendant Houston Casualty Company*** on the attorneys of record and in the manner indicated below:

5      Everett W. Jack, WSBA No. 47076
       Stephen Caplow, WSBA No. 19843

6      Davis Wright Tremaine, LLP
       920 Fifth Ave., Ste 3300, Seattle, WA 98104-1610

7      (t) 206-622-3150 | (f) 206-757-7700                    **Via Legal Messenger and**
       Stevencaplow@dwt.com                                   **Email**

8      everettjack@dwt.com

9
       *Attorney for Defendant Houston Casualty Company*
10

11     Todd Bowers, WSBA No. 24638
       Gordon Rees Scully Mansukhani, LLP

12     701 Fifth Ave, Ste 2100, Seattle, WA 98104
       (t) 206-695-5197 | (f) 206-689-2822                    **Via Legal Messenger and**

13     tbowers@grsm.com                                       **Email**

14     *Attorney for Gordon Rees and J. Scott Wood*

15     Bradley S. Keller, WSBA No. 10665
       Byrnes Keller Cromwell, LLP

16     1000 Second Ave., 38th Floor, Seattle, WA 98104        **Via Legal Messenger and**
       (t) 206-622-2000 | (f) 206-622-2522                    **Email**

17     bkeller@byrneskeller.com

18     kwolf@byrneskeller.com
       jbenson@byrneskeller.com

19     tsethi@byrneskeller.com

20
       *Attorney for Sinars and Christopher Furman*
21
             Dated this 5th day of March, 2024, at Seattle, Washington.
22

23

24
                                              _____
25                                            Alana R. Smith, Legal Assistant

MOTION OF PLAINTIFF FOR PARTIAL          **JOHNSON FLORA SPRANGERS PLLC**
SUMMARY JUDGMENT AGAINST                 2001 Western Avenue, Suite 205
DEFENDANT HOUSTON CASUALTY                  Seattle, WA   98121-2174
COMPANY- 21                                    (t) 206.386.5566