IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01705-RMR-NRN

Houston Casualty Company,

 Plaintiff,

v.

C3 Manufacturing LLC and Great American E & S Insurance Company, as assignee of C3 Manufacturing LLC,

 Defendants.

---

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION [ECF NO. 101] OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [ECF NO. 100]**

---

Great American E&S Insurance Company ("Great American") and C3 Manufacturing LLC ("C3") (collectively, "Defendants") respectfully submit this joint opposition to Houston Casualty Company's ("HCC" or "Plaintiff") May 16, 2024 Motion for Reconsideration (ECF No. 101) ("Motion") of the Court's May 6, 2024 Order granting Defendants' motions to dismiss (ECF No. 100) (the "Order").

## PRELIMINARY STATEMENT

In the Order, the Court recognized that the dispute between the parties here primarily involves two issues: (1) "the narrow issue of whether HCC had grounds to rescind" the policy it issued to C3 (the "rescission issue"); and (2) "the broader question of whether, even if HCC had grounds to rescind, its rescission was procedurally improper, prejudicial, and/or carried out in bad faith" (the "bad-faith issue").  Order at 12.

1

The Court correctly determined that the competing Washington State Action will "resolve all issues between the relevant parties," whereas "this declaratory action will leave many of the related issues unresolved." *Id.* at 9.  That is because "Great American alleges it was damaged by the acts of HCC and C3's Washington lawyers," and "HCC has pleaded affirmative defenses based on the actions of the lawyers," but "[t]his Court likely does not have jurisdiction over C3's Washington lawyers," creating a risk of inconsistent verdicts.  *Id.* at 13.  The Court further noted that, because of the "overlapping issues," exercising jurisdiction would "increase friction between our federal and state courts."  *Id.* at 10.  Accordingly, the Court exercised its discretion to dismiss HCC's claims in favor of the Washington State Action.

HCC, essentially disregarding the Court's correct analysis of the factors guiding its discretion, charges the Court with "factual and legal errors" on two grounds.  First, it contends that it cannot obtain complete justice in the Washington State Action in C3's absence.  Even if that were true, which it is not, HCC can solve that problem by simply joining C3 in Washington – *as the Court pointed out* in a portion of the Order HCC completely ignores.  Order at 14.

But HCC places its greatest emphasis on its other argument, that the rescission issue is "not pending before the Washington state court."  Mot. at 1.  That is false.  In the Washington State Action, HCC obtained a stay of the rescission issue *precisely because* the issue was raised both there and before this Court.  How, then, can HCC possibly take the position that the rescission issue is not pending in the Washington state court?

It turns out that HCC does not take that position, not really. On page 5 of its Motion, it obliquely concedes that the rescission issue actually is before the Washington state court, where HCC has raised it as an affirmative defense. In fact, the issue was before that court from the outset, because Great American raised it in its complaint (the "Washington Complaint," ECF No. 28-1). Accordingly, the Washington state court *will reach the rescission issue*, which means that HCC's argument collapses. But HCC, maintaining the pretense that the rescission issue was raised solely in its affirmative defenses, says "[d]efenses are fundamentally different than a cause of action seeking a ruling." Mot. at 5. Instead of explaining why it thinks raising an issue by an affirmative defense fails to put it before a court, HCC cites to a single unreported case from the Northern District of Illinois that applies a different legal standard and does not support HCC's point. Numerous cases in the Tenth Circuit have held that the actual or potential pendency of an affirmative defense in a competing action furnishes a solid basis for abstention. In short, HCC's Motion is founded upon a false factual assertion that it abandons midway in order to substitute a false legal assertion.

HCC fails even to address the Court's finding that proceeding with this case "would increase friction between our federal and state courts." Order at 10. In particular, it has no response to the Court's insight that HCC would presumably try to use a declaration in its favor here against Great American in Washington. Order at 12. But comity is of even greater concern now than when the Court ruled. Consider the course of events: the Washington state court obligingly stayed consideration of the rescission issue because it was first presented to this Court. This Court then decided,

3

correctly, that both the rescission and bad-faith issues are best handled in Washington. Relying on that decision, the Washington state court lifted the stay, allowing the parties to go forward on all issues and setting a briefing schedule with an oral argument on June 21, 2024. It would indeed "increase friction" if this Court were to belatedly reverse course now and decide it should resolve the rescission after all.

