IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   23-cv-01705-RMR

Houston Casualty Company,

    Plaintiff,

v.

C3 Manufacturing LLC and Great American E & S Insurance Company, as assignee of C3 Manufacturing LLC,

    Defendants.

### REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

Houston Casualty Company ("HCC"), by and through undersigned counsel, files this Reply in Support of Motion for Reconsideration of the Court's May 6, 2024 Order (ECF No. 100).

### Preliminary Statement

The Washington state court will not decide whether HCC had the right to rescind the Excess Policy due to C3's material misrepresentations in its application for insurance. While rescission, writ large, has been raised with the Washington state court, that case does not seek a determination about whether HCC's rescission was permissible. Rather, Great American has asked the Washington state court to determine whether, even if HCC had the right to rescind the Excess Policy, the manner in which HCC rescinded the Excess Policy was done in bad faith. Great American's bad faith claim, presented in the Washington case, is not broader than the fact of rescission, HCC's claim presented here – it is *different*.

With this Court's decision to grant Great American and C3's motions to dismiss, the legal question raised by HCC – whether HCC had the right to rescind the Excess Policy based on fraud in the inducement – will not be decided by any court. This is manifestly unjust to HCC, and for this reason, HCC requests that the Court reconsider its decision.

## Legal Argument

### A. The Effectiveness of HCC's Rescission of the Excess Policy Is Not Pending Before the Washington State Court

Great American filed a breach of contract claim, bad faith claims, and a subrogation claim against HCC in the Washington state case. *See* ECF No. 28-1 at ¶¶ 6.1-9.6 Great American did <u>not</u> seek a declaration that the rescission was not effective. Only HCC has sought a declaration regarding the effectiveness of the rescission, in this case. While Great American did raise the issue of the rescission, alleging that HCC "unilaterally and wrongfully purport[ed] to rescind and/or cancel its policy," Great American raises this in the context of its breach of contract claim. *Id.* 6.2. The remedies for (1) breach of contract – make-whole damages, and (2) rescission – effectively, nullification of an insurance policy, are different – because the claims are different. To "put the rescission issue before [the Washington] court," ECF No. 102 at 6, is a far cry from seeking a judicial declaration about the effectiveness of rescission.

While Great American seeks to blur the line between the substantive rescission question (the issue raised by HCC here) and the procedural bad faith question (the issue raised by Great American in Washington), these are different legal questions. As this Court correctly stated, the claims in the Washington action do not necessarily depend on the validity of the rescission itself. ECF No. 100 at 12; *see also* ECF No. 101-1 at 6:14-17.

In its response brief, Great American rhetorically asks why HCC sought a stay of dispositive motions on the "rescission issue" if the issue were not pending before the Washington court. At the time HCC filed the motion to stay, it was unclear what the basis was for a summary judgment hearing scheduled by Great American. Per Washington state procedure, Great American had filed a notice of hearing for "Plaintiff's Motion for Partial Summary Judgment Against All Defendants" on February 13, 2024, without providing any additional detail. ECF No. 93-1. As Great American itself explains, its motion for summary judgment in Washington "solely concerned the bad-faith issue," not the issue before this Court, the "rescission issue." ECF No. 102 at 14.[1]

### B. Tenth Circuit Case Law Supports This Court Exercising Its Jurisdiction

One of the seminal Tenth Circuit *Brillhart* abstention cases is *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994), where the court found that it was appropriate for the trial court to exercise its jurisdiction over the declaratory judgment action. In *Mhoon*, the appellant argued that the district court committed reversible error by determining that the underlying shooting was an intentional act, when the question of intentionality was simultaneously pending in state court. *Id.* at 983. That is, "[t]he critical question whether Mhoon acted intentionally was before both the state and federal courts simultaneously." *Id.* Justice White, writing for the Tenth Circuit, found that it was appropriate for the federal court to exercise its jurisdiction due to "the fact that a live need for a declaration of State Farm's rights and duties did, in fact, exist." *Id.* at

---

[1] Incredibly, Great American questions how the Court can commit legal error on a matter of discretion. ECF No. 102 at 4. It is clear that "[a] court can abuse its discretion by committing legal error." *United States v. Contreras-Cabrera*, 766 F. App'x 674, 676 (10th Cir. 2019). "A court abuses its discretion if it bases its decision on an erroneous legal conclusion, or if no rational factual basis founds its ruling." *Five Points Mgmt. Grp., Inc. v. Campaign, Inc.*, No. 23-1125, 2024 U.S. App. LEXIS 3658, at *3-4 (10th Cir. Feb. 16, 2024). "No court -- not a trial court, not an appellate court, nor even a supreme court – has the authority, within its discretion, to commit an error of law." *State v. Beechler*, 2010-Ohio-1900, ¶ 70 (Ct. App. 2010).