Fortunately, there is no reason at all to reverse course. HCC's Motion is wrong not only about the pendency of the rescission issue in Washington and the importance of C3's presence but also about every subsidiary issue it touches, as shown below. Accordingly, the Motion should be denied.

## ARGUMENT

**I.      HCC INVOKES THE WRONG LEGAL STANDARDS.**

HCC charges the Court with legal error, but it does not explain how the Court even *could* make a legal error on a pure matter of discretion, nor how HCC can show "legal error" without citing a single case from the Tenth Circuit in its "Legal Argument." However, HCC introduces legal error of its own by invoking the *Colorado River* doctrine: "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Mot. at 3 (quoting *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976)). At this late date, HCC still refuses to acknowledge that, because this case is a declaratory judgment action, it is governed not by *Colorado River*, which is premised on "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, but rather by *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), which hold that the

4

exercise of jurisdiction over a declaratory judgment action is wholly discretionary. As the Tenth Circuit summarized:

> **The *Brillhart* analysis differs fundamentally from the *Colorado River* analysis. . . . *Brillhart* . . . gives district courts a freer hand.** The Declaratory Judgment Act, the backbone of the *Brillhart* doctrine, confers upon district courts **"unique and substantial discretion** in deciding whether to declare the rights of litigants."

*U.S. v. City of Las Cruces*, 289 F.3d 1170, 1182–83 (10th Cir. 2002) (emphasis added) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

The Court is well aware that the *Brillhart* "unique and substantial" discretion applies here because it quoted from this passage in *City of Las Cruces*. Order at 7. But HCC nevertheless leads with *Colorado River* in an attempt to imply that both cases are applicable here. Presumably it does so because the only two cases cited in support of its entire "Legal Argument" were both decided under *Colorado River*.

HCC relies on one of those cases, *Little v. Dufour Yachts SAS*, No. 19 C 5411, 2020 WL 5763621, at *6 (N.D. Ill. Sept. 28, 2020), for the proposition that "when the same issues are not present in the federal and state cases, and the same parties are not involved in the two suits, abstention, the exception, is not appropriate." Mot. at 3. But that is not what the case says, and it is not even a correct statement of the *Colorado River* standard, let alone the applicable *Brillhart* standard. The Tenth Circuit has expressly stated that identity of parties is not required even under *Colorado River*, let alone *Brillhart*. Under *Brillhart*, general similarity is merely one factor among many for the district court to take into account:

> Even in the *Colorado River* context, however, exact identity of parties and issues is not required. Rather, state and federal proceedings are

5

> sufficiently parallel "if substantially the same parties litigate substantially the same issues." . . . We now hold the degree of similarity should be considered in the evaluation of the *Brillhart/Mhoon* factors, rather than considered as a threshold condition.

*City of Las Cruces*, 289 F.3d at 1182 (quoting *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994)).

## II. THE WASHINGTON STATE ACTION WILL RESOLVE ALL ISSUES BETWEEN THE PARTIES.

### A. The Rescission Issue Is Before the Washington State Court.

#### 1. Both Great American and HCC Raised the Rescission Issue in Washington.

HCC's main argument is that the Washington State Action will not resolve all the issues between the parties because the rescission issue is not before the Washington court. In HCC's words: "HCC's complaint pleads a single cause of action, a request for a declaratory judgment that 'the Excess Policy is rescinded, ab initio.' . . . That question is not pending before the Washington state court." Mot. at 3-4. This assertion is the core of HCC's argument. It concludes its argument as follows: "Neither the claim pending here – whether rescission was effective – nor the main defendant – C3 – is before the Washington court. Therefore, this Court's determination that 'only the Washington State Action can address all relevant issues among all relevant parties' is wrong." *Id.* at 8.