984. The court added as a reason justifying the district court's exercise of jurisdiction that the question of whether State Farm had a duty to defend "involved only an examination of the state court complaint to see if its allegations of fact triggered the duty. Determining that duty involved no matter, factual or legal, at issue in the state case." *Id.* Finally, the *Mhoon* court found that coverage would have to be determined irrespective of the outcome of the state case. *Id.*

Likewise here, there is a live need for a determination about the effectiveness of the rescission of the Excess Policy. Determining whether C3 made material misrepresentations should involve only the comparison of Mr. Naranjo's sworn testimony about recalls with his responses about recalls on the application, both of which were filed as exhibits to the Complaint. ECF Nos. 1-1 and 1-4 (exs. to Compl.), and ECF Nos. 47-1 and 47-4 (exs. to Sec. Am. Compl.). Certainly this analysis is no more complex than that in *Mhoon* where the district court examined the record to determine whether Mr. Mhoon's actions could be deemed intentional. As in *Mhoon*, this Court has determined that the claims in the state case do not necessarily depend on the question before this Court, the validity of the rescission itself. ECF No. 100 at 12.

Similarly, in *Hartford Fire Insurance Co. v. Gandy Dancer, LLC*, the parties seeking abstention argued that the federal court would have to make factual findings regarding intent, the same factual determination at issue in the underlying action. No. CIV-10-0137 JB/RHS, 2011 U.S. Dist. LEXIS 37816, at *15 (D.N.M. Mar. 30, 2011). The court determined, "[t]he standard for determining whether BNSF's and Gandy Dancer's actions were 'expected or intended' is distinct from the standard for determining intent for the tort claims before the state court, so there is no risk of the state and federal courts deciding the same issue differently." *Id.* at *31. Likewise here, the standards for determining whether HCC engaged in bad faith or breached the insurance contract

4

for not covering the Vandivere claim, both under Washington law, are different than the standard for determining whether HCC was justified in rescinding the Excess Policy under Colorado law. The only salient fact in the case here, which can be determined by comparing Mr. Naranjo's deposition transcript and the application for insurance that he signed, is whether C3 made material misrepresentations in its application for insurance.

Abstention is not appropriate, and the Court should reconsider its decision to abstain.

### C. C3's Absence From the Washington Case Makes Complete Relief for HCC an Impossibility

A vital party to the rescission question is missing from the Washington state case – C3. As in *Gandy Dancer*, because this vital party is not named in the state case, the state court cannot grant HCC the relief it seeks. 2011 U.S. Dist. LEXIS 37816, at *62. This Court erred by giving short shrift to C3's absence from the state case, and Great American is incorrect about the significance of C3's absence – it is essential. *See, e.g.*, *Mhoon*, 31 F.3d at 984 (finding absence of key party from state case a significant factor in upholding trial court's exercise of jurisdiction). C3, a Colorado entity, is not a party to the Washington state case. Because C3 has a remaining interest in the Excess Policy, HCC cannot obtain complete relief in the Washington case.

### D. A Ruling by This Court on the Effectiveness of the Rescission Will Not Interfere With the Washington Case

This case and the one pending in Washington state involve different legal claims, different legal standards, and they seek different remedies, with the result that there will not be increased friction between state and federal courts if this Court exercises jurisdiction. *See Gandy Dancer*, 2011 U.S. Dist. LEXIS 37816, at *32-33. Indeed, the state court was in favor of this Court exercising its jurisdiction, as evidenced by the order it issued directing the parties to not file