This argument is nonsense. HCC itself has repeatedly acknowledged – indeed, *insisted* – that the rescission issue is before the Washington state court just as much as this Court. Great American's Complaint put the rescission issue before that court, HCC's affirmative defenses underscored the issue, and both parties have litigated both

here and in Washington on the shared understanding that the rescission issue is before the Washington state court.

That is, HCC's argument cannot survive inspection of Great American's Complaint in the Washington State Action because it is worded broadly enough to encompass both the rescission issue and the bad-faith issue:

> By refusing to provide coverage, by refusing to participate in the settlement of the *Vandivere* action, and by refusing to fund its share of the *Vandivere* Settlement, Houston Casualty breached the Houston Casualty Policy by unilaterally and wrongfully purporting to rescind and/or cancel its policy with C3 after an injury-causing event, without a reasonable basis to do so, in violation of terms of the contract . . .

Wash. Compl. ¶ 6.2, ECF No. 28-1 at 11-12.  The words "unilaterally and wrongfully purported to rescind" squarely address the rescission issue.  If there were any doubt that this claim puts the rescission issue before the court (there is not), the doubt would be removed by HCC's own affirmative defenses and in particular the eleventh, which states that "HCC was permitted to rescind the HCC Policy based on the misrepresentations of C3 and properly did so."  ECF No. 67-1 at 250.

Indeed, on March 5, 2024, HCC filed a motion in the Washington State Action to stay proceedings with respect to the rescission issue.  HCC framed the issue this way: "Should the Court stay dispositive motions on the rescission issue . . . given that question was first presented in the Colorado court, and is a question of Colorado law?"[1] This brief statement contradicts HCC's argument here, in two ways.  First, if the rescission issue was "first" presented in the Colorado court, it logically follows that it was

---

[1]   Respondents' Appx., p. 5:12-14 - Mot. to Stay (Mar. 5, 2024).

7

also later presented in the Washington court. Second, it would make no sense for the Washington state court to stay proceedings with respect to an issue not before it.

That is enough to rebut HCC's argument, but there is more. In a later filing, HCC stated:

> It is uncontested that the issues presented by HCC for resolution in Colorado, and the three specific affirmative defenses later addressed by Great American's . . . summary judgment motion, involve common core questions of law and fact. The question of whether HCC properly rescinded the contract should not be entertained by two courts at once.[2]

In short, HCC acknowledged that both courts were considering the same issue.

The Washington state court granted HCC's stay and subsequently clarified that the stay applied to ***the rescission issue pending before both courts***, but not to issues not raised in Colorado, such as bad faith:

> GAIC [Great American] is correct that the order could read to prohibit GAIC from moving on issues involving rescission even if related to a claim or defense not before the Colorado court. That was not the Court's intention. The Court's March 25, 2024 Order was limited to vacating the hearing on the specific issue of rescission presently before the Colorado court.

Order of April 9, 2024 at 2, ECF No. 97-1 at 3.

On May 15, 2024, in response to the Order, the Washington state court lifted the stay with respect to the rescission issues.[3] Accordingly, the rescission issue has always been before the Washington state court, it was briefly subject to a stay requested by HCC, and the stay is now lifted.

---

[2]   Respondents' Appx., p. 10:2-5 - Surreply re Mot. for Recons. (Apr. 9, 2024).
[3]   Respondents' Appx., pp. 11-12 - Order Lifting Stay (May 15, 2024).

HCC contends that "Great American has taken pains to point out that the issues presented in this Court are fundamentally different than the issues pending in Washington." Its alleged evidence is this passage from a filing by Great American:

> As an initial matter, there are two questions here: [1] whether HCC has grounds to rescind at all (the issue presented by this action) and [2] whether HCC could rescind in the manner and at the time that it did (the issue Great American has raised in Washington.)

Mot. at 4 (quoting ECF No. 84 at 7). But the point Great American was making is not that the issues in the two cases are *fundamentally different* but that the Washington State Action is *broader*, including both the rescission issue *and* the bad-faith issue. Great American never said the bad-faith issue is the *only* issue in the Washington State Action. As Great American's Complaint and HCC's affirmative defenses show, that action includes both issues.