5

dispositive motions on rescission. ECF No. 93-2. As in *Mhoon*, "[t]his is not a case . . . where the district court found a material factual dispute and proceeded to resolve it in the face of ongoing state proceedings on the same subject." 31 F.3d at 984. *Cf. Nat'l Cas. Co. v. Thomas & Sons Trucking, L.L.C.*, No. 14-4023-CM, 2015 U.S. Dist. LEXIS 6601 (D. Kan. Jan. 21, 2015) (finding that the factual question whether an injury arose in the course of employment was at issue in both the state and federal cases). Rather, "[b]ecause this Court's inquiry will be distinct from the state court's, there is no risk that the courts will come to different conclusions about the same matter or that the parties will be estopped from litigating an issue in state court." *Gandy Dancer*, 2011 U.S. Dist. LEXIS 37816 at *34-35.[2]

### E. An Affirmative Defense Will Not Provide HCC With a Judicial Decision on the Effectiveness of the Rescission

An affirmative defense is "a legal argument that a defendant . . . may assert to require the dismissal of a claim or to prevail at trial." *Dinosaur Park Invs., L.L.C. v. Tello*, 192 P.3d 513, 516 (Colo. Ct. App. 2008) (quoting *State v. Nieto*, 993 P.2d 493, 507 (Colo. 2000)). It is an "assertion of facts and arguments that, if true, will defeat the plaintiff's … claim, even if all the allegations in the complaint are true." 1 LNPG: Colorado Pretrial Civil Litigation § 13.03 (quoting *Black's Law Dictionary* 509 (10th ed. 2014)). As explained by the Supreme Court, "[a]n unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for a declaratory judgment." *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 93-94 (1993).

---

[2] In its opening brief, HCC pointed out that it was error for this Court to state that a review of the policies was required to determine the rescission question. ECF No. 101 at 5. Great American does not dispute this point, and it is therefore not contested. No review of the Excess Policy is needed to determine whether HCC was justified in rescinding the Excess Policy.

Here, the distinction between HCC's affirmative defense in the Washington case and its claim pleaded in this case makes clear the distinction identified by the Supreme Court. HCC's thirteenth affirmative defense in the Washington state case is, "HCC was permitted to rescind the HCC Policy based on the misrepresentations of C3 and properly did so, and as a result plaintiffs' claims fail." ECF No. 101-2 at PDF pg. 35. While this is similar to HCC's request for declaratory judgment in this Court, the only possible effect of the affirmative defense is that one or more of Great American's claims will be defeated. Because none of those claims seeks a finding that HCC was justified in rescinding the Excess Policy after discovering C3's fraudulent statements, HCC will still have no ruling as to whether its rescission was permissible. *See, e.g., Jin Won Lee v. First Tek, Inc.*, No. 12-cv-4571, 2013 U.S. Dist. LEXIS 40510, *6 (N.D. Ill. March 20, 2013) (concluding that because Lee raised the Illinois minimum wage law as a defense in the state case, "it is possible that the state case could be resolved on other grounds and that the state court may never reach the [minimum wage] issue.").[3] This is especially true given the fact that C3, the policy holder, is not a party to the Washington state case.[4]

---

[3] Great American is correct that *Lee* was decided under the *Colorado River* doctrine. But the court's analysis of the import of affirmative defenses in a state case rings equally true in a *Brillhart* case.

[4] *Schering Corp. v. Griffo*, cited by Great American, is distinguishable. In that case, the court was concerned about an alleged state tortfeasor causing a "perversion" of the Declaratory Judgment Act where personal injury plaintiffs are forced to litigate their claims in a forum chosen by the alleged tortfeasor. 872 F. Supp. 2d 1220, 1245 (D.N.M. 2012). Here, by contrast, the personal injury plaintiff, Vandivere, is not a party to either the case pending here or in Washington state.

### F. Great American's Additional Arguments Do Not Justify Rescission

Great American takes the quintessential kitchen sink approach, making every argument it can possibly scrounge up. They all fail. For the sake of completeness, and in an excess of caution, HCC addresses those arguments here.

- Great American makes much of HCC's reference to the *Colorado River* abstention doctrine. But C3's first motion to dismiss was based on *Colorado River*, and there was no error in referencing the case. HCC agrees that *Brillhart* is the controlling doctrine here.