        2.    <u>It Is Immaterial Whether the Rescission Issue was Raised in a Claim or in an Affirmative Defense</u>.

In maintaining the pretense that the rescission issue is not before the Washington state court, HCC's Motion ignores everything said above. Its closest approach to dealing with the substance of the Washington State Action is the abrupt assertion that "HCC's affirmative defenses in the Washington action are just that – defenses." Mot. at 5. Presumably what HCC means by this is something like: "yes, we know we asserted affirmative defenses on the rescission issue, but those don't count because" – and this is what HCC expressly asserts – "[d]efenses are fundamentally different than a cause of action seeking a ruling." *Id.* But this attempted dodge fails in multiple ways.

9

First, the rescission issue did not come before the Washington state court solely because of HCC's affirmative defenses; as shown, Great American raised the issue in its Complaint by alleging that "Houston Casualty breached the Houston Casualty Policy by unilaterally and wrongfully purporting to rescind and/or cancel its policy with C3." Wash. Compl., *supra* ¶ 6.2, at 12.  That is hardly ambiguous.  HCC can try to pretend that this language refers *exclusively* to the bad-faith issue, but the plain words give that argument no support. Thus, even under HCC's flawed construct, the rescission issue has been raised in the Washington State Action because Great American asserted "a cause of action seeking a ruling" about it.

But even if the rescission had come before the Washington state court solely because of HCC's affirmative defenses, *it has still come before the Washington state court*.  From the standpoint of putting an issue before a court, which is the standpoint relevant here, a plaintiff's claim and a defendant's affirmative defense will serve equally well.  It is no use for HCC to assert that, in this context, claims and affirmative defenses are "fundamentally different."  If that assertion were taken seriously, it would logically mean that courts would virtually never abstain, because the plaintiff in the federal action is always going to be the defendant in the parallel state action, and therefore the "same" issue will almost always appear as an affirmative defense in one of the two cases.  The case law accords with this logic:  in determining whether a parallel action exists elsewhere for abstention purposes, courts routinely consider affirmative defenses, and

indeed affirmative defenses that are merely possible.[4]  A Tenth Circuit case affirming an abstention order is illustrative:

> St. Paul is seeking a declaration by the federal court that the coworkers' lawsuit is not a covered claim.  **The issue in the federal declaratory judgment action is identical to what would be a defense to the state court contract action**—whether Mr. Runyon's insurance contract with St. Paul protects him from the coworkers' lawsuit.  **Because the state court will determine, under state contract law, whether the tort action is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract.**

*St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (emphasis added).

Defying precedent and logic, HCC charges that "[t]he Court has committed legal error to the extent it considered affirmative defenses raised in the Washington case as bases supporting abstention here." Mot. at 6.  In support of that erroneous charge, HCC relies solely on an unreported case from the Northern District of Illinois, *Jin Won Lee v. First Tek, Inc.*, 2013 WL 1195714 (N.D. Ill. Mar. 20, 2013).  That case does not help HCC for a number of reasons.  First, it did not involve a motion for reconsideration.

---

[4] *E.g.*, *Schering Corp. v. Griffo*, 872 F. Supp. 2d 1220, 1245 (D.N.M. 2012) ("Schering Corp.'s assertion of the course-and-scope issue as an affirmative defense again shows the overlap, and parallel, between the case before the Court and the state court proceeding."); *Nat'l Cas. Co. v. Thomas & Sons Trucking, L.L.C.*, No. 14-4023-CM, 2015 WL 265519, at *2 (D. Kan. Jan. 21, 2015) ("Because factual issues with respect to the defendants' potential affirmative defenses in state court could overlap with the issues in this case . . . this case could encroach upon state court jurisdiction and possibly cause friction between federal and state courts."); *TIG Ins. Co. v. FKI Indus., Inc*, No. 18-CV-00264-GKF-FHM, 2020 WL 5913827, at *8-9 (N.D. Okla. Oct. 6, 2020) ("TIG seeks a declaratory judgment . . . . In the Pennsylvania Case, defendants assert that TIG breached the Policy . . . . TIG may assert any coverage defenses or its argument in favor of *pro rata* allocation as affirmative defenses therein.").