- Great American questions how a defendant could engage in procedural fencing, but procedural fencing is not the sole province of plaintiffs. *See, e.g.*, *Cincinnati Spec. Underwriting Producer Res., Inc. v. Evanston Ins. Co.*, No. 1:23-CV-00287-WJ-KRS, 2023 U.S. Dist. LEXIS 163823, at *12 (D.N.M. Sept. 14, 2023) (finding defendant insurer engaged in procedural fencing); *Harco Nat'l Ins. Co. v. Roe*, No. 15-CV-464-JHP-TLW, 2016 U.S. Dist. LEXIS 136849, at *11 (N.D. Okla. Sept. 30, 2016) (considering plaintiff's claim of procedural fencing by defendant).

- The fact that Colorado law applies to the rescission question is, contrary to Great American's assertion, significant. Even if the rescission question were squarely before the Washington court, which it is not, that court will not be familiar with Colorado law on rescission. This Court, located in Colorado, which is the state law that will apply, has an interest in ensuring that Colorado law is applied to determine whether a policy issued to a Colorado entity was effectively rescinded.

### G. Abstention Would Result in Manifest Injustice

The basis for Great American's claims against HCC is, in a nutshell, that HCC should have sought a judicial blessing for rescinding the Excess Policy. Exhibit 1, Great American Mot. for

8

Partial Summary J'ment in Wash. case, at PDF pgs. 5-6; *see also* ECF No. 84 at 3. Of course, HCC has done exactly that – in this Court. Yet Great American claims that the very action it says HCC should do – seek judicial confirmation of the rescission – should be dismissed. That is, Great American claims that HCC was required to effect the rescission through judicial action as to C3, but Great American then moved to dismiss HCC's judicial action as to C3. This dizzying, whipsaw position should not be rewarded; to do so results in HCC, which has done exactly what Great American claims HCC should have done, suffering injustice. Per the above, it is no solace that the Washington state court could apply Colorado law to the question of whether the rescission was appropriate – because that question is not before the Washington court.

Further, Great American's position – that Washington law applies and that Washington is the better forum – directly contradicts the position of C3, Great American's assignor. As pointed out in multiple previous briefs, C3 is a Colorado LLC located in Colorado. C3 completed the application in Colorado, HCC issued the policy in Colorado, and HCC then rescinded the policy in Colorado. When C3's counsel objected to the rescission, counsel objected under Colorado law. ECF No. 32-2 at 2 ("Respectfully, we believe that <u>Colorado law</u> does not allow for rescission of the Excess Policy.) (emphasis added). HCC then filed suit in this Colorado federal court. After all of this, C3 assigned its claim to Great American, and Great American then filed suit in Washington state court. Great American, as assignee, stands in the shoes of C3 and is estopped from taking a position inconsistent with that of C3. *See, e.g.*, *Maple Trade Fin. v. Lansing Trade Grp., LLC*, No. 10-2066-JTM, 2011 U.S. Dist. LEXIS 28839, at *43 (D. Kan. Mar. 21, 2011); *Peter D. Holdings LLC v. Wold Oil Props.*, No. 17-CV-212-R, 2020 U.S. Dist. LEXIS 166851, at *46-47 (D. Wyo. Aug. 12, 2020). Great American cannot now claim, contrary to the position of C3, that Washington

law on rescission applies. To do so changes the rules of the game midway through – and leaves HCC to defend Great American's made-up version of Washington law on rescission in Washington. This is the epitome of an unjust outcome, and HCC respectfully requests that the Court reconsider its decision to grant the motions to dismiss.

## Conclusion

**WHEREFORE**, for the reasons stated herein and in its opening brief, HCC requests that the Court reconsider its Order of May 6, 2024 (ECF No. 100), uphold the Recommendations of Magistrate Neureiter to deny motions to dismiss (ECF Nos. 46 and 96), and deny the Motions to Dismiss of C3 and Great American (ECF Nos. 28 and 67).

**DATED** this 5th day of July 2024.

Respectfully Submitted,

By: *s/ *Jennifer C. Arnett*
Jennifer C. Arnett
Arnett Litigation, LLC
1630 30th Street, Ste. A-184
Boulder, Colorado 80301
Tel: 720-726-5852
jennifer@arnettlawyers.com
*Attorney for Plaintiff Houston Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2024, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Christine Giaquinto*
Legal Assistant for Arnett Litigation, LLC