Second, it did not apply the *Brillhart* standards applicable here, but rather *Colorado River* standards, and the Tenth Circuit has stated that *Colorado River* standards are more stringent on the specific issue of the degree of overlap necessary for abstention:

> Unlike a decision under *Colorado River* to refuse jurisdiction, there is no requirement under *Brillhart* that the district court look at the state and federal proceedings only as they currently exist. This court has noted that a factor a district court should consider in deciding to decline jurisdiction over a declaratory judgment action is whether " 'the same fact-dependent issues are *likely* to be decided in another pending proceeding.' "

*City of Las Cruces*, 289 F.3d at n.15 (10th Cir. 2002) (*quoting Runyon*, 53 F.3d at 1169–70 (emphasis in *Las Cruces*). In short, under *Brillhart*, but not *Colorado River*, a district court can consider not only the overlap of claims actually presented, but also of claims that *could be* presented.

Third, even under *Jin-Won Lee*, decided in a different procedural context in a different circuit and applying a more stringent test irrelevant here, Great American has met the test for abstention. The *Jin Won Lee* court noted that the test of whether two cases are sufficiently parallel for abstention is whether the state court litigation "will dispose of all claims in the federal case." 2013 WL 1195714 at *2. The court found that the two cases were not parallel primarily because "[u]nlike the instant case, the state case does not include any FLSA claims." *Id.* Here, however, the Washington State Action is *broader* than this action, encompassing both the rescission issue raised here and the bad-faith issue. The Court correctly concluded the Washington State Action would resolve all the outstanding issues; HCC's only attempt to show otherwise is the vacant assertion that the rescission issue is "not pending before the Washington state

12

court," Mot. at 3-4, an assertion belied by both the Washington pleadings and every Tenth Circuit case cited to the Court by either party.

In short, the Court got this question exactly right. HCC's argument to the contrary has no legal support and no basis in the reality of the Washington State Action.

### B. C3's Presence or Absence Is Not Relevant to the Abstention Issue.

HCC asserts that "C3 is not a party to the Washington state lawsuit, making complete relief for HCC an impossibility." Mot. at 6. This is nonsense. First, as *City of Las Cruces* observes, exact identity of parties is not required even under *Colorado River*, and under *Brillhart* the standard is still more lenient. 289 F.3d at 1182

Second, among the relevant factors enumerated in *Brillhart* are "whether necessary parties have been joined" and "whether such parties are amenable to process in that proceeding." 316 U.S. at 495.[5] Amenability to process obviously concerns only parties not yet joined, so plainly *Brillhart* contemplates abstention based on the possibility of joining new defendants in the parallel state action.[6] C3 has explicitly submitted to jurisdiction in Washington and could be joined there without the slightest difficulty. *E.g., Fed. Ins. Co. v. Sprint Corp.*, 293 F. Supp. 2d 1245, 1248 (D.

---

[5] *Accord, e.g., Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 284 (3d Cir. 2017) ("Germane factors include the scope of the state court proceeding, the claims and defenses asserted, and whether necessary parties had been or could be joined."); *Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 696 (7th Cir. 1985) ("there is no reason in theory why the Villasenors and Cole could not be joined as parties in the state case.").

[6] Similarly, *Wilton* states that the question is not whether the parallel actions present the same issues but whether they present the "*opportunity* for ventilation of the same state law issues." 515 U.S. at 290 (emphasis supplied). *See also City of Las Cruces*, 289 F.3d at 1188 n.15 ("[T]here is no requirement under *Brillhart* that the district court look at the state and federal proceedings only as they currently exist.").

Kan. 2003) ("All necessary parties are or can be joined in the State Proceedings and all claims can be adjudicated."). HCC cites no case for the proposition that a federal court plaintiff may frustrate the interests of judicial economy and comity by refusing to join a party it can readily join.

### III. HCC'S OTHER ARGUMENTS FAIL.

HCC rebukes the Court because it allegedly "gave credence" to C3 and Great American's claim that HCC's filing in Colorado was anticipatory. In fact, the Court did *not* give credence to that claim; it declined either to accept or reject it, merely noting the parties' disagreement and finding that the "procedural fencing" fact did not weigh heavily on either side. Order at 13.

HCC further rebukes the Court for "fail[ing] to give proper weight to the Magistrate's finding that C3 and Great American are using abstention for procedural fencing." Mot. at 7. This is wrong in four ways. First, a magistrate judge makes recommendations: it only *proposes* findings. Second, the only "proper weight" of a magistrate judge's recommendation is the weight the district judge chooses to give it. *See U.S. v. Raddatz*, 447 U.S. 667, 676 (1980) ("Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."). Third, the magistrate judge was wrong about the alleged inconsistency of filing for summary judgment in Washington while opposing an early motion for summary judgment here. Great American's motion in Washington solely concerned the bad-faith issue, a purely legal issue on which the facts are undisputed, whereas HCC's proposed motion here was on

14

the rescission issue, which hinged on a question of credibility never appropriate for summary judgment.  Fourth, neither HCC nor the magistrate judge has ever cited a case finding that the *defendant* in a federal declaratory judgment action was somehow engaged in procedural fencing, and it is not clear how that could ever be the case.

Finally, HCC argues that Colorado law applies to the rescission issue.  Great American and C3 disagree but even if this were true, HCC does not explain why a Washington judge is incapable of applying Colorado law on a basic issue such as rescission.  Nor does it cite any case holding that choice of law is a significant factor in abstention analysis, let alone a factor so dominant that it outweighs the considerations of judicial economy and comity on which the Court based its entirely correct Order.[7]

For all of these reasons, the Court should deny the motion for reconsideration.

---

[7]   *C.f. Royal Indem. Co. v. Apex Oil Co., Inc.*, 511 F.3d 788, 796–97 (8th Cir. 2008) ("Royal argues that the district court erred in failing to analyze the choice of law and *forum non conveniens* considerations in deciding to abstain.  However, the Supreme Court has never used choice of state law or *forum non conveniens* as factors in analyzing an abstention under *Wilton* and *Brillhart*").

Dated:  June 6, 2024                    Respectfully submitted,


                                                          *s/ Thomas A. Olsen*
Cedric D. Logan
Joel S. Neckers
Thomas A. Olsen
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile:   303.244.1879
Email:  logan@wtotrial.com
        neckers@wtotrial.com
        olsen@wtotrial.com

James P. Ruggeri
Edward B. Parks, II
Ruggeri Parks Weinberg LLP
1875 K. Street, N.W.
Washington, DC  20006
Telephone: 303.244.1800
Facsimile:   303.244.1879
Email: jruggeri@ruggerilaw.com
       eparks@ruggerilaw.com

*Attorneys for Defendant Great American E & S Insurance Company*


*s/Kerri J. Anderson*
Bradley A. Levin
Kerri J. Anderson
455 N. Sherman Street, Ste. 490
Denver, Colorado 80203
Telephone: (303) 575-9390
Fax: (303) 575-9385
brad@lsw-legal.com
kerri@lsw-legal.com

*Attorneys for Defendant
C3 Manufacturing LLC*

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on June 6, 2024, I electronically filed the foregoing **DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION [ECF NO. 101] OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [ECF 100]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Kerri J. Anderson**
  kerri@lsw-legal.com, nicole@lsw-legal.com, karen@lsw-legal.com

- **Jennifer Arnett**
  jennifer@arnettlawyers.com, christine@arnettlawyers.com, cgiaquinto@sanitaslaw.com

- **Bradley Aaron Levin**
  brad@lsw-legal.com, nicole@lsw-legal.com, karen@lsw-legal.com, nelson@lsw-legal.com

- **Cedric D. Logan**
  logan@wtotrial.com, cooks@wtotrial.com, wall@wtotrial.com

- **Joel S. Neckers**
  neckers@wtotrial.com, bratcher@wtotrial.com

- **Thomas A. Olsen**
  olsen@wtotrial.com, umaguing@wtotrial.com

*s/Thomas A. Olsen*